Philip A. Turney
24289 ISCC / D-1, 28 A

Billy Ray Bartlett
18858 ISCC / C-5, 03 B

James S. Hendrickson
95484 ISCC / F-1, 24 A

Michael A. McCall
14000 ISCC / F-2, 37 A

**Idaho State Correctional Center**
P.O. Box 70010
Boise, ID    83707

Reuben J. Cortes
30588 SICI / MD-2, 40

**South Idaho Correctional Institution**
P.O. Box 8509
Boise, ID    83707

U.S. COURTS

JAN 03 2018

Rcvd_____ Filed_____ Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

PHILIP A. TURNEY,
BILLY RAY BARTLETT,
JAMES S. HENDRICKSON,
MICHAEL A. McCALL,
REUBEN J. CORTES,
JOHN ROE, and JANE ROE,
JOHN MILES, and JANE MILES,
JOHN STILES, and JANE STILES,
individually, and on behalf
of those similarly situated,

        Plaintiffs,

  v.

HENRY ATENCIO, Director,
Idaho Department of Correction,
in his official capacity;

RONA SIEGERT, RN, CCHP-RN,
in her individual and her
official capacities for actions
under color of law as Health
Services Director, IDOC,

Case No. 1:18-CV-1-REB

COMPLAINT

JURY DEMANDED for all claims
triable to the jury;

EQUITABLE RELIEF and

DECLARATORY RELIEF demanded

FOR CLASS CLAIMS and

INDIVIDUAL CLAIMS AMENABLE

TO DECLARATORY and EQUITABLE

RELIEF

COMPLAINT - 1

**ORIGINAL**

Dr. JOHN G. MIGLIORI, M.D., in his individual
and his official capacities for actions under
color of law as Plaintiffs' treating physician
at the Idaho State Correctional Center (ISCC),

Dr. MURRAY F. YOUNG, M.D., in his individual
and his official capacities for actions under
color of law as Plaintiffs' treating physician
at ISCI, and at the South Idaho Correctional
Institution (SICI),

Dr. APRIL C. DAWSON, M.D., in her individual
and her official capacities for actions under
color of law as Plaintiffs' treating physician
at SICI, at the South Boise Womens' Correctional
Center (SBWCC), and at the Correctional
Alternative Placement Program (CAPP),

JOHN and JANE DOES A-Z, in their individual and
official capacities for actions under color of
law as staff within the IDOC, and at IDOC facilities:
Boise, Cottonwood, Kuna, Orofino, Pocatello,
St. Anthony, et al.,

    ENTITY DEFENDANT

CORIZON, INCORPORATED,

    and

IDAHO DEPARTMENT OF CORRECTION, an agency of the
State of Idaho,

    Defendants.

## CLASS ACTION COMPLAINT

### 43 U.S.C. § 1983

**INTRODUCTION**

    Plaintiffs are inmates of the Idaho Department of Correction (hereafter

"IDOC").   PHIL TURNEY, BILL BARTLETT, JAMES HENDRICKSON, MIKE McCALL, and

REUBEN CORTES, suffer from the serious medical need, disability, and life-

threatening viral disease known as hepatitis-C (HCV for "hepatitis-C virus").

Prior to late 2013, HCV treatment consisted of Interferon injections which lasted nearly a year with low levels of success and serious side effects. In December 2013, FDA-designated HCV "breakthrough" drugs were approved to cure HCV at a >95% rate, with one-pill-per-day for 12 weeks irrespective of the stage of the infection. In January 2014, the American Association for the Study of Liver Disease and Association for the Study of Infectious Disease (AASLD/ASID) adopted the "breakthrough" drug 12-week daily-pill therapy protocol, with the >95% cure rate, as the hepatitis-C treatment community standard-of-care, thus replacing the highly toxic and less effective 48-week Interferon-based injection therapy in very short order.

For non-medical reasons, Defendants refuse to provide the "breakthrough" drug treatment based on the medical needs of the Plaintiffs, viz. the hepatitis-C teatment community standard-of-care, which will cure Plaintiffs' HCV infection in three months from its inception.

Since June 2014, the Federal Bureau of Prisons (BOP), the Center for Disease Control (CDC), the United States Public Health Service (USPHS), the Food and Drug Administration (FDA), and the United States Department of Veteran Affairs (VA) have all recognized the changed standard-of-care within the hepatitis-C medical treatment community for HCV patients in their approval and implementation of one-pill-per-day, 12-week protocols for the treatment of HCV patients, as the up-to-date standard of care in the hepatitis-C treatment community.

By December 2014, FDA approval of Harvoni® and Viekera-Pak®, two additional "breakthrough" drugs, eliminated toxic Interferon entirely in 12-week oral treatments as the current standard of care post-December 2014. The dangerous and serious side-effects associated with the 48-week toxic

Interferon-injection therapy have rapidly made toxic Interferon medically obsolete among physicians specializing in treating HCV infections.

The Plaintiffs, individually and as a class, sue the Defendants in their respective, specified individual and official capacities for their joint and several actions that constitute deliberate indifference to their serious medical needs as Hepatitis C patients, in violation of the clearly established Eighth and Fourteenth Amendment rights under the United States Constitution, for which 42 U.S.C § 1983 provides declaratory, equitable, and legal remedies. Defendants have refused Plaintiffs' repeated requests to be treated with the up-to-date medications that cure all stages of HCV infection, irrespective of viral load, and, with minor variations, irrespective to genotype of HCV, for non-medical reasons of administrative convenience or cost, which are not related to the individual medical needs of Plaintiffs.

The Plaintiffs, individually and as a class, sue the Idaho Department of Correction, a recipient of federal monies, IDOC Director Henry Atencio, Corizon, Inc., a recipient of federal monies, and other named Defendants in their official capacities for acts constituting discrimination because of the disability of Hepatitis C under Title II of the American with Disabilities Act as Amended and § 504 of the Rehabilitation Act of 1973.

The Plaintiff class representatives have exhausted their administrative remedies under governing national and state laws.

The Plaintiffs demand jury trial for all claims triable to the jury.

## JURISDICTION AND VENUE

1. Plaintiffs set forth claims under U.S. Const. amend. VIII and XIV, 42 U.S.C. §§ 1983, 12131 et seq., and 29 U.S.C. § 791 et seq.

2. 28 U.S.C. §§ 1331 (federal question) and 1343(a)(4) (federal civil

rights question) confer subject matter jurisdiction on this Court.

3. Plaintiffs state claims that arise under Idaho law.

4. 28 U.S.C. § 1367 confers supplemental jurisdiction for all claims that arise under Idaho law.

5. The substantial number of events in this lawsuit took place in Ada, Bannock, Clearwater, Freemont and Idaho Counties, state of Idaho.

6. Plaintiffs lay venue in this Court per 28 U.S.C. § 1391.

**PLAINTIFFS**

7. Plaintiff PHILIP A. TURNEY (TURNEY) has been an inmate of IDOC and its correctional facilities since 1989.

8. In 2001, Turney was informed by Defendant IDOC agents, employees, or representatives that he was HCV-positive.

9. The source of Turney's infection was the unsanitary living conditions within the IDOC, and medical treatment provided therein for an emergent procedure involving suture of a trauma wound, and/or other blood exposures.

10. Turney's prior IDOC physician (Dr. Garrett) offered to prescribe the 48-week, toxic Interferon injection treatment in 2003, following lab values indicating diminished liver function tests (LFT's) and results from a liver biopsy revealing liver damage was present due to HCV; that advancement of fibrosis and/or cirrhosis was likely; and further, that end stage liver disease or hematologic malignancy were possible.

11. Acting upon the medical advice of Dr. Garrett, a decision to forego toxic Interferon injection treatment was made due to its

low success rate (<40%) in clinical trials relative to genotype-A, the specific HCV strain Turney is known to be infected with.

12.  Mr. Turney is eligible to be released from IDOC custody in December 2019, viz., more than twelve weeks from the date of suit.

13.  Mr. Turney was an inmate of the Idaho State Correctional Institution (ISCI) from January 2005 until March 2009.  (Boise)

14.  Mr. Turney is a current inmate at the Idaho State Correctional Center (ISCC) from March 2009 to the present.  (Kuna)

15.  As a direct result of the policy and practice of IDOC and CORIZON, Inc., and individual Defendants' conduct, Mr. Turney has been denied the current standard-of-care one-pill per day, twelve week HCV treatment that cures HCV at a >95% rate, in deliberate indifference to his serious medical needs as a Hepatitis C sufferer, and because of his disability as a Hepatitis C sufferer.

16.  Mr. Turney has been denied HCV curative medication because of non-medical IDOC policies designed to ration medication to a limited number of inmates, for administrative convenience or money, without regard to Mr. Turney's individual medical needs and disabling case of HCV.

17.  Plaintiff BILLY RAY BARTLETT (BARTLETT) is an inmate of the IDOC at ISCC.

18.  Mr. Bartlett tested HCV positive in 2002, only after being double-bunked with a bleeding, HCV + cellmate in the ISCI Receiving Unit, and exposure to other sources of HCV in IDOC facilities.

19.  Mr. Bartlett is ineligible for release consideration until 2031, viz., more than twelve weeks from the date of suit.

20.  As a direct result of the policy and practice of IDOC and CORIZON,

Inc., and individual Defendants' conduct, Mr. Turney and Mr. Bartlett have been denied the current standard-of-care one-pill per day, twelve week HCV treatment that cures HCV at a >95% rate, in deliberate indifference to their serious medical needs as Hepatitis C sufferers, and because of their disabilities as Hepatitis C sufferers.

