UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP A. TURNEY,<br><br>                    Plaintiffs,<br><br>     v.<br><br>HENRY ATENCIO; RONA SIEGERT;<br>JOHN G. MIGLIORI; MURRAY F.<br>YOUNG; APRIL C. DAWSON; JOHN<br>and JANE DOES A-Z; CORIZON,<br>INC.; and IDAHO DEPARTMENT OF<br>CORRECTION,<br><br>                    Defendants. | Case No. 1:18-cv-00001-BLW<br><br>**INITIAL REVIEW ORDER** |

The Clerk of Court conditionally filed Plaintiff Philip A. Turney's Complaint as a

result of Plaintiff's status as an inmate and in forma pauperis request.[1] The Court now

reviews the Complaint to determine whether it or any of the claims contained therein

should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed

the record, and otherwise being fully informed, the Court enters the following Order.

## REVIEW OF COMPLAINT

### 1.      Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction

("IDOC"), currently incarcerated at the Idaho State Correctional Center. Plaintiff has

---

[1]      Plaintiff initially filed this case with four other co-plaintiffs, but the Court severed the action into five separate cases, each with a single plaintiff. (*See* Dkt. 21.)

been diagnosed with the Hepatitis-C virus, or "HCV." (Compl., Dkt. 11, at 5.) Prior to late 2013, HCV was generally treated with Interferon injections that "lasted nearly a year with low levels of success and serious side effects." (*Id.* at 3.) In December 2013, a new, "breakthrough" treatment was approved by the FDA. The drugs used in the new treatment have a 95% success rate, and patients are required to take one pill per day for only twelve weeks. Numerous medical associations and federal agencies, including the federal Bureau of Prisons, have "recognized the changed standard-of-care" with respect to the appropriate treatment of HCV. (*Id.*)

Plaintiff has been refused the new, curative HCV treatment in prison, despite the fact that it is safer and more effective than the previous treatment. (*Id.* at 5-6, 11.) He was offered the older treatment but decided "to forego toxic Interferon injection treatment . . . due to its low success rate (<40%) in clinical trials relative to genotype-A, the specific HCV strain [Plaintiff] is known to be infected with." (*Id.* at 5-6.) Plaintiff alleges that the new treatment is not provided to certain inmates like Plaintiff "because of non-medical IDOC policies designed to ration medication to a limited number of inmates, for administrative convenience or money, without regard to [Plaintiff's] individual medical needs and disabling case of HCV." (*Id.* at 6.) Plaintiff also asserts that, as a matter of policy, the new HCV treatment is offered to inmates only after the inmates "manifest symptoms of fibrosis, cirrhosis of the liver, or liver cancer." (*Id.* at 27, ¶ 116.) Otherwise, inmates with HCV are not treated with the new, breakthrough drug protocols.

Plaintiff alleges that Defendants' failure to provide him with the new HCV treatment violates (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, (2) the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701 *et seq.*, (3) the Eighth and Fourteenth Amendments to the U.S. Constitution,[2] and (4) the Idaho State Constitution. (Compl. at 38-55, ¶¶ 145-210.) He names as Defendants the IDOC, Corizon (the private entity providing medical care to Idaho inmates under contract with the IDOC), the Director of the IDOC, the Health Services Director of the IDOC, and three individual medical providers who have treated Plaintiff's HCV. (*Id.* at 1-2, 12-16.)

## 2.     Standard of Law for Summary Dismissal

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2]     Plaintiff also invokes the Fifth Amendment's Equal Protection Clause. (Compl. at 47-49.) However, that clause applies to the federal government, not state governments. Therefore, Plaintiff's equal protection claims will be analyzed under the Equal Protection Clause of the Fourteenth Amendment.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

### 3. Section 1983 Claims

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09. A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999).