21. Mr. Bartlett has been denied HCV curative medication because of non-medical IDOC policies designed to ration medication to a limited number of inmates for administrative convenience or money, without regard to Mr. Bartlett's individual medical needs and disabling case of HCV.

22. Plaintiff James S. Hendrickson (HENDRICKSON) is an inmate of the IDOC at ISCC.

23. Mr. Hendrickson is scheduled to be released on parole in 2018. It is unlikely that Mr. Hendrickson could now complete a 12 week, one-pill per day, HCV medication treatment regimen prior to his re-integration into the local community.

24. The source and timing of Mr. Hendrickson testing HCV positive is unknown, despite having lived a productive life absent any of the known risk factors attributed to the majority of HCV transmission.

25. Plaintiff Michael A. McCall (McCALL) is an inmate of the IDOC at ISCC.

26. Mr. McCall tested HCV positive in 2000 when he was informed by medical staff at the Bannock County Jail, while being detained for state holding and in route to IDOC.

//

COMPLAINT - 7

27.   Mr. McCall is to be considered for release in 2019, more than three (3) months, viz., more than twelve weeks, from the date of suit.

28.   Mr. McCall has been denied HCV curative medication because of non-medical IDOC policies designed to ration medication to a limited number of inmates for administrative convenience or money, without regard to Mr. McCall's individual medical needs and disabling case of HCV.

29.   Plaintiff Reuben J. Cortes (CORTES) is an inmate of the IDOC at the South Idaho Correctional Institution (SICI).  (Boise)

30.   Mr. Cortes tested HCV positive in ADA County Jail, Boise, ID, I Learned of HCV Through a Blood test.

31.   The 48-week, toxic Interferon injection treatment IDOC provided to Mr. Cortes failed in 2011.

32.   Mr. Cortes has requested that IDOC prison physicians' prescribe to him the "breakthrough" HCV treatment medication, i.e. the community standard-of-care, to cure his advanced stage liver disease and to end the pain and suffering from his condition.

33.   As a direct result of the policy and practice of IDOC and CORIZON, Inc., and individual Defendants' conduct, Mr. Cortes has been denied the current standard-of-care one-pill per day, twelve week HCV treatment that cures HCV at a >95% rate, in deliberate indifference to his serious medical needs as a Hepatitis C sufferer, and because of his disability as a Hepatitis C sufferer.

34.   Mr. Cortes has been denied HCV curative medication because of

non-medical IDOC policies designed to ration medication to a limited number of inmates, for administrative convenience or money, without regard to Mr. Cortes' individual medical needs and disabling case of HCV.

35. Mr. Cortes will satisfy his prison sentence in 2018, viz., more than twelve weeks from the date of suit.

36. In the cases of messr's Turney, Bartlett, Hendrickson, McCall and Cortes, HCV is a disability and disease of the digestive and circulatory systems that substantially and materially impairs their respective major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, shaving razors, and (d) the quality of life itself.

37. Each day that IDOC and CORIZON, Inc. delays treatment to the Plaintiffs cases of HCV, the liklihood of cirrhosis of the liver, liver cancer, need of a liver transplant, and death from HCV grow for each of them, as well as each member of the Class, as does the liklihood of infection for those with whom they come in contact in IDOC facilities and, after their respective release, with whom they make contact in the general public.

38. The Plaintiffs' liver, digestive system, and circulatory systems continue to deteriorate, as do those of other members of the named class, the subclass of plaintiffs with known cases of HCV that are not treated, and the subclass of plaintiffs with unknown and untreated cases of HCV.

39.   Mr. Turney and each of the named Plaintiffs have demanded HCV treatment in accordance with the one-pill a day, twelve week treatment protocol for Sovaldi® that the FDA, USPHS, and the Center for Disease Control have approved, and which the Federal Bureau of Prisons (FBOP) has approved for administration to HCV-positive federal inmates.

40.   The Defendants jointly and severally have denied treatment to plaintiffs Turney, Bartlett, Hendrickson, McCall, and Cortes because the Defendants' respective polic(y/ies) and acts designed to limit or ration anti-HCV medication for non-medical reasons of administrative convenience or cost, unrelated to the individual medical needs of Plaintiffs, or the medical benefits they would derive from being cured of HCV.

41.   Plaintiffs Turney, Bartlett, Hendrickson, McCall, Cortes and those similarly situated, are that portion of the approximately 8,000 inmates at the ten (10) Idaho Department of Correction (IDOC) facilities who have tested positive, or will test positive, for HCV (20% would be 1600 inmates).

42.   The Plaintiff's have requested the up-to-date 12-week HCV treatment which the FDA has approved since December 2013 and confirmed since December 2014.

43.   The FBOP adopted the FDA-approved 12-week HCV treatment no later than June 2014.

44.   Mr. Turney and each of the named Plaintiffs reported their respective requests for the FDA-approved 12-week treatment to IDOC Health Services Director Rona Siegert, RN, CCHP-RN, IDOC Director Henry Atencio, and to Corizon Health Services Administrator

Mr. Grant W. Roberts.

45.   Health Services Director Siegert, IDOC Director Atencio, and CORIZON, Inc., to include Health Services Administrator Roberts, jointly and severally, individually and officially, have denied Turney's, Bartlett's, Hendrickson's, McCall's and Cortes' respective requests for the FDA-approved 12-week treatment.

46.   Each of the aforementioned Plaintiffs have exhausted their respective administrative remedies under governing federal and state law.

47.   Plaintiffs JOHN ROE and JANE ROE are the estimated 50-80% of male and female inmates of IDOC institutions who have not been screened for HCV, as they were for HIV, and do not know their current HCV status.

48.   Plaintiffs JOHN MILES and JANE MILES are the respective male and female inmates of IDOC institutions who have tested positive for HCV, and have not received treatment for HCV, in compliance with the professional standard of medical care for HCV-positive individuals that the FDA, FBOP, CDC, USPHS, and VA approved since 2013.   * See pg. 11-A, ADDENDUM ¶, 49 (a) *

49 (b).   All plaintiffs are daily exposed to HCV infection, or re-infection while incarcerated, due to the deliberate indifference of Defendants who have not adopted the safer, more effective treatment protocols for HCV treatment adopted by the CDC, USPHS, and Federal BOP to prevent infection and re-infection of inmates.

50.   Plaintiffs Turney and Cortes reported the FBOP adoption of the FDA-approved 12-week protocol to Dr. John Migliori.

–ooOoo–

**ADDENDUM** ¶

49 (a). Plaintiffs JOHN STILES AND JANE STILES are the respective male and female inmates of IDOC institutions who are HCV-positive, do not know that they are HCV-positive, and have not received treatment for HCV, in compliance with the professional standard of medical care for HCV-positive individuals that the FDA, FBOP, CDC, USPHS, and VA approved since December 2013.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

51.   As Medical Director of the ISCC medical unit, and treating physician for each of the named Plaintiffs, Dr. Migliori denied each of their respective requests that IDOC and CORIZON, Inc. modernize their chronic disease program by providing the HCV community-standard-of-care, twelve week treatment protocol consisting of the FDA-approved "breakthrough" medications.

52.   Defendants' knowing refusal to make available the safer and more effective cure for Plaintiff's HCV infection, and continuing a policy of refusing to make the 12-week treatment and cure available for non-medical reasons of administrative convenience and cost, are prolonging the harm HCV is causing to named Plaintiffs' bodies and life expectancies, and those of other IDOC inmate class member and other IDOC inmate subclass members, and demonstrates deliberate indifference to the Plaintiffs' respective serious medical needs.

**DEFENDANTS**

53.   Defendant IDAHO DEPARTMENT OF CORRECTION (IDOC) is an agency of the state of Idaho.

54.   Defendant IDOC has its principal place of business and headquarters in the City of Boise, County of Ada, state of Idaho.

55.   Defendant IDOC is a recipient of federal funds.

56.   Plaintiffs sue Defendant IDOC for creation and implementation of policies that (a) have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of the Plaintiffs' clearly established rights under U.S. Const. amend. VIII and XIV

through 42 U.S.C. § 1983, (b) discriminated against Plaintiffs on the basis of their disability in defiance of Title II of the Americans with Disabilities Act as Amended at 42 U.S.C. § 12131 et seq., § 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 791 et seq., and (c) have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of the Plaintiffs' clearly established rights under Idaho State Constitution, Article I §§ 1 and 6, for which the Idaho State Const. Art. I, §§ 13, 18; and Art. X §§ 1, and 5 provides a remedy.

57.  Defendant HENRY ATENCIO, an adult individual, (Atencio, Director Atencio, Director) is the Director of the IDAHO DEPARTMENT OF CORRECTION (IDOC), whom Idaho Governor C.L. "Butch" Otter and his duly appointed Commissioner's of the State Board of Correction appointed to administer, oversee, and operate the IDOC in accord with the U.S. and Idaho State Const., and in complaince with state and federal law.

58.  Director Atencio is responsible for policy, administration and supervision of staff within IDOC.   Director Atencio is the successor in office to Kevin Kempf.  Together, former Dir. Kempf, and thereafter Dir. Atencio were responsible during all times relevant to this action.

59.  Plaintiffs sue Director Atencio in his official capacity.

60.  Defendant Rona Siegert, RN, CCHP-RN, is an adult individual and the Health Services Director of the IDOC, with her office in the Central Office of the IDOC.

61.  Defendant Siegert, RN, CCHP-RN, is responsible for medical services throughout the IDOC system.

62.  On information and belief, after reasonable inquiry by the Plaintiff's, Siegert is responsible for the establishment of medical policy that governs the medical care and treatment of all inmates of IDOC, including the Plaintiffs.