A plaintiff cannot simply restate these standards of law in a complaint; instead, a plaintiff must provide specific facts supporting the elements of each claim, and he must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A.    *Eighth Amendment Claims*

The Eighth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an

objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, the Supreme Court of the United States has explained that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. However, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Differences in judgment between an inmate and prison medical providers regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the

circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). A delay in treatment does not violate the Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061. A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

As set forth below, Plaintiff's Complaint, liberally construed, appears to state colorable Eighth Amendment medical-treatment claims against some of the named Defendants.

### i.  Defendant Medical Doctors Migliori, Young, and Dawson

Plaintiff alleges that the three individual medical provider Defendants—Drs. Migliori, Young, and Dawson—have treated Plaintiff for HCV but have not offered him the new treatment. The choice of one treatment over another is generally left to the

discretion of prison medical providers, and disagreements over treatment options usually are insufficient to support an Eighth Amendment claim. *Sanchez*, 891 F.2d at 242. However, given Plaintiff's allegations that numerous federal agencies and medical organizations have taken a stance that the new HCV treatment is the appropriate standard of care, and given that the new standard is so much more effective than the older treatment, the Court concludes, at this early stage of the proceedings, that Plaintiff has stated a plausible Eighth Amendment claim against these three Defendants. That is, it is plausible that the choice of the older treatment over the new treatment "was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk" to Plaintiff's health. *Toguchi*, 391 F.3d at 1058 (internal quotation marks omitted).

ii.     Defendant Health Services Director Rona Siegert

Plaintiff claims that Defendant Health Services Director Rona Siegert denied Plaintiff's grievances regarding the refusal to offer him the new HCV treatment, after consulting with Defendant Director Atencio and non-defendant Grant Roberts.[3]

Defendants who were involved in reviewing claims in the administrative grievance process—such as Defendant Siegert in Plaintiff's case—may or may not have liability for the constitutional violations complained of regarding actual grievances they processed, depending upon (1) the type and timing of the problem complained of and (2) the role of

---

[3]     Plaintiff describes Roberts as a "defendant" in the body of the Complaint, but does not name him in the caption. (Compl. at 1-2, 14.) Therefore, Plaintiff's description of Roberts as a "Defendant" in the body of the Complaint is ineffective.

the defendant in the process. For example, a grievance reviewer cannot *cause* or *contribute to* a *completed* constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"). If, however, the alleged constitutional violation is ongoing, and the defendant reviewing the inmate concern form or grievance has the duty and authority to review the propriety of the medical treatment and take action to remedy the alleged deficiencies (not by providing medical care themselves, but by obtaining the answer to whether the medical care was proper from a person with medical training and directing a remedy to be implemented), then a cause of action lies, because the defendant "knew of an ongoing constitutional violation and . . . had the authority and opportunity to prevent the ongoing violation," under supervisory liability principles applied in § 1983 actions. *See Herrera v. Hall*, 2010 WL 2791586 at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor*, 880 F.2d at 1045).

Where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's diagnosis, but whether the plaintiff has sufficiently alleged or provided evidence from which a jury could find that the supervisor's knowing failure to address the treating provider's deficient care interfered with Plaintiff's medical treatment. *See Gonzalez v. Ahmed*, 2014 WL 4444292, at *8 (N.D. Cal. 2014). For example, in

*Gonzalez*, summary judgment was denied as to the supervisory liability of Dr. Chudy in reviewing Dr. Ahmed's care of Plaintiff under the following circumstances:

> Under Plaintiff's version of the facts, Dr. Ahmed flatly refused to examine him because Dr. Ahmed was tired at the end of the day. Plaintiff further alleges that Dr. Chudy and Dr. Sepulveda knew that Dr. Ahmed had denied Plaintiff care, but nonetheless ordered Plaintiff to return to Dr. Ahmed's care.

*Id.* at *8.