63.  Plaintiffs sue Defendant Siegert in her respective individual and official capacities for actions taken under color of law as Health Services Director, IDOC.

64.  Grievances arising from the denial of meaningful medical care, and the denial of Plaintiffs' requested medical care, by the IDOC contracted health care provider Defendant CORIZON, Inc., are appealed to the Central Office,   reviewed and ruled upon by RONA SIEGERT in accordance with governing federal law, state law, and applicable IDOC Standard Operating Procedure (SOP), department regulations having the force of law.

65.  On information and belief, after reasonable inquiry by the Plaintiffs, grievances arising from the denial of meaningful medical care, and the denial of Plaintiffs' requested medical care, by CORIZON, Inc. staff that are appealed to the Central Office are reviewed and ruled upon by RONA SIEGERT, after consultation with Defendant ATENCIO and Defendant GRANT ROBERTS, Health Services Administrator, Corizon, Inc.

66.  DR. JOHN G. MIGLIORI, M.D., and MURRAY F. YOUNG, M.D., adult individuals, are treating physicians of Plaintiffs.

67.  DR. MIGLIORI and DR. YOUNG provide medical services to Plaintiffs,

pursuant to contract between Defendant CORIZON, Inc. and IDOC.

68.   Other physician's, JOHN and/or JANE DOES, provide medical services to plaintiffs throughout ten (10) IDOC facilities for adult offenders.

69.   DR. APRIL C. DAWSON, M.D., an adult individual, for a longstanding period of time and during the events complained of herein, was formerly a treating physician of Plaintiffs.

70.   Defendant DR. MIGLIORI, DR. YOUNG, and DR. DAWSON have the obligation to provide independent, individualized, safe, effective medical care to each Plaintiff, consistent with current community standards of professional medical care.

71.   Plaintiffs sue DR. MIGLIORI, DR. YOUNG, and DR. DAWSON in individual and official capacities for actions taken under color of law as Plaintiffs' treating physicians under contract to IDOC through Defendant CORIZON, Inc., for their deliberately indifferent failure to treat Plaintiff's disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

72.   Defendants JOHN and JANE DOES A — Z, adult individuals, are male and female doctors, nurses, case managers, correctional officers, supervisors, and IDOC employees, agents, or representatives, whose work places are:  ISCC, ISCI, SICI, IMSI, PWCC, CAPP, ICIO, NICI, SAWC, SBWCC, and various Community Release Center's (CRC).  These defendants are charged with responding to requests for medical care for hepatitis C from named Plaintiffs, or responding to requests for medical care for hepatitis C from now-unknown inmates of the IDOC.

73.    Plaintiffs sue DEFENDANTS JOHN and JANE DOES A – Z in their respective individual and official capacities for actions taken under color of law for their deliberately indifferent failure to meaningfully treat Plaintiffs' disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

74.    Defendant CORIZON, Inc. (Corizon, Corizon Health), is a for profit company, duly incorporated under the laws of state of Missouri, with its principal business and corporate headquarters located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee  37027, doing business in Idaho.

75.    Defendant CORIZON, Inc., is a recipient of federal funds.

76.    Defendant CORIZON contracted with IDOC to provide medical treatment services to IDOC inmates for one hundred ninety-eight million, three hundred seventy-nine thousand, three hundred twenty-five dollars ($198,379,325.00), beginning on 1 January 2014 through 31 December 2018.

77.    Plaintiffs sue Defendant CORIZON, Inc. for creation and implementation of policies, pursuant to contract with IDOC, that have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act as Amended at 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act of 1973 at 29 U.S.C. § 791 et seq.

78.    Plaintiffs sue the Defendants in their respective, specified

capacities, for actions under color of law at all times relevant to this lawsuit, for their joint and several actions, policy creations, and policy implementations that manifest deliberate indifference to the Plaintiffs' serious medical needs of hepatitis-C, in violation of Plaintiffs' rights under U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983 and Idaho State Const. Art. I, §§ 1 and 6, and discriminate against Plaintiffs on account of their disabilities in violation of Title II of the Americans with Disabilities Act as Amended, 42 U.S.C. § 12131 et seq., § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.

79. Because of the "silent epidemic" of HCV-positive inmates entering the IDOC system, and the high-costs of treating HCV infections, the Defendants IDOC and CORIZON have instituted a policy of rationing antiviral-HCV medication(s) to as few inmates as possible, for reasons of administrative convenience and cost, unrelated to the medical needs of individual inmates, who are the Plaintiffs.

## FACTS

### A.   HEPATITIS C VIRUS (HCV) DEFINED

80. HCV was not discovered until 1989. Blood screening was not possible until the mid-1990's. According to the CDC, everyone born between 1945 and 1965 is at risk and should undergo testing for hepatitis C.

81. The Centers for Disease Control (CDC) estimate the potentially fatal blood-borne Hepatitis-C Virus (HCV) infects some 4 million Americans of all ages and walks of life (about 2% of the

population) and causes more deaths than HIV/AIDS.

82.    Between 20 – 50% of America's 2.5 million inmates are HCV-positive. According to the CDC, therefore most prisoners and 98% of the general population are at risk from unscreened, untreated inmates.

83.    Eliminating HCV from correction facilities filters HCV from the entire nation's blood pool.

84.    HCV is a chronic, potentially fatal blood-borne viral disease that substantially and materially degrades the liver's ability to purify blood and to convert substances in the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day.

85.    HCV can be spread by mere contact with an infected individual's blood, under such circumstances as:    (a) physical activity in sports, (b) tattooing, (c) use of a hypodermic needle not properly cleaned or sterilized, (d) exposure to an infected person's blood in the course of medical care, (e) barber and cosmetology care, (f) sexual activity, (g) sharing of eating utensils and food, (h) sharing razors or other personal grooming supplies, (i) sharing bathrooms or shower facilities, (j) sharing living quarters, or (k) physical violence between individuals, including inmates, law enforcement or correctional staff.

86.    If left untreated, even asymptomatic HCV causes cirrhosis, or destructive scarring of the liver, liver cancer, and may require a liver transplant, and eventually causes other symptoms to those it afflicts.    As a communicable disease, HCV poses an unreasonable

and substantial risk of serious present and future medical and physical harm to the Plaintiffs, and the general public after Plaintiffs' release from prison. <u>Roe v. Elyea</u>, 631 F.3d 843 (7th Cir. 2011), inter alia.

87.   HCV substantially and materially impairs the individual's, and these Plaintiffs', major life activities of (a) self-caring, (b) social interaction with other persons, (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors, (d) reproduction, and (e) life itself.

88.   Each day treatment is postponed, the likelihoods of: fibrosis, cirrhosis of the liver, liver cancer, a liver transplant, and death grow for each member of the Class, as does the likelihood of infection for those with whom they come in contact within IDOC facilities and for members of the general public after they are released into the general population outside prison.

**B.   BACKGROUND – CENTERS FOR DISEASE CONTROL (CDC), FDA, FBOP, U.S. PUBLIC HEALTH SERVICE (USPHS), V.A., AND THE U.S. SURGEON GENERAL**

89.   Eradicating HCV from the entire population became possible in December 2013 because of the approval of the first FDA "breakthrough" drugs.

90.   In December 2013, the United States Food and Drug Administration (FDA) approved a new class of safer, direct-acting, anti-viral drugs that **cure** HCV infections in 12-weeks of daily pill therapy at a >95% success rate.

91.   In January 2014, the Infectious Disease Society of America (IDSA)

and the American Association for the Study of Liver Disease (AASLD) issued guidelines recommending sofosbuvir (Sovaldi®) and similar new drugs as first-line therapy to replace year-long Interferon-based injections entirely. See, www.hcvguidelines.org. In June 2014 the Federal Bureau of Prisons (FBOP) issued "Clinical Practice Guidelines" (Guidelines or Protocol) for HCV treatment of inmates. The FBOP specifically rejected the more dangerous, less effective 48-week toxic Interferon-base injection treatment regimen.

92. The protocol specifically lists the ASSLD/IDSA sofosbufir twelve week, one pill per day regimen as the safer, more effictive, standard-of-care in all FBOP facilities.

93. Other agencies of the United States, including the Centers for Disease Control (CDC), the United States Department of Veterans Affairs (VA), and the Surgeon General of the United States Public Health Service (Surgeon General) adopted the one pill per day, twelve-week protocol as the standard of care for treatment of HCV, and specifically rejected the forty-eight week toxic Interferon injection regimen, as has: the CDC, the VA, and the Surgeon General of the USPHS. Private insurers that include UnitedHealth, Anthem, and Aetna cover the non-interferon anti-viral oral pill treatments.

94. As set forth in the FBOP October 2016 Clinical Practice Guidelines for HCV, the above protocols' only medical criteria are that the patient; (a) not be pregnant; (b) have sufficient time in custody to complete treatment; and, (c) "demonstrate willingness and ability to adhere to rigorous treatment and to abstain from

high risk activities."

95. According to the AALSD/IDSA, FBOP, CDC, and VA protocols, chemical dependency treatment, however, is not a medically required precondition for the twelve week HCV treatment.

96. Similarly, sharing of contaminated needles is a known vector for transmission of human immunodeficiency virus (HIV).

97. Nonetheless, upon information and belief, chemical dependency treatment is NOT a precondition for HIV/AIDS anti-viral therapies in IDOC facilities.