The *Gonzalez* court further determined that the plaintiff's complaints to Dr. Chudy were not merely about past health care, but "referred to an ongoing and substantial risk to his health, and requested that Dr. Ahmed's actions be investigated so as to prevent future incidents." *Id.* at 1158. The court further denied Dr. Chudy's request for application of qualified immunity, reasoning that, "under Plaintiff's version of the facts, a prison official could not reasonably believe that forcing Plaintiff to return to Dr. Ahmed's care unsupervised would not be an effective denial of, or intentional interference with, Plaintiff's necessary medical treatment." *Id.*

Liberally construing the Complaint, the Court concludes that Plaintiff has stated a plausible claim that Defendant Siegert has been deliberately indifferent to Plaintiff's serious medical need. Having been placed on notice that Plaintiff was refused the breakthrough HCV treatment, Defendant Siegert could have inferred that Plaintiff faced a substantial risk of harm without the new treatment yet chose to disregard that risk. Thus, Plaintiff may proceed against Defendant Siegert on the current allegations.

iii.     Defendant Corizon

Plaintiff contends that he was denied adequate treatment for his HCV based on an IDOC or Corizon policy "to ration medication to a limited number of inmates" without regard to the individual inmate's HCV status. (Compl. at 6.) That is, the new (and more expensive) HCV treatment was reserved only for those inmates who had manifested certain dangerous symptoms, such as "fibrosis, cirrhosis of the liver, or liver cancer." (*Id.* at 28.)

To bring a § 1983 claim against a municipality—or a private entity performing a government function, such as Corizon—a plaintiff must plausibly allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978); *see also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 policy claim are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right[4]; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir.

---

[4]     Whether a policy or custom amounts to deliberate indifference to a plaintiff's constitutional rights is an objective inquiry. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017). That is, a policy or custom amounts to deliberate indifference if "the facts available to [governmental] policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Id.* (internal quotation marks and emphasis omitted).

2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff's Complaint, liberally construed, asserts a plausible Eighth Amendment policy claim against Corizon with respect to the choice of treatment for his HCV.

iv.     Defendant IDOC

The Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state or state entity absent a waiver of state sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not constitute such a waiver, and Idaho itself has not waived its sovereign immunity for constitutional claims. *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012)

(unpublished). Moreover, only a "person" may be sued pursuant to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's § 1983 claims against the IDOC will be dismissed.

v.       <u>Defendant IDOC Director Henry Atencio</u>

Plaintiff alleges that Defendant Atencio, the Director of the IDOC, consulted with Defendant Siegert with respect to the denial of Plaintiff's grievances. However, Defendant Atencio does not have medical training and, therefore, was entitled to rely on Siegert's opinion as to whether Plaintiff was at risk of harm from his treating physician's choice of HCV treatment. *See Snow*, 681 F.3d at 986. Thus, the Complaint does not plausibly allege an Eighth Amendment damages claim against Atencio.

However, because Director Atencio appears to have the ultimate responsibility to ensure that Idaho inmates are provided with adequate medical treatment, Plaintiff may proceed against Atencio on his claims for injunctive relief. *Rounds*, 166 F.3d at 1036.

vi.       <u>Doe Defendants</u>

Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendants

comes to light during discovery, Plaintiff may move to amend his Complaint to assert claims against those Defendants.[5]

### B.     Equal Protection Claims

Plaintiff also asserts equal protection claims. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted). Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal

---

[5]      Plaintiff should be aware, however, that any claims included in an initial complaint, but not asserted in an amended complaint, are considered waived. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

protection claims generally are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

In a rational basis analysis, the relevant inquiry is whether Defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted). Under this rational basis test, Plaintiff can prevail only if he is similarly situated with persons who are treated differently by Defendants, and if Defendants have no rational basis for the disparate treatment. Stated another way, prison officials need show only a rational basis for dissimilar treatment in order to defeat the merits of Plaintiff's claim. *Id.* In addition to the deference inherent in a rational basis inquiry, an additional layer of deference to prison officials is required under *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), which holds that a prison regulation is constitutional so long as it is reasonably related to a legitimate penological purpose. *See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, . . . even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)).