98. Furthermore, IDOC medical policy does NOT employ, as a precursor for HIV/AIDS treatment, ANY methodology for measuring the amount of viral load that an HIV/AIDS infected patient possesses; nor ANY formula capable of objectively measuring the degree of harm or future risk of organ function——as means to prioritize certain inmates to receive the community standard-of-care, while allowing others to languish with a lethal disease until such time as the advancement of their condition reaches near death estimations in order to approve care and treatment.  Nevertheless, this is precisely Defendant IDOC and CORIZON, Inc. standard operating procedure in determining which inmates are eligible to receive HCV treatment.

99. The AALSD/IDSA, FBOP, CDC, and VA HIV/AIDS treatment protocols require treatment upon a positive test for HIV, without waiting for the onset of HIV-related end-stage illnesses, including Kaposi's sarcoma or pneumonia.

100. Similarly, the AALSD/IDSA, FBOP, CDC, and VA HCV protocols do not

prescribe delay in HCV treatment until the onset of fibrosis, cirrhosis of the liver, or hematologic malignancy (liver cancer) for medical reasons to initiate the current standard-of-care one-pill per day 12-week HCV treatment that **cures** HCV at a >95% rate.

101.    Since the adoption of the current standard-of-care by agencies of the United States, barriers that the Defendants, jointly and severally, have erected in fact and as a matter of policy, to screening and treatment of HCV that differ significantly from HIV/ AIDS lack medical justification, and do not survive scrutiny of sound medical judgment, or on any rational basis grounds.

102.    Defendants must assume the constitutional obligation under U.S. Const. amend. VIII and XIV and Idaho State Const. Art. I, §§ 1, 6, among others, and the statutory obligation under U.S. Const. Art. VI, cl. 2, 42 U.S.C. § 12131 et seq., and 29 U.S.C. § 791 et seq., to provide the safer, more effective, non-interferon-based medical care for HCV that evolving science and FBOP, FDA, and Surgeon General protocols have made the new professional medical community standard of care, to eradicate HCV infection from the IDOC population.

103.    In doing so, the Defendants reduce and then eliminate the likelihood of HCV reinfection of Plaintiffs, and increase the likelihood of reduction and ultimate eradication of HCV amongst the general public population as a result.

//

//

**C.   HCV AS A SERIOUS MEDICAL NEED, IN WHICH ASSERTED FAILURE OR DELAY IN TREATMENT STATES CLAIMS FOR DELIBERATE INDIFFERENCE TO PRISONERS' MEDICAL NEEDS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS**

104.   <u>Erickson v. Pardus</u>, 551 U.S. 89, 90; 127 S. Ct. 2197 (2007), holds that conscious delay, conscious denial of access, or conscious interference in medical treatment of hepatitis C for non-medical reasons – standing alone - states a plausible claim for deliberate indifference against prison doctors, prison guards, or prison officials to the serious medical needs of a prisoner in violation of U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983.

105.   Idaho Department of Health regulations and state law, I.C. Title 39-601, 39-602, 39-604 require that all physicians, healthcare facilities, medical laboratories, and every licensed healthcare provider to submit clinical materials associated with positive cases of communicable disease, including HIV/AIDS and HCV to the district health authority in a manner that IDH&W shall direct.

106.   Said Idaho regulations impose a duty to obtain knowledge, and to transmit said knowledge to the state health authority, of all communicable disease cases, including HCV, within the care and responsibility of all medical care providers, including medical care providers employed by, or contracted by, the Idaho Department of Correction (IDOC).

107.   In accord with Idaho Code § 39-601-604 Defendant IDOC has adopted SOP 401.06.03.014, Infection and Ectoparasite Control, 10/22/2011, which purports to "establish procedures for ensuring ... an effective infection control program ... for minimizing infectious and communicable disease incidents amongst offenders, (2)

establish procedures for effectively controlling ectoparasites by **treating** infected offenders ..., and (3) ensure that an offender diagnosed with an infectious or cummunicable disease **receives prompt care and treatment.**" emphasis added. IDOC HIV/AIDS policy.

108. At all times relevant to this lawsuit, Defendant IDOC, its agents, employees, representatives, or contractors including CORIZON, Inc., provide free, mandatory routine screening for HIV/AIDS within 14 days of prisoners' intake, or in response to a "kite" or Health Services Request (HSR), to a facility health service, with treatment available at all IDOC prisons, without preconditions.

109. In contrast, at all times relevant to this lawsuit, Defendant IDOC, its agents, employees, representatives, or contractors including Defendant CORIZON, Inc., provide NO routine screening for HCV during or after intake to identify sources of infection, or to protect inmates from sources of infection, despite the duties to know, report and transmit that the above regulations impose.

110. Moreover, Defendant IDOC, on information and belief, after reasonable inquiry by the Plaintiff's, have promulgated IDOC SOP 401.06.03.077, as approved by, Shane Evans, chief of the Division of Education Treatment and Reentry, which purports to enact "(1) Clinical Practice Guidelines and Protocols; (2) Screening; (3) Testing; (4) Notification and Counseling; (5) Evaluation and Treatment; (6) Compliance" measures. Dated 9/9/2013. A careful analysis of the actual language of IDOC HCV policy, reveals the

artiface of Defendant IDOC, and its staff of technical writing chicanery. cf. IDOC SOP 401. / I.C. §§ 39-601, 602, 604.

111.    In truth, there is absolutely NO mandatory screening within the aforementioned Hepatitis C policy.   "Screening" to Defendant IDOC consists of: "Offenders shall be provided educational information on the transmission, natural history, and medical management of HCV infection.   The contract medical provider's qualified staff will perform this **function** on intake at the receiving and diagnostic units (RDU)." emphasis added.   Thus, in Idaho prisons, HCV screening, involves handing a new prisoner a one page "OFFENDER HEPATITIS FACT SHEET, 401.06.02.077, Appendix A, clearly placing the onus on newly arriving offenders to later submit an HSR to initiate an actual blood test to determine if an inmate is positive for the hepatitis C infection.   See also, SOP 401.06.02.077, Appendix B, "CONSENT FOR HEPATITIS-C EVALUATION and TREATMENT" wherein persons with "... a history of drug and alcohol abuse, I may be referred to a substance abuse program.   I understand that I may be randomly tested during therapy for illegal drugs and alcohol.   I understand that if I continue to use ... during **treatment** for hepatitis C, or otherwise demonstrate noncompliance with the prescribed treatment regimen [bi-annual monitoring], therapy may be discontinued."   emphasis added.

112.    Upon information and belief, Defendants Health Services Director SIEGERT, Corizon Health Services Administrator ROBERTS, Dr. YOUNG, Dr. MIGLIORI, Dr. DAWSON and other Defendants had actual knowledge, through personal communication from Plaintiff Turney,

professional journals, professional meetings in 2014 through 2017, CDC and FBOP publications, and general media, of the new medications for HCV that are safer and more effective than IDOC HCV treatment protocols.

113.  Despite Defendants' knowledge of the new safer and more effective standard-of-care, the Defendants, jointly and severally, have not enacted the current 12-week one pill per day professional HCV-treatment community standard of care described in the June 2014 FBOP Clinical Treatment Guidelines, and other peer-reviewed sources, to meet the individual needs of the Plaintiffs, and to screen and cure prisoners infected with the HCV virus for reasons unrelated to medical care.

114.  At all times relevant to this lawsuit, Defendant IDOC, its agents, employees, representatives, or contractors including CORIZON, Inc., jointly and severally, have willfully denied, or, with manifest deliberate indifference to the serious medical needs of the plaintiffs, denied the current medical professional HCV-treatment community standard of individualized medical care to Plaintiffs and similarly situated HCV positive inmates, specifically, the daily oral twelve week treatment protocols, for non-medical reasons.

115.  At all times relevant to this lawsuit, Defendant IDOC, its agents, employees, representatives, or contractors including CORIZON, Inc., jointly and severally, have willfully delayed, denied, or interfered with Plaintiffs' timely HCV treatment by conditioning chemical dependency treatment as a medically unnecessary collateral condition for HCV treatment.

116.   At all times relevant to this lawsuit, Defendant IDOC, its agents, employees, representatives, or contractors including CORIZON, have intentionally delayed, denied, or interfered with Plaintiffs' timely HCV treatment by withholding meaningful HCV treatment until plaintiffs manifest symptoms of fibrosis, cirrhosis of the liver, or liver cancer, for non-medical reasons.

117.   The primary HCV treatment available in the IDOC—CORIZON system consists of cursory monitoring of individuals known to have tested positive for HCV, are willing to participate in the Defendants "chronic disease program", whereby one blood draw per year, charting minimum liver function tests (LFT's), followed by quarterly nursing encounter visits, and when insisted upon one (1) doctor / physician assistant appointment annually.

118.   The FBOP rejected this inadequate treatment model in June 2014 as falling below the professional hepatitis-C medical treatment community standard of individualized care of inmates, specifically, the twelve week, one pill per day "breakthrough" medication protocol available since December 2013 of Olysio®, Sovaldi®, and successor medicines that include Harvoni®, and Viekira Pak®.

119.   Incredulous as it may be, Defendants IDOC and CORIZON, Inc., continue to this very day asserting that they adhere to FBOP guidelines involving hepatitis-C treatment.   Only after it became obvious that ensuing litigation was forthcoming; did IDOC—CORIZON and these Defendants' make available the appropriate medications, and then only to a very small fraction of plaintiffs who had suffered immensely for prolonged periods.

120. The overwhelming vast majority of HCV infected Idaho prisoners', estimated to be >98% of known HCV + patients, have no access whatsoever to the current "breakthrough" medications.