Even where similarly-situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of

invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id.* at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection. . . . There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Plaintiff's Complaint does not state a plausible equal protection claim. Plaintiff recognizes that the inmates who have received the new HCV treatment are inmates with manifested symptoms, such as "fibrosis, cirrhosis of the liver, or liver cancer." (Compl. at 28.) Plaintiff—who does not allege that he suffers from these symptoms—is not similarly-situated with those inmates who have received the new HCV treatment because of the manifestation of dangerous symptoms. Therefore, Plaintiff's equal protection claims will be dismissed.

**4.      ADA and RA Claims**

Plaintiff also asserts claims under the ADA and the RA. The ADA generally prohibits discrimination on the basis of an individual's disability. The ADA and the RA are congruent statutes in purpose and application. *See Clark v. California*, 123 F.3d 1267, 1270 (9th Cir. 1997). The evidence required for bringing an RA claim is the same as that for an ADA claim, with the additional requirement that the disability discrimination be committed by an entity receiving federal financial assistance. *See* 29 U.S.C. § 794(a). Therefore, the standards of an ADA claim also apply to an RA claim.

Title II of the ADA applies to an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Title II extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a disability. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998). In order to proceed with an ADA claim, Plaintiff must plausibly allege (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

A governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

In contrast to a § 1983 claim, by statutory definition a Title II ADA claim must be brought against the state or the state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."); *compare Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (per curiam) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities). Claims against individuals asserted under the ADA are treated as official capacity claims because no individual capacity claims exist under the statute. *See, e.g., Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

Plaintiff has not alleged any facts plausibly supporting a claim under the ADA or the RA. He states that he has HCV, which may constitute a disability. However, to state a plausible claim of disability discrimination, Plaintiff cannot simply allege that Defendants intentionally discriminated against him by denying him treatment *for* his alleged disability. Rather, he must allege that he was denied treatment *because* of that disability. Plaintiff's Complaint alleges no discriminatory action based upon Plaintiff's alleged disability; the Complaint instead is solely concerned about the nature and extent of the treatment of the condition causing Plaintiff's alleged disability. The ADA and the

RA are not remedies for inadequate medical treatment. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.")) Therefore, Plaintiff's ADA and RA claims will be dismissed.

**5.      Idaho State Law Claims**

Plaintiff also asserts claims under several provisions of the Idaho Constitution: Article I, sections 1, 6, 13, and 18, and Article X, sections 1 and 5. However, the only section that appears to be specifically implicated by Plaintiff's allegations is section 6 of Article I, which is the State of Idaho's cruel and unusual punishments clause. *See State v. Clay*, 859 P.2d 365, 368 (Idaho Ct. App. 1993) (stating, in the context of a claim under Article I, section 6 of the Idaho Constitution, that "imprisonment may result in cruel and unusual punishment if adequate medical facilities are not provided"). For the reasons set forth above with respect to Plaintiff's Eighth Amendment claims, and to the same extent, Plaintiff may also proceed on his state constitutional inadequate medical care claims.[6]

## REQUEST FOR CLASS CERTIFICATION

Plaintiff also requests class certification. (Compl. at 31-35, 56.) The Court has broad discretion whether to certify a case as a class action. *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975). The Court has reviewed the class certification issue and has determined that class certification is not necessary or

---

[6]      The Court will exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367.

appropriate in this case at this time, based on the factors set forth in Federal Rule of Civil Procedure 23(a) and (b).

There are four general prerequisites for a class action lawsuit:

  (1)   the class is so numerous that joinder of all members is impracticable;

  (2)   there are questions of law or fact common to the class;

  (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition, the claims must meet one of three standards:

  (1)   prosecuting separate actions by or against individual class members would create a risk of:

    (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

  (2)   the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

  (3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

The Court will deny Plaintiff's request for certification for two primary reasons.