121. As described in IDOC SOP polic(y/ies) and in response to written Concern Forms and HSR requests from Plaintiffs, at all times relevant to this lawsuit, of the ten (10) facilities that IDOC operates, Defendants IDOC, ATENCIO, SIEGERT, CORIZON, and DOES, jointly and severally, offer quarterly or periodic HCV chronic disease monitoring, and meaningful HCV treatment only at specific facilities, in wanton insufficiency, and thus exclude the lion's share majority of HCV + inmates from receiving any treatment at all.

122. Particularly in light of the efficacy of the FDA-"HVC breakthrough" drugs in curing **all levels of HCV viral infections, all HCV genotypes** (with minor variances), and the relative simplicity of the treatment protocols associated with the 12-week oral medication, policies limiting treatment based on viral load, or subjective assessments relative to liver dysfunction, are matters of administrative convenience or cost saving, not the medical requirements of the patient.

123. For non-medical reasons of policy and practice, IDOC and CORIZON, jointly and severally, at all times relevant to this lawsuit, have systematically denied, and continue to deny systematically, IDOC inmates' requests for the FDA-approved, one pill per day, twelve week treatment protocol of Olysio®, Sovaldi®, which the FBOP as of June 2014, the FDA, the CDC, the USPHS Surgeon General, and the VA

have adopted as the safest, most effective professional HCV-treatment medical community standard of care for the treatment and **cure** of HCV virus infections at a >95% rate - a protocol to which Harvoni® and Viekira Pak® were added in late 2014.

124. As a direct result of the Defendants' joint and several policies, practices, and actions that lack medical foundation or rational basis, and which substitute administrative convenience, caprice, and whim for individualized professional medical care and judgment for the Plaintiffs, each day the Defendants deny to Plaintiffs the FBOP Sovaldi/Harvoni equivalent of the non-Interferon twelve week, daily pill protocol to cure HCV, Defendants needlessly force Plaintiffs to suffer the progressive effects of the chronic, life-threatening disease of hepatitis C.

125. The Defendants' joint and several willful, deliberate actions make progression of plaintiffs' cases of HCV foreseeable, and increased public expense inevitable.

126. The Defendants' joint and several willful, deliberate actions increase without medical reason or lawful purpose the likelihood of the Plaintiffs' deaths for reasons arising from HCV infection.

127. Day by day, uninfected inmates, and the public at large, run increasing risks of HCV infection which Defendants could "cure;" to these inmates' serious, medical needs of freedom from, and knowledge of, infection by HCV, the Defendants, jointly and severally, are deliberately indifferent, for reasons of non-medical policy and practice.

//

D.   CLASS ALLEGATIONS

128.  Plaintiffs bring this action on behalf of themselves, and others similarly situated, (the "Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

129.  Plaintiffs seek to represent the following Class and sub-classes on claims for declaratory and injunctive relief and damages:

(a) All persons (male and female) incarcerated in Idaho Department of Correction facilities with 12 weeks remaining on their sentence; who test HCV-positive and wish to participate in the 12-week oral-medication HCV treatment, equivalent to FBOP Clinical Treatment Guidelines.

(b) All persons as in (a) who tested HCV positive before entering IDOC facilities.

(c) All persons as in (a) who were not HCV-positive before entering facilities and became infected while housed in IDOC facilities.

(d) All persons as in (a) in various stages of HCV infection who are merely being monitored by existing IDOC--CORIZON "chronic disease program," who are not receiving meaningful treatment, or, who are not being treated at all because of the Chemical Dependency Treatment requirement, that is not required by the FBOP, CDC, AASLD/ASID, VA or other clinical treatment guidelines.

(e) All persons as in (a) in various stages of HCV infection who are not being treated because of other limitations or access to medication unrelated to patient care, that are not required by the FBOP, CDC, AASLD/ASID, VA or other clinical treatment guidelines.

(f)  All persons as in (a) in various stages of HCV infection who are not being treated because they have refused toxic Interferon-based treatment, offered by IDOC in contravention of current FBOP, CDC, AASLD/ASID, VA or other medical treatment guidelines.

(g)  All persons as in (a) in various stages of HCV infection who previously participated in toxic Interferon injection treatment, that did not cure their HCV infections, or if such persons were unable to complete Interferon-based treatment.

(h)  All persons as in (a) who are HCV-positive but have not been explicitly screened by means of an actual laboratory blood test by IDOC so have been unaware of their HCV-status and cannot request the 12-week oral medication.

(i)  All persons as in (a) who are not aware of their HCV status, who are fearful of being exposed to HCV because of IDOC policies and practices that make it impossible to know if any other inmates with whom they come in contact are HCV-positive, or not.

130.  Plaintiff seeks to represent the following Class on claims for declaratory and injunctive relief from state-created danger of HCV infection: All persons (male and female) incarcerated in IDOC facilities as of July 1, 2016 who have been, are, and will be, exposed to risk of harm daily by the deliberate indifference of Defendants' failure to adopt the 12-week FBOP Clinical HCV Treatment Guidelines – and successor non-Interferon therapies – who were not HCV positive upon entering IDOC facilities, or do

not know their HCV status and wish to be screened and treated, if testing positive.

131. As a result of Defendants' joint and several deliberate indifference to the serious medical needs of the Class, the members of the Class are or will be subjected to cruel and unusual punishment and deprived of other constitutional and statutory rights, and will face ongoing, threatened, and imminent physical harm.

132. Plaintiffs seek declaratory and injunctive relief to enjoin Defendants' actions, policies and practices that infringe on their rights.

133. The requirements of Rules 23(a) and 23(b), Fed. R. Civ. P. are met by this action:

(a) **NUMEROSITY** under Rule 23(a)(1): The precise number of inmates in the Class and their identity are within the control of Defendants. The names and locations of inmates testing positive for HCV and whether all inmates have even been screened (by a legitimate laboratory blood analysis) for HCV infection, are data controlled by Defendants. National averages predict the number would exceed 1,600, a size much too large to make joinder practicable.

(b) **COMMONALITY** under Fed. R. Civ. P. 23(a)(2): Questions of law and fact are common to the Class, including but not limited to: (1) nature and scope of the safer, more effective standard of care, exemplified by the Federal BOP Clinical Treatment Guidelines; (2) The IDOC policy for the treatment of HCV with

subjective monitoring of disease progression, or reliance on toxic Interferon that is outmoded for all patients, as these treatments are less safe and less effective;  (3) Whether the IDOC use of an outmoded medical treatment that fails to meet the current standard of care violates the Eighth Amendment;  (4) Whether the IDOC use of an outmoded medical treatment that is less safe and effective than the current clinical practice guidelines and professional standard of care violates Article II of the ADA as Amended; and, (5) Whether the IDOC use of an outmoded medical treatment model that is less safe and effective than the current standard of care violates Section 504 of the Rehabilitation Act.

(c)  **TYPICALITY** – Fed. R. Civ. P. 23(a)(3):  Plaintiffs claims are typical of the Class members because Plaintiff and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint.  Plaintiffs claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories.

(d)  **REPRESENTATIVENESS** – Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately protect the interests of the Class.  (2)  Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.  (3) Plaintiffs will seek and obtain competent and skilled counsel whose interests are aligned with the interests of the Class. (4)  Relief concerning Plaintiffs rights under the laws herein alleged and with respect to the Class would be proper.  (5)

(5) <u>continued</u> – Defendants have acted or refused to act with respect to the Class, thereby making final injunctive relief or corresponding injunctive relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

(e) **SUPERIORITY** - Fed. R. Civ. P. 23(b)(3):  (1)  A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the class is impracticable.  (2)  The number would prove unduly burdensome and inefficient for the Court and parties alike.  (3)  Because a common set of facts, grievances and remedies predominate over individual issues, individual litigation increases expenses to all parties, and better management of consistent adjudication and relief by a single court is in the interest of all parties.  (4)  Conduct of this action as a class action will protect the rights of all class members and promote judicial efficiency and consistency.  Notice can be provided to class members by United States mail, or alternatively, through IDOC authorized "J-Pay" email accounts.

134.   On information and belief after reasonable, diligent inquiry by the Plaintiffs, Defendant HENRY ATENCIO, Director of the Idaho Department of Correction (IDOC), is superior to Defendant RONA SIEGERT, IDOC Health Services Director.

//
//
//
//

E.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

135.   Defendant's HENRY ATENCIO and RONA SIEGERT have (a) actual notice of Plaintiff TURNEY, BARTLETT, HENDRICKSON, McCALL, AND CORTES' request for HCV treatment, i.e. one oral pill per day, twelve week regimen that the FBOP has adopted as its hepatitis C treatment protocol; (b) actual notice of the availability to discounted group Rx purchasing platforms of the "breakthrough" medications; (c) actual notice of the availability of Harvoni®, and Viekira Pak® as alternative medicines to earlier, more expensive Sovaldi®, in the one pill per day, twelve week regimen that eliminated previous therapies, i.e. toxic Interferon injections; (d) have continued to condition hepatitis C treatment on an arcane method or formula, that is arbitrary and capriciously applied, whereby IDOC, its agents, employees, representatives, or contractors including CORIZON, Inc., prioritize a minute fraction of HCV affected inmates to receive the community standard of HCV care, by guestimating the extent and degree of liver damage and the potential risk for developing end stage liver disease, hematologic cancer, or death; (e) actual notice that IDOC SOP 401.06.03.077, links chemical dependency treatment in the IDOC system which is an extraneous decision not made by the patient-specific professional judgment of a medical doctor, but rather an administrative calculus by a non-medical professional; and (f) have rejected Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES' repeated health service request for the one pill per day, twelve week regimen that the FBOP has adopted as its hepatitis C

treatment protocol.