First, Plaintiff has not shown that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy under Rule 23(b)(3). The injunctive relief sought in this case would generally apply to all Idaho inmates with HCV, whether or not the case proceeds as an individual or class action lawsuit. Where a suit attacks the constitutionality of a policy, procedure, or practice by a state actor, there is generally little need for the suit to proceed as a class action, since it can be assumed that, if the policy, procedure, or practice is held unconstitutional, then the responsible government officials will discontinue enforcement of it. *See Lent v. Lopes*, 107 F.R.D. 62 (D. Conn. 1985); *Giles v. Prattville*, 556 F. Supp. 612 (D. Ala. 1983); *Chacon v. Zahorka*, 663 F. Supp. 90 (D. Colo. 1987).

Second, the Court cannot determine at this early stage of litigation whether Plaintiff would be an adequate class representative under Rule 23(a)(4). Moreover, Plaintiff is proceeding pro se and, as a non-attorney, is prohibited from representing others in litigation. *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987); *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) (per curiam).

The request for class certification will be denied without prejudice.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more are plausible, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that this action should proceed to the next stage of litigation.

Defendants may file a motion for dismissal on any basis other than failure to state a claim.[7] Because (1) prisoner filings must be afforded a liberal construction, (2) prison officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by incarceration records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as non-exhaustion or entitlement to qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

---

[7] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A.

# ORDER

**IT IS ORDERED:**

1.      Plaintiff may proceed on his Eighth Amendment medical treatment claims
and related state law claims against Defendants Siegert, Migliori, Young,
Dawson, and Corizon (for monetary and injunctive relief), as well as his
Eighth Amendment medical treatment claim and a related state law claim
against Defendant Atencio (for injunctive relief only). All other claims are
DISMISSED without prejudice, and the IDOC is TERMINATED as a party
to this action.

2.      Defendants Siegert, Migliori, Young, Dawson, Corizon, and Atencio will
be allowed to waive service of summons by executing, or having their
counsel execute, the Waiver of Service of Summons as provided by Fed. R.
Civ. P. 4(d) and returning it to the Court within **30 days**. If Defendants
choose to return the Waiver of Service of Summons, the answer or pre-
answer motion will be due in accordance with Rule 12(a)(1)(A)(ii).
Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt.
11), a copy of this Order, and a Waiver of Service of Summons to the
following counsel:

   a.      **Mark Kubinski**, Deputy Attorney General for the State of Idaho,
Idaho Department of Corrections, 1299 North Orchard, Ste. 110,
Boise, Idaho 83706, on behalf of the IDOC Defendants.

b. **Kevin West and Dylan Eaton,** Parsons Behle & Latimer, 800 W. Main Street, Suite 1300, Boise, Idaho, 83702, on behalf of the Corizon Defendants.

3. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

4. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional **90 days** from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

5. The parties must not engage in any discovery until an answer has been filed. Within 28 days after an answer has been filed, the parties must provide each other with the following initial disclosures: all relevant information pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege

purposes; and, if necessary, they must provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information.

6.     If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12(b) or a motion for summary judgment under Rule 56 that addresses preliminary procedural issues rather than the merits, then disclosures and discovery will be automatically stayed with the exception that Defendants will submit with any exhaustion-of-administrative-remedies motion a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or that otherwise relate to the subject matter of a claim. **Submission of an earlier motion for summary judgment addressing procedural or preliminary issues (such as exhaustion and early assertion of immunity defenses) does not foreclose any party from later filing a motion for summary judgment on the merits or to assert immunity or other defenses after full discovery.**

7.     Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant

to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

8.      The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

9.      All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

10.     Discovery must not be filed with the Clerk of Court, but must be exchanged between parties, only, as provided for in the Federal Rules of Civil Procedure. Motions to compel discovery must not be filed unless the parties

have first attempted to work out their disagreements between themselves.

11.     No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12.     Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

DATED: March 12, 2018

B. Lynn Winmill
Chief U.S. District Court Judge