136.    At times relevant to this lawsuit, including calendar years 2016 and 2017, Defendant RONA SIEGERT served as the Health Services Director, and while acting in conformity thereto, established a closed medication formulary, for individuals who are suffering from HIV, and, amongst others, suffer from the comorbidity of hepatitis C virus (HCV).   In conjunction with Defendant CORIZON, (PharmaCorr, a wholly owned subsidiary of CORIZON) implemented a pharmacy program centered on utilization management cost containment methods.   Additionally, Defendants IDOC / CORIZON continued to partner with Wellness Center/Family Medicine Health Center in providing inmates access to HIV disease treatment.

        As of August 28, 2013, the formulary for IDOC inmates who suffer from HIV, and, amongst others, from the comorbidity of HCV; included Ledipasvir/Sofosbuvir (Harvoni®), Sofosbuvir (Sovaldi®), and Simeprevir (Olysio®) for individuals fortunate enough to be prior-authorized to receive treatment services via the Wellness Center, IDOC, and CORIZON co-operative partnership.   Inmates who lack a comorbidity diagnosis are relegated to the closed formulary pharmacy program, with rudimentary "monitoring" of ones HCV infection and disease progression.

137.    At all times relevant to this lawsuit, the state of Idaho has had access to, and the ability to authorize medications within the one pill per day, twelve week protocol cure for hepatitis C, specifically, Sovaldi®, Harvoni®, and Olysio®.

138.    As the Health Services Director of the IDOC, Defendant SIEGERT, at

times relevant to this lawsuit, has had actual knowledge of the requests of Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES', for the life saving, 1 pill per day, twelve week protocol cure of Sovaldi® or its alternative Harvoni®.

139.    As Director of the IDOC, Defendant ATENCIO, at times relevant to this lawsuit, has had actual knowledge of the Plaintiffs' request for the life saving, 1 pill per day, twelve week protocol cure of Sovaldi® or its alternative Harvoni®.

140.    At times relevant to this lawsuit, Defendant CORIZON, Inc., (through its agents, employees, representatives, or medical staff), to include Defendant Dr's MIGLIORI, M.D., YOUNG, M.D., and DAWSON, M.D., has had actual knowledge of the serious medical needs of Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES for the life saving, 1 pill per day, twelve week protocol cure of Sovaldi® or its alternative Harvoni®.

141.    At times relevant to this lawsuit, Defendants ATENCIO, SIEGERT, and CORIZON (through its agents, employees, representatives, or medical staff), jointly and severally, have denied to Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES , with deliberate indifference to their serious medical needs as hepatitis C sufferers, their requests for the life saving one pill per day, twelve week protocol cure of Sovaldi® or its alternative Harvoni®.

142.    Each Plaintiff has exhausted their administrative remedies in full compliance to IDOC SOP 316.02.01.001, Grievance and Informal Resolution Procedure, e.g. Offender Concern Form, Grievance, Appeal;

notice of claims(s) in accord with the Idaho Tort Claims Act, I.C. § 6-901, et. seq., satisfying notification and exhaustion requirements under state and federal law.

143.  As a direct and proximate cause of these Defendants failure to provide the current community standard of care for hepatitis C, a number of Idaho prisoner's have needlessly suffered through end stage liver disease, organ (liver) failure, ultimately succumbing to their death.  cf. Idaho Dept. of Health & Welfare, Bureau of Vital Records, Death Certificate of Kevin Sagio, IDOC No. 18333.

144.  The foregoing averments and assertions of Plaintiffs constitute that Plaintiffs face imminent danger of serious and continuing physical pain, and medical injury.

### CLAIMS

### CLAIM I:
### TITLE II OF THE ADA
### AGAINST IDAHO DEPARTMENT OF CORRECTION

145.  Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated plaintiffs, reallege and reassert each and every claim and averment above and incorporate in haec verba as if they were fully set forth herein.

146.  Defendant IDOC, a federally funded entity, by and through Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and DOES A-Z, in their respective official capacities, discriminated against Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated Plaintiffs, and caused them to be excluded from participating in programs and denied access to services in the

Idaho Department of Correction systems, specifically and without limitation ISCC, ISCI, SICI, because of their disabilities – hepatitis C – in violation of Title II of the American with Disabilities Act as Amended.

## CLAIM II:

### § 504 OF THE REHABILITATION ACT OF 1973
### AGAINST IDAHO DEPARTMENT OF CORRECTION

147.    Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated plaintiffs, reallege and reassert each and every claim and averment above and incorporate in haec verba as if they were fully set forth herein.

148.    Defendant IDOC, a federally funded entity, by and through Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and DOES A–Z, in their respective official capacities, discriminated against Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated Plaintiffs, and caused them to be excluded from participation in programs and denied access to services in the IDOC systems, specifically and without limitation ISCC, ISCI, SICI, due to their disabilities – hepatitis C – in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 – 794a.

## CLAIM III:

### § 504 OF THE REHABILITATION ACT AGAINST
### CORIZON, INC.

149.    Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES', and all similarly situated plaintiffs, reallege and reassert each and every claim and averment above and incorporate the same in haec verba as if they were fully set forth herein.

150.    Defendant CORIZON, Inc., a federally funded entity, by and through Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and DOES A-Z, in their respective individual and official capacities in the course of their activities as agents or representatives of CORIZON, Inc., discriminated against Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated Plaintiffs, and caused them to be excluded from participation in programs and denied access to services in the IDOC systems, specifically and without limitation ISCC, ISCI, SICI, due to their disabilities - hepatitis C – in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 – 794a.

### CLAIM IV:

### DEPRIVATION OF
### U.S. CONST. AMEND. VIII AND XIV RIGHT
### TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL
### PUNISHMENT, FOR WHICH 42 U.S.C. § 1983 PROVIDES REMEDIES

151.    Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES', and all similarly situated Plaintiffs, reallege and reassert each and every claim and averment above and incorporate the same in haec verba as if they were fully set forth herein.

152.    Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and DOES A-Z, in their respective official capacities, jointly and severally, have enforced the Idaho Department of Correction policy that (a) rations medication and meaningful treatment of hepatitis C to a limited number of inmates for administrative convenience or money, and (b) conditions treatment of hepatitis C on chemical dependency treatment, and (c) contravenes the clearly established hepatitis-C

medical treatment community standard of care, with reference to
Erickson v. Pardus, 551 U.S. 89, 90; 127 S.Ct. 2197 (2007), which
constitutes deliberate indifference to the serious medical needs
of Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and
all similarly situated Plaintiffs suffering from hepatitis C,
thereby establishing a violation of U.S. Const. amend. VIII and
XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable,
mandamus, and legal remedies.

### CLAIM V:

**DEPRIVATION OF
U.S. CONST. AMEND. VIII AND XIV RIGHT
TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL
PUNISHMENT, FOR WHICH 42 U.S.C. § 1983 PROVIDES REMEDIES**

153.   Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all
similarly situated Plaintiffs, reallege and reassert every claim
and averment above and incorporate the same in haec verba as if
they were fully set forth herein.

154.   Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and DOES A-Z,
jointly and severally in their respective official capacities,
for non-medical reasons of polic(y/ies), established a closed
medication formulary, for inmate patients suffering from HIV, and
comorbidity of hepatitis C virus, by and through utilization
management, authorize certain patients to benefit from the one
pill per day, twelve week treatment protocol through partnership
with the Wellness Center/Family Medicine Health, CORIZON, Inc.,
and Pharma Corr, relegating the vast majority of prisoners to the
closed formulary - Chronic Disease program - merely "monitoring"

HCV symptoms and disease progression.

155.   Defendants ATENCIO, SEIGERT, other IDOC agents, employees, or
representatives and CORIZON, Inc., through Wellness Center/Family
Medicine Health, and PharmaCorr, have continued this polic(y/ies)
for non-medical reasons, which constitutes deliberate indifference
to the serious medical needs of the Plaintiffs, while
intentionally and deliberately refusing to treat HCV patients with
the simple twelve-week one-pill-a-day safer and more effective
prevailing professional community standard of medical care that
can be offered at any of the ten (10) IDOC facilities, in
violation of Plaintiffs rights under U.S. Const. amend. VIII and
XIV to be free from cruel and unusual punishment, for which 42
U.S.C. § 1983 provides declarative, equitable, and legal remedies.

## CLAIM VI:

### DEPRIVATION OF
### IDAHO STATE CONST. ART. I §§1, AND 6
### RIGHT TO BE FREE FROM INFLICTION OF CRUEL AND
### UNUSUAL PUNISHMENT, FOR WHICH IDAHO CONST.
### ART. I, §§ 13, 18; ART. X §§ 1 AND 5, PROVIDES LEGAL REMEDIES

156.   The foregoing averments and assertions of Plaintiffs constitute
averments that Plaintiffs face imminent danger of serious and
contintuing physical, medical injury.

157.   Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all
similarly situated plaintiffs, reallege and reassert each and
every claim and averment above and incorporate the same in haec
verba as if they were fully set forth herein.

158.   Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and DOES A-Z,
in their respective official capacities, jointly and severally,

have enforced IDOC polic(y/ies) that (a) rations medication and meaningful treatment of hepatitis C to a limited number of inmates for administrative convenience or money, and (b) conditions treatment of hepatitis C on chemical dependency treatment, and (c) contravenes the clearly established hepatitis-C medical treatment community standard of care for inmates suffering from hepatitis that the AALSD/ASID, CDC, USPHS, VA and FBOP established as of June 2014, which constitutes a deliberate indifference to the serious medical needs of Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated Plaintiffs suffering from HCV, thereby establishing a violation of Idaho State Const. Art. I, §§ 1 and 6, for which ID. Const. Art. I, §§ 13, 18; and Art. X §§ 1 and 5, provides declaratory, equitable, mandamus, and legal remedies.

159.   The foregoing averments and assertions of Plaintiffs constitute averments that Plaintiffs face imminent danger of serious and continuing physical, medical injury.

### CLAIM VII:

### DEPRIVATION
**of the Clearly Established U.S. Const. amend. VIII and XIV Right to Be Free from Cruel and Unusual Punishment By Private Sub-Contractors Under Farmer v. Brennan, 511 U.S. 825 (1994), Erickson v. Pardus, 551 U.S. 89 (2007), & Kahle v. Leonard, 477 F.3d 544 (8th Cir. 2007)**

160.   Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES , and all similarly situated Plaintiffs reallege and reassert each and every claim and and averment above and incorporate the same in haec verba as if they were fully set forth herein.

161.    Defendant CORIZON, Inc., as a matter of non-medical corporate policy or custom, has enforced an outdated conservative treatment plan consisting of quarterly "monitoring" HCV infected patients while relying upon subjective data as means to exclude or ration medication and meaningful treatment of hepatitis C to a limited number of patients for administrative convenience or money, thereby enforcing the deliberate indifference and cruel and unusual punishment arising from failure to prescribe up-to-date, safer and more effective community standard of care and treatment for HCV, in violation of Plaintiffs' clearly established right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV.

162.    Medical staff employed by the private sub-contractors to IDOC, Defendants MIGLIORI, YOUNG, DAWSON, JOHN and JANE DOES, are aware of the safer and more effective standards of care for hepatitis C, and their denial of treatment with the 12-week one-pill-per-day treatment——for non-medical reasons, constitutes wanton and willful disregard for medical standards and practice.

163.    Failure to prescribe the safer, more effective 12-week oral treatment protocol adopted by the FBOP is knowing and intentional, which further constitutes deliberate indifference to Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES' serious medical needs, thereby violating their right to be free from cruel and unusual punishment as proscribed by U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

164.   These allegations constitute averments of imminent danger of serious and continuing physical, medical injury.

## CLAIM VIII:

### DEPRIVATION OF EIGHTH AMENDMENT
### RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

165.   Plaintiffs TURNEY, BARTLETT, et al, reallege and reincorporate each and every claim and averment above and incorporate them below.

166.   Plaintiffs ROE, MILES, and STILES assert the same foregoing causes of action from the perspective of inmates who were HCV free when entering IDOC incarceration, or who have been cured of HCV, and who spend each day facing "imminent danger of serious physical injury" from being exposed to the debilitating and potentially fatal virus, HCV, from other inmates that Defendants could eradicate in three (3) months and decline to do so, for non-medical reasons.

167.   All new HCV infections in IDOC facilities since January 1, 2014 are the direct and proximte consequence of the danger knowingly and intentionally created by Defendants' IDOC and CORIZON, Inc. refusal to adopt the FBOP, CDC and U.S. Public Health Service protocols.

168.   The joint and several actions of the Defendants in their official and individual capacities demonstrate deliberate indifference to the serious medical needs of Plaintiffs ROE, MILES, and STILES to be free from infections by the blood borne pathogen of HCV, and thus violates Plaintiffs' rights under U.S. Const. amend. VIII and

XIV to be free from cruel and unusual punishment, for which 42 U.S.C § 1983 provides declaratory, equitable, and other legal remedies.

169. These allegations constitute averments of imminent danger of serious physical, medical injury.

### CLAIM IX:

### DENIAL OF EQUAL PROTECTION OF THE LAW UNDER U.S. CONST. AMEND. V AND XIV, THROUGH 42 U.S.C. § 1983

170. Plaintiffs TURNEY, BARTLETT, et al., reallege and reincorporate each and every claim and averment above and incorporate them below.

171. Both HCV and HIV/AIDS are blood-borne viral diseases.

172. Both diseases are transmitted by personal contact between individuals.

173. Preventive vaccines for HIV/AIDS and HCV do not exist at this time.

174. The HIV/AIDS and HCV viruses can be suppressed to reduce or prevent transmission of the viruses, but only HCV can be cured in 12-weeks of oral medication.

175. IDOC screens for and treats HIV/AIDS in a manner that differs significantly from HCV, without medical justification or rational basis for doing so.

176. IDOC withholds treatment for HCV in a manner that differs significantly from the treatment it provides for HIV/AIDS (with federal funding and 3rd party charitable cooperatives) without medical justificcation, or a rational basis for doing so since the

12-week hepatitis C standard-of-care has been adopted.

177.  IDOC and CORIZON, Inc. medical protocols require that HCV infections progress to the point of causing cirrhosis or scarring of the liver, which cannot be reversed.

178.  This HCV policy is akin to a policy that permits HIV infection to become full-blown AIDS, or to manifest life-threatening conditions including pneumonia or Kaposi's Sarcoma, before approving anti-retroviral drug treatments.

179.  IDOC / CORIZON treats inmates for HIV infection upon a positive test for HIV, and does not wait for acute conditions or life-threatening illnesses manifest by full-blown AIDS.

180.  The IDOC / CORIZON policy of differential treatment for HCV, in comparison to HIV infection, lacks rational basis under prevailing science, medicine, and clearly established law.·

181.  The IDOC / CORIZON policy of refusal to treat HCV infection of inmates until manifesting in liver fibrosis, liver scarring, cirrhosis, or liver cancer lacks rational basis in violation of Plaintiffs' right to equal protection of the laws under U.S. Const. amend. V and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

182.  These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM X:

### DENIAL OF EQUAL PROTECTION OF THE LAW UNDER
### U.S. CONST. AMEND. V AND XIV, THROUGH 42 U.S.C. § 1983

183.  Plaintiff TURNEY, BARTLETT, et al, reallege and reincorporate each

and every claim and averment above and incorporate them below.

184. IDOC and CORIZON protocols require that HCV infections progress to the point of causing cirrhosis or scarring of the liver when the FDA-designated HCV "breakthrough" drugs are equally effective for patients at all levels of viral infections.

185. AASLD/ASID, CDC, VA, USPHS, and the FBOP June 2014 protocol do not differentiate between HCV patients with respect to viral load, or those who have tested positive for HCV without fibrosis, cirrhosis, or liver cancer, or those who have fibrosis, cirrhosis, or liver cancer.

186. The IDOC and CORIZON polic(y/ies) employing differential treatment for HCV patients, waiting to treat HCV sufferers when they reach a set viral load, or manifest liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer, lacks rational basis under prevailing science, medicine, and clearly established law.

187. The IDOC and CORIZON polic(y/ies) of refusal to treat HCV infection of inmates until manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer lacks rational basis in violation of Plaintiffs' rights to equal protection of the laws under U.S. Const. amend. V and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

188. These allegations constitute averments of imminent danger of serious physical, medical injury.

//

//

//

COMPLAINT - 48

CLAIM XI:

DENIAL OF EQUAL PROTECTION OF THE LAW
AND CRUEL AND UNUSUAL PUNISHMENT IN DELIBERATE
INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS OF PLAINTIFFS
IN VIOLATION OF U.S. CONST. AMEND V, VIII, AND XIV,
PROTECTED THROUGH 42 U.S.C. § 1983

189.   Plaintiffs TURNEY, BARTLETT, et al, reallege and reincorporate each and every claim and averment above and incorporate them below.

190.   IDOC and CORIZON protocols require that HCV infections progress to the point of causing cirrhosis or scarring of the liver when the FDA-designated HCV "breakthrough" drugs are equally effective for patients at all levels of viral infections.

191.   AASLD/ASID, CDC, VA, USPHS and the FBOP October 2016 protocol do not differentiate between HCV patients with respect to viral load, or those who have tested positive for HCV without fibrosis, cirrhosis, or liver cancer, or those who have fibrosis, cirrhosis, or liver cancer.

192.   IDOC and CORIZON, in collaboration with the Wellness Center/Idaho Family Medicine Health Center, a cooperative partnership and recipient of state and federal funds, under licensing from the Idaho Department of Health & Welfare; authorizes use of the one pill per day, twelve week protocol cure of Sovaldi® or Harvoni® to inmate patients and clients who suffer comorbidities of HIV and HCV, without requiring as a precondition to treatment, a set viral load, or manifest liver fibrosis, liver scarring, cirrhosis of the liver, liver cancer, or chemical dependency counseling.

193.  The IDOC and CORIZON policy of differential treatment for HCV patients, waiting to treat sufferers when they reach a set viral load, or manifest liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer, lacks rational basis under prevailing science and medicine, and manifests deliberate indifference to the serious medical needs of Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, and all other similarly situated plaintiffs suffering from HCV, in defiance of clearly established law.

194.  THE IDOC and CORIZON polic(y/ies) of refusal to treat HCV infection of inmates until manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer lacks rational basis in violation of Plaintiffs' rights to equal protection of the laws under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

195.  These allegations constitute averments of imminent danger of serious physical, medical injury.

### CLAIM XII:

### TITLE II OF THE ADA AS AMENDED
### AGAINST IDAHO DEPARTMENT OF CORRECTION

196.  Plaintiffs reallege and reassert each and every claim and averment above.

197.  The IDAHO DEPARTMENT OF CORRECTION, by and through Defendants ATENCIO, SIEGERT, CORIZON, MIGLIORI, YOUNG, DAWSON, DOES A-Z, in their respective official capacities, and through the actions of agents, employees, representatives, or medical staff,

discriminated against Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, and all similarly situated Plaintiffs, and caused them to be excluded from programs and denied access to services in the IDOC systems, specifically and without limitation ISCC, ISCI, SICI, because of their disabilities – hepatitis C – in violation of Title II of the Americans with Disabilities Act as Amended, more especially in view of the availability of the life-saving one pill per day twelve week protocol cure of Sovaldi® or Harvoni® to patients or benefit recipients of the IDOC, CORIZON, IDAHO DEPARTMENT OF HEALTH & WELFARE.

198. These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM XIII:

### § 504 OF THE REHABILITATION ACT OF 1973 AGAINST IDAHO DEPARTMENT OF CORRECTION AND CORIZON, JOINTLY AND SEVERALLY

199. Plaintiffs reallege and reassert each and every claim and averment above.

200. The IDOC, by and through Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, DOES A – Z in their respective official capacities, and Defendant CORIZON, through the actions of its agents, employees, representatives, or medical staff, jointly and severally, discriminated against Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, and all similarly situated Plaintiffs, and caused them to be excluded from participation in federally subsidized programs and denied access to services in the

IDOC systems, specifically and without limitation ISCC, ISCI, SICI, because of their disabilities – hepatitis C – in violation of § 504 of the Rehabilitation Act of 1973, more especially in view of the availability of the life-saving one pill per day twelve week protocol cure of Sovaldi® or Harvoni® to patients or benefit recipients of the IDOC, CORIZON, or IDAHO DEPARTMENT OF HEALTH & WELFARE.

### CLAIM XIV:

### U.S. CONSTITUTION AMEND. VIII AND XIV

201. Plaintiffs TURNEY, BARTLETT, et al., and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

202. Defendants ATENCIO, SIEGERT, DOES A-Z, MIGLIORI, YOUNG, DAWSON, and CORIZON, jointly and severally, through their (a) decisions to deny Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, et al., the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, (b) their decisions to deny lifesaving, curative care of Plaintiffs' hepatitis C infections for administrative convenience by imposition of irrational, not medically based criteria limiting lifesaving twelve-week, one pill per day regimen, and (c) their decisions to deny lifesaving, curative, one pill per day, twelve week regimen that is the hepatitis C medical treatment community standard of care on the basis of cost and not the serious medical needs of the plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis-C infected

blood, demonstrate deliberate indifference to the serious medical needs of Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, and others similarly situated, and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

203.   Defendants ATENCIO, SIEGERT, MIGLIORI, YOUNG, DAWSON, and CORIZON, jointly and severally, through their decisions to deny Plaintiffs the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, demonstrate deliberate indifference to the serious medical needs of Plaintiffs and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

204.   These allegations constitute averments of imminent danger of serious physical, medical injury.

### CLAIM XV:

### § 504 OF THE REHABILITATION ACT OF 1973 AGAINST IDAHO DEPARTMENT OF CORRECTION AND CORIZON, INC., JOINTLY AND SEVERALLY

205.   Plaintiffs TURNEY, BARTLETT, et al., and all similarly situated Plaintiffs reallege and reassert each and every claim and averment above.

206.   Defendants IDOC and CORIZON, jointly and severally, through their (a) decisions to deny Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, and all others similarly situated, the twelve-week,

one pill per day regimen that is the hepatitis-C medical treatment community standard of care, (b) their decisions to deny lifesaving, curative care of Plaintiffs' hepatitis C infections for administrative convenience by imposition of irrational, not medically based criteria limiting lifesaving, curative, one pill per day, twelve-week regimen that is the hepatitis C medical treatment community standard of care on the basis of cost and not the serious medical needs of the plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis-C infected blood, demonstrate discriminatory exclusion of plaintiffs from the benefits of federally funded services because of their disabilities, in violation of § 504 of the Rehabilitation Act of 1973.

207.    These allegations constitute averments of imminent danger of serious physical, medical injury.

## CLAIM XVI:

### TITLE II OF THE ADA
### v IDAHO DEPARTMENT OF CORRECTION

208.    Plaintiffs TURNEY, BARTLETT, et. al., and all others similarly situated, reallege and reassert each and every claim and averment amove.

209.    Defendant IDOC through the decisions of its agents, employees, representatives, or officers, (a) to deny Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, and all similarly situated Plaintiffs, the twelve-week, one pill per day regimen that is the hepatitis-C medical treatment community standard of care, (b) to deny lifesaving, curative care of Plaintiffs' hepatitis C

infections for administrative convenience by imposition of irrational, not medically based criteria limiting lifesaving twelve-week, one pill per day regimen, and (c) to deny lifesaving, curative, one pill per day, twelve-week regimen that is the hepatitis C medical treatment community statdard of care on the basis of cost and not the serious medical needs of the plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis-C infected blood, demonstrate discriminatory exclusion of plaintiffs from the benefits of public services because of their disabilities, in violation of Title II of the ADA.

210.  These allegations constitute averments of imminent danger of serious physical, medical injury.

**RELIEF DEMANDED**

**WHEREFORE** Plaintiffs TURNEY, BARTLETT, and all similarly situated Plaintiffs pray for the following relief:

A.  Judgment against the Defendants, jointly and severally;

B.  Certification of the classes and subclasses of Plaintiffs named above;

C.  For the named Plaintiffs and members of the Plaintiff classes and subclasses, Declarative Judgment that the Defendant IDAHO DEPARTMENT OF CORRECTION hepatitis C policy violates Title II of the Americans with Disabilities Act as Amended, § 504 of the Rehabilitation Act of 1973, U.S. Const. amend. VIII and XIV through 42 U.S.C. § 1983, and Idaho State Const. Art. I, §§ 1 and 6, through Idaho State Const. Art. I, §§ 13, 18; and Art. X §§ 1 and 5.

D.  For the named Plaintiffs and members of the Plaintiff classes and

subclasses:

1. Permanent injunction against the perpetuation of the IDOC hepatitis C treatment protocol that conditions hepatitis C treatment on participation in, or completion of chemical dependency treatment;

2. Permanent injunction against the perpetuation of the IDOC hepatitis C treatment protocol that withholds anti-viral medication treatment for inmates until the inmate presents evidence of liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer;

3. Permanent injunction against the IDOC hepatitis C treatment protocol that does not administer anti-viral hepatitis C medication to inmates with twelve or more weeks in IDOC custody immediately upon a positive test for HCV; and,

4. Permanent injunction against any IDOC policy failing to phlebotomy test for HCV each and every IDOC inmate upon intake, and prior to release (I.C. 39-601; 39-604), as IDOC does for HIV/AIDS;

E. For Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, CORTES, equitable relief to order the immediate commencement of the one pill per day, twelve-week hepatitis C treatment that uses the medication Sovaldi® , Harvoni® or their equivalent, in accordance with the Federal Bureau of Prisons October 2016 Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection, Clinical Practce Guidelines, that the FDA, the CDC, the Surgeon General of the United States Public Health Service has approved for treatment of hepatitis C since June 2014, WITHOUT first requiring plaintiffs to present symptoms or evidence or manifestations of fibrosis, cirrhosis, liver cancer, or end stage liver disease;

F. For Plaintiffs ROE, MILES, and STILES, (a) identification of all IDOC inmates with twelve or more weeks remaining in their sentences who were denied hepatitis C treatment since December 2013 with the one pill per day, twelve-week protocol which the

FBOP approved in June 2014, (b) identification of all IDOC inmates with 12 or more weeks remaining in their sentences who were denied hepatitis C treatment since December 2013 for non-participation or completion of chemical dependency treatment, (c) provision of the one pill per day, twelve-week hepatitis C treatment protocol which the FBOP approved in June 2014 to all inmates with twelve or more weeks left in their sentences who test positive for hepatitis C, (d) screening of all current IDOC inmates for hepatitis C immediately, (e) immediate phlebotomy screening of all newly admitted IDOC inmates for hepatitis C, consistent with I.C. §§ 39-601, 39-602, and 39-604 mandate; and with the screening protocols for HIV/AIDS virus;

G.   For Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES, an award of appropriate compensatory damages against Defendants, jointly and severly, for all claims for which compensatory damages are available, in an amount to be determined by jury;

H.   For Plaintiffs TURNEY, BARTLETT, HENDRICKSON, McCALL, and CORTES, an award of punitive damages against the Defendants sued in their respective individual capacities, and CORIZON, Inc. for claims arising under U.S. Const. amend. VIII and XIV, in an amount to be determined by jury;

I.   Prejudgment interest;

J.   Postverdict interest;

K.   Costs and disbursements;

L.   Reasonable attorney fees in accordance with 42 U.S.C. § 1983;

M.   Enjoin the Defendants from taking any action to interfere with Plaintiffs' right to maintain this action, or from retaliating against Plaintiffs for bringing this action;

N.   **GRANT** such further and other relief as the court deems just and equitable.

**PLAINTIFFS DEMAND JURY TRIAL ON ALL CLAIMS TRIABLE TO THE JURY.**

**DECLARATION**

    18 U.S.C. § 1621  /  28 U.S.C. § 1746

    The undersigned Plaintiffs declare under penalty of perjury that they are interested parties in the above entitled action, that each signatory has read the foregoing COMPLAINT, and that the informattion contained therein is true and correct to the best of their knowledge and belief.

DATE:  27 December, 2017                                  
Philip A. Turney

        27 December, 2017                                  
Billy Ray Bartlett

        27 December, 2017                                  
James S. Hendrickson

        27 December, 2017                                  
Michael A. McCall

        28 December, 2017                                  
Reuben J. Cortes

   Executed at the Idaho Department of Correction, 5 Miles South Pleasant Valley Road, Kuna, Idaho  83634.