Richard A. Hearn (ISB No. 5574)
John B. Ingelstrom (ISB No. 2659)
HEARN LAW, PLC
P.O. Box 70
155 S. 2nd Avenue
Pocatello, ID 83204
Telephone: (208) 904-0004
Facsimile: (208) 904-1816
Email: hearn@hearnlawyers.com
        jbi@hearnlawyers.com

*Attorneys for the Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

PHILIP A. TURNEY, an individual; BILLY RAY BARTLETT, an individual; MICHAEL A. MCCALL, an individual; REUBEN J. CORTES, an individual; and KENNETH MICHAEL WORKMAN, an individual; ADAM BODENBACH, an individual; THOMAS BROWN, an individual; PAUL CONDON, an individual; TYRONE EDMO, an individual; WILLIAM ELSTON, an individual; JOSHUA ERICSON, an individual; ROBERT FERGUSON, an individual; BRIAN FIORI, an individual; JAMES FLEMING, an individual; CHRISTOPHER HAND, an individual; THOMAS HOOLEY, an individual; JESSE JAGGERS, an individual; NATHAN JENSON, an individual; ROBERT JOHNSON, an individual; JOSHUA KING, an individual; SAMUAL KLEINT, an individual; JORGE LOPEZ, an individual; TYREL MCKNIGHT, an individual; DEVON MERRITT, an individual; JOSH METTIE, an individual; KANAY MUBITA, an individual; TIMOTHY MULLIGAN, an individual; ZACHARY NEWSOM, an individual; SAMUEL NEYHART, an individual; MICHAEL RAEL, an individual; MARIO RENDON, an individual; RALPH

Case No.:  1:18-cv-0001-BLW

**SECOND AMENDED and SUPPLEMENTAL COMPLAINT** (AMENDMENTS IN BOLD)

REYES, an individual; TYLER ROBBINS, an individual; DANIEL RODGERS, an individual; JESSIE SMITH, an individual; KENNETH SMITH, an individual; WILLIAM SNOWDEN, an individual; ROBERT TAYLOR, an individual; GEORGE THORNOCK, an individual; ROGER VENTURA, an individual; NATHAN WERLEY, an individual; JORGE BAIRD, an individual; JEFFREY BAKER, an individual; CARL BETANCOURT, an individual; KIRK BIRKINBINE, an individual; EDWARD BOYLAN, an individual; TY BRADFORD, an individual; CHRIS BRODHECKER, an individual; MIKEL BRUNDAGE, an individual; WESLEY BRYANT, an individual; DUSTIN BYRD, an individual; NEAL CAPLINGER, an individual; NICHOLAS CASWELL, an individual; JONATHAN CHRISTIAN, an individual; VICTOR CONTRERAS, an individual; NICHOLAS COXEY, an individual; JAMES CRUMBLE, an individual; ROBERT DAVIS, an individual; MIRZA DELIC, an individual; JAMES DETWILER, an individual; JEFFREY EPPERSON, an individual; AARON EVANS, an individual; SONNY FARROW, an individual; ORLANDO FIGUEROA, an individual; TOMMY FITE, an individual; PHILLIP FLIEGER, an individual; ARTURO D. FLORES, an individual; ARTURO G. FLORES, an individual; MICHAEL FRIEL, an individual; WADE FUGER, an individual; TONY LEE GAY, an individual; DUSTIN GOLDEN, an individual; JUSTIN GONZALES, an individual; BRADLEY GOODRICH, an individual; GEORGE DANIEL GOODRICK, an individual; HILARIO GUEL, an individual; ARTHUR HOAK, an individual; GARY HOLDAWAY, an individual; BRANDON HUFFMAN, an individual; ROBEN HULL, an individual; PETER JAIME , an individual; JAMIE LAKE, an individual; JOHN LEE, an individual; JOSEPH LEITERMAN, an

individual; KRISTOPHER LEWIS, an individual; BARTLETT LIVINGSTON, an individual; PETER LOPEZ, an individual; MICHAEL LUJAN, an individual; JAMES MARTINEAU, an individual; MICHAEL MCBRIDE, an individual; DANIEL MORGAN, an individual; JASON NELSON, an individual; AUSTIN NEUBAUER, an individual; NORMAN ORTIZ-PEREZ, an individual; JUSTIN PARDUN, an individual; STEVEN PARKER, an individual; MARCUS PETERSON, an individual; KEITH POWELL, an individual; ANTHONY PRICHARD, an individual; DAVID PRIETO, an individual; JAVIER RAMIREZ, an individual; TRAVIS RAY, an individual; MATTHEW RHODEHOUSE, an individual; PETE ROBERTS, an individual; DANIEL SCHMIDT, an individual; TANNER STERLING, an individual; BRANDON TIMPSON, an individual; JESSE TRUESDALE, an individual; EARLE VINE, an individual; LANCE WARD, an individual; KENDALL WELLARD, an individual; JERRY WHITE, an individual; JOSEPH WILLIAMS, an individual; ANDREW WILSON, an individual; TRACY WORKMAN, an individual; KELLY ZAVALNEY, an individual; ***KODY BUTCHER***[1], an individual; ***DANA DADE***, an individual; ***MASON DEAN (ADREE) EDMO***, an individual; ***KENNETH FULLER***, an individual; ***DAVID HOSKINS***, an individual; ***ROCKY NELSON***, an individual; *JOHN ODLE*, an individual; ***KELLY SANTAS***, an individual; and ***CHAD WAHL***, an individual,

      Plaintiffs,

vs.

---

[1] Plaintiffs' names appearing in italics within this pleading indicate individuals added to the Second Amended Complaint.

HENRY ATENCIO, in his official capacity;
RONA SIEGERT, in her official capacity;
JOHN G. MIGLIORI, in his individual and
official capacity; MURRAY F. YOUNG, in
his individual and official capacity; APRIL C.
DAWSON, in her individual and official
capacity; JOHN and JANE DOES A-Z, in
their individual and official capacities; and
CORIZON, INC. and its employees, agents
and representatives in their individual and
official capacities,

        Defendants.

## CLASS ACTION COMPLAINT

### 42 U.S.C. § 1983

### INTRODUCTION

1.      At the time this lawsuit was either filed or amended, Plaintiffs were all inmates of the Idaho Department of Correction (hereafter "*IDOC*"). Philip A. Turney, Billy Ray Bartlett, Michael A. McCall,[2] Reuben J. Cortes,[3] Kenneth Michael Workman and all other Plaintiffs in subclasses B and C have suffered from a serious medical need, disability, and life-threatening viral disease known as hepatitis C (HCV for "*hepatitis C virus*").

2.      Prior to late 2013, HCV treatment consisted of Interferon injections, which lasted nearly a year with low levels of success and serious side effects. In December 2013, FDA-designated HCV "breakthrough" drugs were approved to cure HCV at a >95% rate, with one pill per day for 12 weeks, irrespective of the stage of the infection. In January 2014, the American Association for the Study of Liver Disease and Association for the Study of Infectious Disease ("*AASLD/ASID*") adopted the "breakthrough" drug 12-week daily-pill therapy protocol as the hepatitis C treatment community standard of care, thus replacing the toxic and much less effective 48-week Interferon-based injection therapy.

3.      For non-medical reasons, Defendants have refused to provide the available "breakthrough" drug treatment protocols or more recently approved treatment protocols for HCV based on the medical needs of

---

[2] While this action has been pending, Plaintiff Michael McCall was released on parole without receiving treatment for his hepatitis C.

[3] While this action has been pending, Plaintiff Reuben J. Cortes was released from prison. Cortes is now back in IDOC custody. Cortes still has not been successfully treated for hepatitis C.

the Plaintiffs, which is the hepatitis C treatment community standard of care, which, if provided, would have cured Plaintiffs' HCV infection in three months from its inception. Since this legal action was initially filed, Plaintiffs in subclass C have suffered irreversible injury to their livers as a result of Defendants' deliberate indifference to their medical condition.[4]

4.      Since June 2014, the Federal Bureau of Prisons ("*BOP*"), the Center for Disease Control ("*CDC*"), the United States Public Health Service ("*USPHS*"), the Food and Drug Administration ("*FDA*"), and the United States Department of Veteran Affairs ("*VA*") have all recognized the changed standard of care within the hepatitis C medical treatment community for HCV patients in their approval and implementation of the one-pill-per-day, 12-week protocols for the treatment of HCV patients.

5.      By December 2014, FDA approval of Harvoni® and Viekira-Pak®, two additional 12-week oral treatment "breakthrough" drugs, eliminated toxic Interferon-injection therapy entirely and was recognized as the current standard of care. Since then, other breakthrough drugs with generally equivalent risks and benefits have been approved for the treatment of hepatitis C. The dangerous and serious side effects associated with the 48-week toxic Interferon-injection therapy have rapidly made toxic Interferon medically obsolete among physicians specializing in treating HCV infections.

6.      Plaintiffs listed below in subclass A, individually and as a class, sue the Defendants in their official capacities for their joint and several actions that constitute deliberate indifference to Plaintiffs' possible serious medical needs as hepatitis C patients, in violation of the clearly established *Eighth Amendment* rights under the United States Constitution, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies. Despite knowledge of the high incidence of hepatitis C in the prison population and the need for opt-out testing to identify those inmates in need of treatment, Defendants have refused to perform testing using an appropriate opt-out procedure. Plaintiffs allege that Defendants have deliberately discouraged inmates from being tested for HCV for the purpose of avoiding the costs of providing treatment to those HCV-positive inmates who would have been identified by appropriate testing.

7.      Subclass A includes the following individuals: Adam Bodenbach, Thomas Brown, Paul Condon, Tyrone Edmo, William Elston, Joshua Ericson, Robert Ferguson, Brian Fiori, James Fleming, Christopher Hand, Thomas Hooley, Jesse Jaggers, Nathan Jenson, Robert Johnson,

---

[4] While this action has been pending, Plaintiffs Workman, Turney and Bartlett have now been successfully treated. Plaintiffs, including Workman, Turney and Bartlett, who have now been successfully treated experienced significant worsening of their levels of liver scarring prior to being provided treatment for their hepatitis C.

Joshua King, Samual Kleint, Jorge Lopez, Tyrel McKnight, Devon Merritt , Josh Mettie, Kanay Mubita, Timothy Mulligan, Zachary Newsom, Samuel Neyhart, Michael Rael, Mario Rendon, Ralph Reyes, Tyler Robbins, Daniel Rodgers, Jessie Smith, Kenneth Smith, William Snowden, Robert Taylor, George Thornock, Roger Ventura, Nathan Werley, who, upon information and belief, have not been tested for hepatitis C as a result of Defendants' refusal to institute "opt-out" testing for hepatitis C in deliberate indifference to Plaintiffs' known risk of serious harm. Subclass A Plaintiffs seek injunctive and declaratory relief only.

8.      Plaintiffs listed below in subclass B, individually and as a class, sue the Defendants in their individual and official capacities for their joint and several actions that constitute deliberate indifference to Plaintiffs' serious medical needs as hepatitis C patients, in violation of the clearly established *Eighth Amendment* rights under the United States Constitution, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies. Defendants have refused Plaintiffs in subclass B's  request for treatment with up-to-date medications that cure all stages of HCV infection, irrespective of viral load, and, with minor variations, irrespective to genotype of HCV, and/or other necessary treatment including CT scans and evaluations for possible liver transplants for the cirrhosis resulting from Defendants' deliberate delay in providing timely treatment for hepatitis C for non-medical reasons,  administrative convenience or cost, which are not related to the medical needs of Plaintiffs in subclass B.

9.      Subclass B includes the following individuals: Jorge Baird, Jeffrey Baker, Billy Ray Bartlett, Carl Betancourt, Edward Boylan, Ty Bradford, Chris Brodhecker, Mikel Brundage, Wesley Bryant, Dustin Byrd, Neal Caplinger, Nicholas Caswell, Jonathan Christian, Victor Contreras, Reuben Cortes, Nicholas Coxey, James Crumble, Robert Davis, Mirza Delic, James Detwiler, Jeffrey Epperson,   Aaron Evans, Sonny Farrow, Orlando Figueroa, Tommy Fite, Phillip Flieger, Arturo D. Flores, Arturo G. Flores, Michael Friel, Wade Fuger, Tony Lee Gay, Dustin Golden, Justin Gonzales, Bradley Goodrich, George Daniel Goodrick, Hilario Guel, Arthur Hoak, Brandon Huffman, Roben Hull, Peter Jaime, Jamie Lake, John Lee, Joseph Leiterman, Kristopher Lewis, Bartlett Livingston, Peter Lopez, Michael Lujan, James Martineau, Michael McBride, Daniel Morgan, Jason Nelson, Austin Neubauer, Norman Ortiz-Perez, Justin Pardun, Steven Parker, Marcus Peterson, Keith Powell, Anthony Prichard, David Prieto, Javier Ramirez, Travis Ray, Matthew Rhodehouse, Pete Roberts, Daniel Schmidt, Brandon Timpson, Jesse Truesdale, Philip Turney, Lance Ward, Kendall Wellard, Jerry White, Joseph Williams, Andrew Wilson, Kenneth Michael Workman, Tracy Workman, Kelly Zavalney, ***Kody Butcher***,

*Dana Dade, Mason Dean (Adree) Edmo, Kenneth Fuller, David Hoskins, Rocky Nelson, John Odle, Kelly Santas,* **and** *Chad Wahl,* who either currently suffer from hepatitis C or who had a worsening of their liver disease resulting from Defendants' refusal to provide or delay in providing appropriate treatment for their hepatitis C. Subclass B Plaintiffs seek injunctive and declaratory relief only.

10.     Plaintiffs listed below in subclass C, individually and as a class, sue the Defendant health care providers Drs. Migliori, Young, and Dawson, and Corizon, Inc., ("*Corizon*") acting through its agents and employees, for compensatory damages for Defendants' joint and several actions in deliberate indifference to testing for or treating of Plaintiffs' hepatitis C in violation of the clearly established *Eighth Amendment* rights under the United States Constitution, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies..

11.     Subclass C includes the following individuals (additions in bold): **Jorge Baird**, **Jeffrey Baker**, Billy Ray Bartlett, **Carl Betancourt**, Kirk Birkinbine, Edward Boylan, **Ty Bradford**, **Chris Brodhecker**, **Mikel Brundage**, **Wesley Bryant**, Dustin Byrd, Neal Caplinger, **Nicholas Caswell**, **Jonathan Christian**, Victor Contreras, Reuben Cortes, **Nicholas Coxey**, James Crumble, **Robert Davis**, **Mirza Delic**, James Detwiler, **Jeffrey Epperson**, **Aaron Evans**, Sonny Farrow, **Orlando Figueroa**, **Tommy Fite**, **Phillip Flieger**, **Arturo D. Flores**, **Arturo G. Flores**, **Michael Friel**, **Wade Fuger**, **Tony Lee Gay**, **Dustin Golden**, **Justin Gonzales**, **Bradley Goodrich,** George Daniel Goodrick, Hilario Guel, Arthur Hoak, Gary Holdaway, **Brandon Huffman**, **Roben Hull**, Peter Jaime, **Jamie Lake**, **John Lee**, **Joseph Leiterman**, **Kristopher Lewis**, Bartlett Livingston, Peter Lopez, Michael Lujan, James Martineau, **Michael McBride**, Michael McCall, **Daniel Morgan**, **Jason Nelson**, **Austin Neubauer**, **Norman Ortiz-Perez**, **Justin Pardun**, **Steven Parker**, **Marcus Peterson**, **Keith Powell**, **Anthony Prichard**, **David Prieto**, **Javier Ramirez**, **Travis Ray**, **Matthew Rhodehouse**, **Pete Roberts**, Daniel Schmidt, Tanner Sterling, Brandon Timpson, Jesse Truesdale, Philip Turney, Earl Vine, Lance Ward, **Kendall Wellard**, Jerry White, **Joseph Williams**, **Andrew Wilson**, Kenneth Michael Workman, **Tracy Workman**, **Kelly Zavalney**, *Kody Butcher, Dana Dade, Mason Dean (Adree) Edmo, Kenneth Fuller, David Hoskins, Rocky Nelson, John Odle, Kelly Santas,* **and** *Chad Wahl,* who either currently suffer from hepatitis C or who had a worsening of their liver disease resulting from Defendants' refusal to timely provide appropriate treatment for their hepatitis C. Defendants' deliberate indifference to Plaintiffs in subclass C's hepatitis C proximately caused Subclass C to suffer an irreversible increase in their liver fibrosis which, in many cases, led to liver cirrhosis and all the health consequences thereof. Subclass C Plaintiffs seek only compensatory

damages for the irreversible progression of fibrosis and/or cirrhosis secondary to hepatitis C and the health and medical consequences thereof, as well as physical and mental pain, suffering, and/or emotional distress.

12.     Plaintiffs listed above in subclass C, individually and as a class, sue the Defendant health care providers Drs. Migliori, Young, and Dawson and Corizon, acting through its agents and employees, for compensatory damages, as alleged in the preceding paragraph, for their joint and several actions that constituted medical malpractice in regard to the testing for and/or treatment of Plaintiffs' serious medical needs as hepatitis C patients, in breach of the local standard of care.

13.     Plaintiffs listed in subclasses A, B, and C are all identified as named Plaintiffs in this action and, if a class is certified, these Plaintiffs in subclasses A, B, and C will serve as the named Plaintiffs for their respective class or classes. The original Plaintiffs, Turney, Bartlett, McCall, Cortes and Workman, will be included in the appropriate subclasses.

14.     To the extent necessary, Plaintiff class representatives have exhausted their administrative remedies under governing national and state laws.

## JURISDICTION AND VENUE

15.     Plaintiffs set forth claims under U.S. Const. Amend. VIII and 42 U.S.C. § 1983.

16.     28 U.S.C. §§ 1331 (federal question) and 1343(a)(4) (federal civil rights question) confer subject matter jurisdiction on this Court.

17.     Plaintiffs state claims that arise under Idaho law.

18.     28 U.S.C. § 1367 confers supplemental jurisdiction for all claims that arise under Idaho law.

19.     A substantial number of events in this lawsuit took place in the counties of Ada, Bannock, Clearwater, Freemont and Idaho, state of Idaho.

20.     Plaintiffs lay venue in this Court per 28 U.S.C. § 1391.

## PLAINTIFFS

21.     Plaintiff Philip A. Turney ("Turney") has been an inmate of IDOC and its correctional facilities since 1989.

22.     In 2001 Turney was informed by Defendant IDOC agents, employees, or representatives that he was HCV positive.

23.     Turney's prior IDOC physician (Dr. Garrett) offered to prescribe the 48-week, toxic Interferon injection treatment in 2003 following lab values indicating diminished liver function tests (LFT's) and results

from a liver biopsy revealing liver damage was present due to HCV; that advancement of fibrosis and/or cirrhosis was likely; and further, that end stage liver disease or hematologic malignancy was possible.

24.      Acting upon the medical advice of Dr. Garrett, a decision to forego toxic Interferon injection treatment was made due to its low success rate (<40%) in clinical trials relative to genotype-A, the specific HCV strain Turney is known to be infected with.

25.      After Defendants determined that his liver fibrosis had significantly worsened, Turney was eventually started on direct-acting antivirals ("*DAA*") treatment.

26.      As a direct result of the policy and practice of IDOC, Corizon, and/or individual Defendants' conduct, and in deliberate indifference to Turney's serious medical needs, Turney was denied the current standard of care one-pill-per-day HCV treatment that cures HCV at a >95% rate.

27.      Turney was denied HCV curative medication because of IDOC policies designed to ration medication to a limited number of inmates for administrative convenience or costs, without regard to Turney's individual medical needs and disabling case of HCV.

28.      Plaintiff Billy Ray Bartlett ("Bartlett") is an inmate of the IDOC at Idaho State Correctional Center ("*ISCC*").

29.      Bartlett tested positive for HCV in 2002 after being double-bunked with a bleeding, HCV-positive cellmate in the Idaho State Correctional Institution ("*ISCI*") Receiving Unit.

30.      After Defendants determined that Bartlett's liver scarring had significantly worsened, he began DAA treatment.

31.      As a direct result of the policy and practice of IDOC, Corizon, and/or individual Defendants' conduct, and in deliberate indifference to Bartletts's serious medical needs, Bartlett was denied the current standard of care one-pill-per-day, HCV treatment that cures HCV at a >95% rate.

32.      Bartlett was denied HCV curative medication because of non-medical IDOC policies designed to ration medication to a limited number of inmates for administrative convenience or costs, without regard to Bartlett's individual medical needs and disabling case of HCV.

33.      Plaintiff Michael A. McCall ("McCall") was an inmate of the IDOC at ISCC.

34.      In 2000, while being detained for a state holding and in route to IDOC, McCall was informed by medical staff at the Bannock County Jail that he had tested positive for HCV.

35.      McCall was released from prison on or about February 26, 2019, and, at the time of his release, McCall had still not received treatment for hepatitis C.

36.     McCall was denied HCV curative medication because of non-medical IDOC policies designed to ration medication to a limited number of inmates for administrative convenience or costs, without regard to McCall's individual medical needs and disabling case of HCV.

37.     Plaintiff Reuben J. Cortes ("Cortes") was an inmate of the IDOC at the South Idaho Correctional Institution ("*SICI*") until his release in the summer of 2018.

38.     Cortes tested positive for HCV while in the custody of the Ada County Jail. Cortes learned of his HCV-positive status through a blood test.

39.     The 45-week, toxic Interferon-injection treatment IDOC provided to Cortes failed in 2011.

40.     Cortes has requested IDOC prison physicians prescribe to him one of the "breakthrough" HCV treatment medications to cure his advanced stage liver disease and to end the pain and suffering from his condition.

41.     As a direct result of the policy and practice of IDOC, Corizon, and/or individual Defendants' conduct, and in deliberate indifference to his serious medical needs, Cortes has been denied the current standard of care one-pill-per-day, HCV treatment that cures HCV at a >95% rate.

42.     Cortes has been denied HCV curative medication because of non-medical IDOC policies designed to ration medication to a limited number of inmates, for administrative convenience or costs, without regard to Cortes' individual medical needs and disabling case of HCV.

43.     On or about December 10, 2018, Cortes was again sentenced to prison and is currently in the custody of IDOC.

44.     Plaintiff Kenneth Michael Workman ("Workman") entered the prison system in 2002 and was diagnosed with HCV.

45.     On or around 2005, a liver biopsy was performed upon Workman and the results indicated he was a candidate for treatment. Soon thereafter, Workman was given a single shot of the then-available treatment of Interferon. Due to the extreme toxic and adverse side effects of the drug, Workman became extremely ill and the treatment was discontinued by Workman's choice.

46.     Workman's chronic disease has been monitored over the years by the respective medical providers at the various institutions he has been housed.

47.     In 2014, Workman was told by Corizon and/or its agents and employees that when the new "breakthrough" drugs became available he would receive treatment for his chronic condition. Years after the fact, and with numerous consultations with medical providers, he was

told that he would be treated.  The fact remains that he was not treated prior to bringing his lawsuit in July of 2016.

48.     Defendants denied Workman treatment by stating that they are going by the Federal Bureau of Prisons' guidelines which prioritizes treatment, of which Workman did not fit the criteria.  In essence, Defendants put in place an arbitrary system that is based solely on prioritized needs.

49.     Workman was denied HCV-curative medication because of Corizon's non-medical policies designed to ration medication to a limited number of inmates for administrative convenience or costs without regard to Workman's individual needs and disabling case of HCV.

50.     Recently, but long after this lawsuit was filed, Defendants elected to treat Workman's chronic hepatitis C with DAAs.

51.     Jorge Alexander Baird #79416, age 36, housed at Eagle Pass Correction Facility-Texas, PED 10/24/27, Sentence satisfaction 10/23/2047. He is positive for HCV and has never been treated.

52.     Jeffrey A. Baker #59157, age 59, housed at Eagle Pass Correctional Facility – Texas, PED 06/24/2025, serving a life sentence. Mr. Baker has had HCV for at least 20 years, has made numerous requests for treatment, he has had no feedback on his requests and has never been treated.

53.     Carl Robert Betancourt #108805, age 44, housed at ISCC, parole hearing date of April 2020, and a sentence satisfaction date of 04/02/2027. Mr. Betancourt is positive for HCV he has had no response to his concern form and no substantive answer to his appeal of same other than to wait until his next chronic care appointment.

54.     Kirk Eric Birkinbine #59640, age 39, on parole as of 3/11/19, he has a sentence satisfaction date of 11/13/2022, he is positive for HCV since 2000, he was denied treatment until at the end of 2018 treatment was discussed until it was noted that his parole date was too close, so the possibility of necessary treatment was dropped.

55.     Edward Dean Boylan #82270, age 44, housed at ISCC, parole hearing date September 2019, sentence satisfaction date 07/09/2026. Mr. Boylan has had bloodwork for Actitest/Fibrotest but has not been allowed to review his results and his request for DAA has been denied through the grievance process as the question of DAA was not in his initial grievance, his health is in decline.

56.     Ty Bradford #131245, age 59, housed at CAPP, retained jurisdiction end date, 1/22/2020; sentence satisfaction date 5/15/2026. Mr. Bradford is positive for HCV and is seeking treatment.

57.     Christopher Brodhecker #60452, age 46, housed at ISCC, parole hearing date April 2019, sentence satisfaction date 6/21/2025. Mr. Brodhecker has had HCV for 16 years, he submitted an HSR 12/20/18 requesting Fibrosure testing, filed a grievance on the response, the solution to the grievance was to wait until his next appointment, 2/21/19, the final disposition is for him to discuss his concerns at his next appointment set for May 2019, the respondent states "DAA treatment was not part of your original complaint … therefore, DAA treatment will not be addressed in this response."

58.     Mikel Dillen Brundage #115232, age 23, housed at ISCC parole hearing date January 2021, sentence satisfaction date 04/03/2028. Mr. Brundage is positive for HCV and is seeking treatment.

59.     Wesley Ray Bryant #111544, age 28, housed at ISCC, PED 10/18/19, Sentence satisfaction date 10/17/2026. Mr. Bryant was diagnosed with HCV when he arrived at prison four years ago, he is seeking treatment.

60.     ***Kody Shane Butcher # 50508*, age 43, housed at Eagle Pass Correctional Facility, Texas, serving a life sentence, after 20 years of incarceration he was found to be Hep-C positive and is seeking treatment.**

61.     Dustin Todd Byrd #112821, age 41, housed at ISCC, parole hearing date July 2020, sentence satisfaction date 01/06/2034. Mr. Byrd has had HCV since 1997, he disclosed his condition when he first arrived at prison, he had an ultrasound in 2016 which showed an enlarged liver, an outside doctor told him that he should have an ultrasound every 6 months, his last ultrasound was June 2018, he has received treatment but treatment was delayed until he was diagnosed with cirrhosis.

62.     Neal Wayne Caplinger #20121, age 54, housed at ISCI, sentence satisfaction date 06/09/2023. Mr. Caplinger is positive for HCV and has had treatment, treatment was delayed until he had cirrhosis and stage 4 fibrosis.

63.     Nicholas Charles Caswell #94836, age 29, housed at ISCC, PED 6/15/2019, sentence satisfaction date 06/26/2027. Mr. Caswell tested positive for HCV in 2014, he has been monitored only and is seeking treatment.

64.     Jonathan R. Christian #126461, age 47, housed at ISCC, PED 04/12/2019, sentence satisfaction date 4/11/2032. Mr. Christian requested copies of his medical records and concern forms on 2/22/19, the request was denied 3/4/19, on 3/15/19 he tried to give authorization to release records to his attorney, that request was denied.

65.     Victor Vega Contreras #35490, age 60, housed at ISCC, PED 05/14/2021, sentence satisfaction date 05/13/2033. Mr. Contreras s positive for HCV and has had delayed treatment.

66.     Nicholas James Coxey #126575, age 34, housed at ISCC, PED 08/25/19, sentence satisfaction date, 08/24/2025. Mr. Coxey is HCV positive; he has been monitored only and is seeking treatment.

67.     James Henry Crumble #81041, age 62, housed at ISCC, PED 07/02/2025, sentence satisfaction date -Life. Mr. Crumble has been positive for HCV since 2008, he has received treatment, but treatment was delayed until he was at a stage F4 on his fibrotest.

68.     **_Dana James Dade #18442_, age 56, housed at ISCI Boise, PED 11/13/2037. Mr. Dade has been diagnosed with Hep-C and is seeking treatment.**

69.     Robert Gerald Davis #114977, age 49, housed at ISCC Boise, PED 06/23/19, sentence satisfaction date 06/22/2029. Mr. Davis is HCV positive; he has been monitored only and is seeking treatment.

70.     Mirza Delic #121600, age 27, housed at Eagle Pass Correctional Facility – Texas, PED 03/19/2026, sentence satisfaction date 09/18/2033. Mr. Delic has been diagnosed with HCV and has only been monitored, he is seeking treatment.

71.     James Leroy Detwiler #26049, age 53, housed at ISCC, sentence satisfaction date 04/28/2021. Mr. Detwiler is HCV positive; his treatment has been denied until he now has cirrhosis and fibrosis.

72.     **_Mason Dean (Adree) Edmo #94691_, age 31, housed at ICI-Orofino, sentence satisfaction date of 07/03/2021, is Hep-C positive and untreated, she is seeking treatment.**

73.     Jeff Lee Epperson #38784, age 47, housed at ISCC, PED 09/14/2021, sentence satisfaction date 09/05/2032. Mr. Epperson was diagnosed at IDOC in 2009 and was not treated, he was on parole and he was seen at Terry Reilly Clinic in Nampa in 2017, he was set to begin treatment when he was returned to prison, since that time he has been denied treatment.

74.     Aaron James Evans # 116200, age 35, housed at ISCC, PED 06/13/2019, sentence satisfaction date 06/12/2026. Mr. Evans was diagnosed in 2010 as HCV positive, genotype 2B by

the Oregon Department of Correction, he has neither been notified of his status, nor been monitored during his incarceration began at IDOC.

75.     Sonny D. Farrow #113181, age 38, housed at ISCC, PED 07/27/2020, sentence satisfaction date 07/26/2026. Mr. Farrow is positive for HCV, he has been **treated with Epclusa** and his condition has worsened including cirrhosis.

76.     Orlando Figueroa #80292, age 40, housed at ISCC, PED 2/16/2020, sentence satisfaction date 02/15/2025.  Mr. Figueroa was diagnosed with HCV in 2010 he has requested treatment but has been denied, he is seeking treatment.

77.     Tommy Gene Fite #56480, age 42, housed at Eagle Pass Correctional Facility Texas, PED 11/17/2021, sentence satisfaction 5/16/2038. Mr. Fite is positive for HCV **and was treated with Interferon in 2010, the treatment was discontinued due to complications related to his white blood cell count, he is seeking treatment in accordance with the current standard of care.**

78.     Phillip Duane Flieger #78503, age 58, housed at ISCC, life sentence. Mr. Flieger is HCV positive and has not received treatment, he is seeking treatment.

79.     Arturo D. Flores #84567, age 30, housed at ISCC, parole hearing date April 2019, Sentence satisfaction date 10/05/2034. Mr. Flores is positive for HCV and has not been treated.

80.     Arturo Gonzales Flores #26389, age 57, housed at ISCC, PED 12/15/19, sentence satisfaction 12/14/2031. Mr. Flores is positive for HCV and has not been treated, he is seeking treatment.

81.     Michael Paul Friel #51736, age 42, housed at Eagle Pass Correctional Facility Texas, PED 11/14/2022, sentence satisfaction date 11/13/2030. Mr. Friel tested positive in 2003 and has not been treated or admitted to chronic care clinic, he is seeking treatment.

82.     Wade Dennis Fuger #36304, age 47, housed at ISCC, PED 03/24/2020, sentence satisfaction 03/23/2028. Mr. Fuger tested positive for HCV in 1996, he has consistently and has either been denied outright or has been provided excuses as to why he will not be treated, he is due to begin treatment he has recently been diagnosed with advanced stage 3 fibrosis. **Mr. Fuger has signed a consent to treat and will receive DAA medications. He has extensive liver damage.**

83.     *Kenneth Leslie Fuller* **#113726, age 34, housed at ISCC, sentence satisfaction date of 02/07/2021. Mr. Fuller is Hep-C positive and is seeking treatment.**

84.     Tony Lee Gay #19336, age 57, housed at ISCC, PED 02/06/2020, sentence satisfaction date 02/05/2022. Mr. Gay was diagnosed with HCV in 2001 he has not been treated and is seeking treatment.

85.     Dustin Ray Golden #104771, age 41, housed at ISCC, PED 09/06/2019, Sentence satisfaction date 09/05/2024. Mr. Golden tested positive for HCV in 2006 and has never been treated, he is seeking treatment.

86.     Justin Ramon Gonzales #68033, age 35, housed at ISCC, parole hearing date June of 2020, sentence satisfaction date – Life. Mr. Gonzales has been tested, is positive for HCV, has been told he is not "sick enough" for treatment.

87.     Bradley Clyde Goodrich # 119163, age 58, housed at ISCC, PED 11/21/2020, Sentence satisfaction date 11/20/2035. Mr. Goodrich is positive for HCV and has never been treated, his scores are F-3 to F-4.

88.     Dan Goodrick #13304, age 69, housed at ISCI Medical, parole hearing date April 2021, sentence satisfaction date – Life. Mr. Goodrick is HCV positive, has received DAA treatment, but treatment was delayed, and his condition is dire.

89.     Hilario Guel Jr. #97287, age 60, housed at ISCC, PED 07/08/19, sentence satisfaction date 07/07/2029. Mr. Guel has HCV and has been requesting treatment since DAA's became available, he has test results of Fibrosis f-2 and cirrhosis a-2 and has not been treated.

90.     Arthur Allen Hoak #17808, age 62, housed at ISCI, PED 11/08/2020, Sentence satisfaction date 11/07/2027. Mr. Hoak was diagnosed with HCV in 1995, he had biopsies done in 2009 and 2014, the tests showed scarring and still he is being denied treatment.

91.     Gary Boyd Holdaway #26010, age 49, he was released 2/25/19 which was his sentence satisfaction date. Mr. Holdaway contracted HCV at ISCI and was diagnosed in June of 1994. He never received treatment while in IDOC custody.

92.     ***David Kirt Hoskins #28096***, **age 48, housed at ISCC Boise, sentence satisfaction date of 09/09/2019. Mr. Hoskins has Hepatitis C, is untreated and is high priority due to advanced liver disease. He is seeking treatment prior to his release from prison.**

93.     Brandon Alan Huffman #115073, age 37, housed at ISCC, PED 12/22/2019, Sentence satisfaction 12/21/2024. Mr. Huffman had HCV prior to being incarcerated, he was told that if he had more than 5 years fixed they would put him on the list for treatment, 18 months later he inquired as to his position on the "list," he was informed that they no longer used the list, and

would only monitor his condition, he was housed at the "yard" and received regular blood tests, he was moved to ISCC and has only had one blood test since the move and they will not tell him the results of said test, he had an ultrasound and the medical staff told him his liver was inflamed, but not bad enough for treatment, he is seeking treatment.

94.    Roben James Hull # 40065, age 45, housed at ISCC, sentence satisfaction date is 04/27/19. Mr. Hull has had HCV for 25 years and has never had treatment, he has requested treatment several times and has been denied.

95.    Peter Jaime #33499, age 53, housed at ISCC Medical, parole hearing date March 2019, sentence satisfaction 06/12/2024. Mr. Jaime is in medical due to end stage liver disease stemming from lack of treatment for his HCV.

96.    Jamie Earl Lake #57730, age 43, housed at ISCC, sentence satisfaction date 04/08/2022. Mr. Lake is positive for HCV and has been denied treatment and has been told he cannot be treated until the disease had worsened; he is seeking treatment.

97.    John Ross Lee #41612, age 67, housed at ISCC, parole hearing date October 2020, sentence satisfaction date – Life. Mr. Lee is HCV positive and has had the disease for 30 years, he has requested a Fibro Shure blood test and has had no response, and no treatment, he is seeking treatment.

98.    Joseph Gage Leiterman #109092, age 26, housed at ISCC, PED 04/27/2020, sentence satisfaction date 04/26/2022. Mr. Leiterman is positive for HCV, has never been treated and is seeking treatment.

99.    Kristopher Michael Lewis #86110, age 30, housed at SICI, sentence satisfaction date is 04/24/2020. Mr. Lewis tested positive for HCV last year and was told that he would not be treated until he has fibrosis or cirrhosis, he is seeking treatment.

100.    Bartlett Blaine Livingston #17674, age 56, housed at ISCC, parole hearing date July 2019, sentence satisfaction date – Life. Mr. Livingston tested positive for HCV in 200 and was denied treatment until 2018 when his fibrotest was level 4 and he had cirrhosis.

101.    Peter James Lopez #74834, age 33, housed at ICI Orofino, parole hearing date May 2019, sentence satisfaction date 12/08/2025. Mr. Lopez is positive for HCV, his condition since IDOC became aware of his chronic care condition. He was upgraded in October because his fibro test showed advanced fibrosis and severe inflammation, he is due for parole in May and

treatment has been delayed for so long that he is doubtful whether he will be treated prior to his release, he is seeking treatment and damages.

102.    Michael Vincent Lujan #128627, age 55, housed at CAPP, Retained jurisdiction end date, 11/30/2019, PED 06/24/2020, sentence satisfaction date 06/23/2023. Mr. Lujan is HCV positive and has received treatment, but his disease is still active and his liver has worsened.

103.    James Duane Martineau #16621, age 79, housed at ISCC, sentence satisfaction date – Life. Mr.. Martineau is positive for HCV and treatment has been delayed until his liver health declined.

104.    Michael Scott McBride #100668, age 47, housed at ISCC, PED 06/21/19, sentence satisfaction date 02/20/2027. Mr. McBride was diagnosed with HCV in 2012 and has not received treatment, he is seeking treatment.

105.    Daniel Jason Morgan #105722, age 25, housed at ISCC, parole hearing date October 2019. Mr. Morgan tested positive for HCV and has not been treated, the PA at one of his recent appointments refused to give him any meaningful information instead told him she doesn't think he has HCV anymore, his last APRI was 0.45, he is seeking further testing and appropriate treatment.

106.    Jason E. Nelson #108778, age 39, housed at ISCC, sentence satisfaction date 03/17/2021. Mr. Nelson has HCV and is being denied treatment, he is seeking treatment.

107.    ***Rocky Nelson #51988***, **age 39, housed at ISCC Boise, PED 04/01/2025, sentence satisfaction date 03/31/2037. Mr. Nelson was scheduled for treatment at ISCI to begin on April 13, 2019. He was moved to ISCC March 30, 2019. He is being denied treatment pending the outcome of his revocation hearing, meanwhile his health continues to deteriorate. He is seeking immediate treatment.**

108.    Austin Riley Neubauer #120844, age 21, housed at SICI, parole hearing date December 2019, Sentence satisfaction date 01/08/2024. Mr. Neubauer tested positive for HCV he has never been treated, at his last chronic care appointment he was told that he has been placed on the list, he has not had the opportunity to discuss his results, he is seeking treatment.

109.    ***John I Odle # 17310***, **age 66, housed at ISCI Boise, PED 02/21/2020, sentence satisfaction date, 02/20/2025. Mr. Odle was diagnosed with Hep-C 40 years ago; he would like to have the battery of tests to determine the level of damage to his liver and is seeking treatment.**

110.    Norman Ortiz-Perez #73061, age 41, housed at ISCC Boise, parole hearing date June 2020, sentence satisfaction date 11/12/2030. Mr. Ortiz-Perez was diagnosed with HCV in 2003, he has not been treated, he has been told he is still in "good shape" and doesn't need the treatment, he is seeking treatment.

111.    Justin Warren Pardun #42118, age 44, housed at ISCC, PED 08/30/2020, sentence satisfaction 08/29/2025. Mr. Pardun is positive for HCV and has been denied treatment, he is seeking treatment.

112.    Steven Lloyd Parker #60673, age 38, housed at ISCC, parole hearing date April 2019, sentence satisfaction 05/01/2024. Mr. Parker is positive for HCV and has been denied treatment, he is seeking treatment.

113.    Marcus Ivan Peterson #60120, age 51, housed at ISCC, sentence satisfaction date 04/18/2025. Mr. Peterson has had HCV since 2001, he has never been treated, he is seeking treatment.

114.    Keith Allen Powell #65945, age 55, housed at ISCC, parole hearing date April 2019, sentence satisfaction date 06/10/2031. Mr. Powell tested positive for HCV and has been denied treatment, he is seeking treatment.

115.    Anthony Henry Prichard # 34825, age 47, housed at ISCC, PED 05/11/2020, sentence satisfaction date 05/10/2027. Mr. Prichard is positive for HCV, he has never been treated, he has requested the fibro test, but they keep putting it off telling him they can't run the test until he has damage, he is seeking treatment.

116.    David Lopez Prieto #32648, age 64, housed at ISCC, PED 03/09/2023, sentence satisfaction date 10/04/2025. Mr. Prieto is positive for HCV, he has never been treated, he is waiting for the results of his blood tests, he is seeking treatment.

117.    Javier Ramirez #73398, age 34, housed at ISCC, PED 12/10/2021, sentence satisfaction date 07/07/2045. Mr. Ramirez tested positive of HCV in September 2017, two months ago he was informed he has cirrhosis, he was told he still has to wait for treatment and told to drink more water and keep waiting, he is seeking immediate treatment.

118.    Travis Scott Ray #53157, age 39, housed at ISCC, PED 07/03/2021, sentence satisfaction date 07/02/2023. Mr. Ray has had HCV for six years and has received no treatment, he is seeking treatment.

119.     Matthew Dale Rhodehouse #111474, age 31, housed at CAPP, sentence satisfaction date 12/02/2021. Mr. Rhodehouse is positive for HCV and has not been treated, he is seeking treatment.

120.     Pete Kimball Roberts #96396, age 55, housed at Eagle Pass Correctional Facility Texas, sentence satisfaction date – Life. Mr. Roberts is positive for HCV and has not been treated, he is seeking treatment.

121.     ***Kelly Santas #78026***, **age 54, housed at ISCC Boise, PED 05/31/19, sentence satisfaction date 11/29/2020. Mr. Santas was diagnosed in 2005 at RDU and told not to worry about it. October 2016, again at RDU he was diagnosed as having Hep-C he is requesting treatment.**

122.     Daniel Ray Schmidt #36202, age 46, housed at ISCC, PED 06/17/2021, Sentence satisfaction date – Life. Mr. Schmidt is HCV positive, he has had treatment, but treatment was delayed until he had significant liver damage.

123.     Tanner Jace Sterling #85140, age 30, paroled out on 3/22/19, sentence satisfaction date 07/05/2032. Mr. Sterling is positive for HCV and was never treated while he was in the custody of IDOC, he is seeking treatment on the outside and damages to cover the cost of said treatment.

124.     Jesse Daniel Truesdale #74485, age 37, housed at Eagle Pass Correctional Facility Texas, sentence satisfaction date 07/12/2022. Mr. Truesdale was told the state could not afford to treat him, he started treatment while he was on parole, and was incarcerated before the full course of treatment, now Corizon is telling him he only has 4 spots on his liver and has to wait for treatment.

125.     Earle Edward Vine #47381, age 50, Parole 2/11/19, Sentence satisfaction date 04/27/2027. Mr. Vine is HCV positive and has never been treated. He is seeking treatment.

126.     ***Chad L Wahl #24971***, **age 50, housed at ISCC Boise, sentence satisfaction date 06/30/2028. Mr. Wahl contracted Hep-C while in the custody of IDOC. In 2018 he was found to be mid-stage 3 and received treatment. However, because of the delay in treatment he had permanent liver damage.**

127.     Lance Ryan Ward #79640, age 46, housed at ISCC, sentence satisfaction date 10/22/2023. Mr. Ward has HCV and has not been treated, he is at end of stage 3, and has had an ultrasound but has not been given the result.

128.     Kendall Rulon Wellard #107920, age 27, housed at ISCC, parole hearing date March 2019, sentence satisfaction date 12/17/2019. Mr. Wellard is HCV positive, he has been consistently seeking treatment and has been as consistently denied treatment.

129.     Jerry Lee White #78625, age 54, housed at ISCC, PED 01/16/2020, sentence satisfaction date -Life. Mr. White is HCV positive and has received treatment, but treatment was delayed allowing unnecessary disease progression.

130.     Joseph Ruiz Williams #64300, age 38, housed at St. Anthony Reentry Center, sentence satisfaction date 07/28/2019. Mr. Williams is HCV positive and has never been treated, he is nearing his sentence satisfaction date and would like to have treatment before he reaches that date.

131.     Andrew Perry Wilson #128722, age 36, housed at ISCC, PED 09/14/2020, sentence satisfaction date 03/13/2025. Mr. Wilson is HCV positive and has not been treated.

132.     Tracy Loren Workman #99968, age 51, housed at ISCC, PED 11/30/2019, sentence satisfaction 11/30/2030. Mr. Workman is positive for Hep-C antibody and has been denied treatment.

133.     Kelly Duane Zavalney #29740, age 57, housed at ISCC, parole hearing date March 2021, sentence satisfaction date – Life. Mr. Zavalney is HCV positive; he has been denied treatment, his platelet count has fallen indicating cirrhosis and his health is in decline, his direction has been to wait until his next chronic care visit.

134.     Because of the prevalence of hepatitis C in prison population is much higher than in the general population, prison population should be screen for HCV through an "opt-out" policy.  Defendants deliberately refused to implement an "opt-out" policy in order to avoid the cost associated with treatment.

135.     Members of subclass A were denied "opt-out" screening for HCV by Defendants in violation of the local standard of care and *Eighth Amendment*.

136.     In the cases of Plaintiffs Turney, Bartlett, McCall, Cortes, Workman and other Plaintiffs in subclasses B and C, HCV is a disability and disease of the digestive and circulatory systems that substantially and materially impairs their respective major life activities of (a) self-caring; (b) social interaction with other persons; (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, shaving razors; and (d) the quality of life itself.

137.     Each day that Defendants delayed treatment, in the case of Plaintiffs in subclasses B and C, the likelihood of cirrhosis of the liver, liver cancer, need of a liver transplant, and death from HCV grows for each of

them, as well as each member of the subclasses, as does the likelihood of infection for those with whom they come in contact with in IDOC facilities and, after their respective release, with whom they make contact with in the general public.

138.     Plaintiffs' liver, digestive system, and circulatory systems continue to deteriorate, as do those of other members of the named Class, the subclass of Plaintiffs with known cases of HCV who have not been appropriately and timely provided treatment, and members of subclass A with unknown and untreated cases of HCV.

139.     Each of the Plaintiffs have sought screening, appropriate testing and treatment for HCV in accordance with the standard of care and the one-pill-a-day treatment protocol for Sovaldi® or some equivalent treatment protocol which has been approved for administration to HCV-positive inmates.

140.     The Defendants, jointly and severally, have denied timely screening, appropriate testing and/or treatment to Plaintiffs Turney, Bartlett, McCall, Cortes, Workman and other Plaintiffs in subclasses A, B, and C because the Defendants' respective polic(y/ies), procedures and acts that were deliberately designed to limit or ration antiviral-HCV medication for non-medical reasons or administrative convenience or costs, unrelated to the individual medical needs of Plaintiffs, or the medical benefits they would derive from being cured of HCV.

141.     Plaintiffs Turney, Bartlett, McCall, Cortes, Workman, and all other Plaintiffs in subclasses A, B, and C are but a small percentage of the more than 8,000 inmates at the ten IDOC facilities who either have tested positive, or will test positive, for HCV.

142.     All Plaintiffs in subclasses A, B, and C have requested screening, appropriate testing and, when positive for HCV, the up to date 12-week HCV treatment, which the FDA has approved since December 2013.

143.     Plaintiffs in subclasses B and C reported their respective requests for the FDA-approved 12-week treatment to IDOC Health Services Director Rona Siegert, RN, CCHP-RN; IDOC Director Henry Atencio; and to Corizon Health Services Administrator Mr. Grant W. Roberts.

144.     Health Services Director Siegert and IDOC Director Atencio, in their official capacities, and Corizon and its agents and employees, in their individual and official capacities, jointly and severally, deliberately ignored Turney, Bartlett, McCall, Cortes, Workman and all other Plaintiffs' respective requests for screening, appropriate testing and the FDA-approved, 12-week treatment for HCV.

145.     Upon information and belief, each of the aforementioned Plaintiffs have exhausted any administrative remedies available to them while in Defendants' custody and control under governing federal and state law.

146.    All Plaintiffs are exposed daily to HCV infection, or re-infection while incarcerated, due to the deliberate indifference of Defendants.

147.    Defendants were aware of the FDA-approved, 12-week protocol.

148.    Defendant denied each of the Plaintiffs' requests that IDOC and Corizon modernize their chronic disease program by providing the HCV community standard of care, treatment protocol consisting of the FDA-approved "breakthrough" medications.

149.    Defendants' knowing refusal to screen, appropriately test and/or make available the safer and more effective cure for Plaintiffs' HCV infection, and continuing a policy of refusing to make the 12-week treatment and cure available for non-medical reasons or administrative convenience and cost, either prolonged, or is still prolonging, the harm HCV is causing to Plaintiffs' health.

150.    Defendants' polic(y)/(ies), practices and procedures fail to allow considerations to offenders who rank low on Defendants' prioritization list and for all practical purposes may never move up on the list to receive treatment (unless they develop cirrhosis or worsening fibrosis) due to the influx of new offenders continually coming into the prison system with a higher priority need.

151.    HCV progressively impairs the liver's ability to assist the body in digesting essential nutrients, filter toxins from the blood and affecting the normality of daily life and activities.  Every day without treatment, especially for older inmates, increases the likelihood of cirrhosis, fibrosis, liver cancer, the need for a liver transplant, complications from the disease and ultimately death from liver failure due to the HCV infection.  Further, there is the added risk of transmitting the hepatitis C virus to others.

## DEFENDANTS

152.    At the time this action was filed, Defendant Henry Atencio, an adult individual, ("*Atencio,*" "*Director Atencio,*" "*Director*" or "*IDOC*") was the Director of the Idaho Department of Correction ("*IDOC*"), whom Idaho Governor C.L. "Butch" Otter and his duly appointed Commissioners of the State Board of Correction appointed to administer, oversee, and operate the IDOC in accordance with the U.S. and Idaho State Const., and in compliance with state and federal law.

153.    Defendant Atencio ("*IDOC*") is the successor in office to Kevin Kempf.  Together, former Dir. Kempf, and thereafter Defendant Atencio were, and now-director Josh Tewalt is ("*IDOC*") responsible for policy, administration and supervision of staff within IDOC at all times relevant to this action.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT - Page 22

154.     Defendant Rona Siegert, RN, CCHP-RN, is an adult individual and the Health Services Director of the IDOC.

155.     Defendant Siegert, was at all time relevant and still is responsible for medical services throughout the IDOC system.

156.     On information and belief, after reasonable inquiry by the Plaintiffs, Defendant Siegert is ultimately responsible for the establishment of medical policy that governs the medical care and treatment of all inmates of IDOC, including the Plaintiffs.

157.     Plaintiffs sue Defendant Siegert in her official capacity for actions taken under color of law as Health Services Director, IDOC.

158.     Plaintiffs' grievances arising from the denial of medical care were appealed to IDOC's Central Office and reviewed and ruled upon by Defendant Siegert after consultation with Defendant Atencio ("*IDOC*") and Grant Roberts, Health Services Administrator, Corizon.

159.     Drs. John G. Migliori, M.D., and Murry R. Young, M.D., adult individuals, are treating physicians of Plaintiffs.

160.     Drs. Migliori and Young provide medical services to Plaintiffs pursuant to a contract between Defendant Corizon and IDOC.

161.     Other physicians, John and/or Jane Does, provide medical services to Plaintiffs throughout ten IDOC facilities for adult offenders.

162.     Dr. April C. Dawson, M.D., an adult individual, for a longstanding period of time and during the events complained of herein, was formerly a treating physician of some Plaintiffs.

163.     As physicians licensed to practice medicine in Idaho, Defendant Drs. Migliori, Young, and Dawson had and still have the obligation to provide independent, individualized, safe, effective medical care to each Plaintiff, consistent with current community standards of professional medical care.

164.     Plaintiffs sue Drs. Migliori, Young and Dawson in individual and official capacities for actions taken under color of law as Plaintiffs' treating physicians under contract to IDOC through Defendant Corizon for their negligence and deliberately indifferent failure to treat Plaintiffs' disability, disease, and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

165.     Defendants John and Jane Does A-Z, adult individuals, are doctors, nurses, case managers, supervisors, and other Corizon employees, agents, representatives, or independent contractors, whose work places are: ISCC, ISCI, SICI, IMSI, PWCC, CAPP, ICIO, NICI, SAWC, SBWCC, and various Community

Release Centers (CRC). These defendants are charged with responding to requests for medical care for hepatitis C from Plaintiffs or responding to requests for medical care for hepatitis C.

166.    Plaintiffs sue Defendants John and Jane Does A-Z in their respective individual and official capacities for actions taken under color of law for their deliberately indifferent failure to meaningfully treat Plaintiffs' disease and serious medical needs of hepatitis C in compliance with current standards of individualized professional medical care.

167.    Defendant Corizon is a for-profit company, duly incorporated under the laws of state of Missouri, with its principal business and corporate headquarters located at 105 Westpark Drive, Suite 200, Brentwood, Tennessee 37027, doing business in Idaho.

168.    Defendant Corizon contracted with IDOC to provide medical treatment services to IDOC inmates for one hundred ninety-eight million, three hundred seventy-nine thousand, three hundred twenty-five dollars ($198,379,325.00), beginning on January 1, 2014, through December 31, 2018.

169.    Upon information and belief, Plaintiffs assert that, despite this lawsuit alleging deliberate indifference and medical negligence, IDOC and Corizon have agreed to continue their contract.

170.    Plaintiffs sue Defendant Corizon and its employees, agents, representatives, and independent contractors in their official and individual capacities for the creation and implementation of policies, pursuant to contract with IDOC, that have directly inflicted harm and demonstrated deliberate indifference to the disability, disease, and serious medical needs of plaintiffs, in defiance of U.S. Const. amend. VIII through 42 U.S.C. § 1983.

171.    Plaintiffs sue the Defendants in their respective, specified capacities, for actions under color of law at all times relevant to this lawsuit, for their joint and several actions, policy creations, and policy implementations that manifest deliberate indifference to the Plaintiffs' serious medical needs of hepatitis C in violation of Plaintiffs' rights under U.S. Const. amend. VIII through 42 U.S.C. § 1983.

172.    Plaintiffs sue the Defendants in their respective, specified capacities, for their joint and several actions, policy creations, and policy implementations that manifest medical negligence in the treatment of Plaintiffs' serious medical needs in violation of the local standard of health care practice in Idaho.

173.    The Defendants Atencio ("*IDOC*") and Defendant Corizon have instituted a policy of rationing antiviral-HCV medication(s) to as few inmates as possible, for reasons of administrative convenience and cost, unrelated to the medical needs of individual inmates, who are the Plaintiffs.

174.    Defendants' failure to provide screening, appropriate testing and treatment to Plaintiffs in accordance with the prevailing standard of care for treatment of hepatitis C has put Plaintiffs at risk of serious

harm.  HCV is a chronic, potentially fatal blood borne viral disease that substantially and materially degrades the liver's ability to purify blood and convert substances in the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day. Every day without treatment increases the likelihood of cirrhosis, fibrosis, liver cancer, the need for a liver transplant, complications from the disease, death from liver failure and the risk of transmitting the disease to others.  By not providing medical treatment, the Defendants' actions threaten Plaintiffs with death and other irreparable harm stemming from the hepatitis C infection.

## FACTS

### A. HEPATITIS C VIRUS (HCV) DEFINED

175.     HCV was not discovered until 1989.  Blood screening was not possible until the mid-1990s.

176.     The Centers for Disease Control ("*CDC*") estimate the potentially fatal blood-borne hepatitis C Virus (HCV) infects some 4 million Americans of all ages and walks of life (about 2% of the population) and causes more deaths than HIV/AIDS.

177.     Between 20 - 50% of America's 2.5 million inmates are HCV positive. According to the CDC, most prisoners, and 98% of the general population, are at risk from unscreened, untreated inmates.

178.     Eliminating HCV from correction facilities filters HCV from the entire nation's blood pool.

179.     HCV is a chronic, potentially fatal blood-borne viral disease that substantially and materially degrades the liver's ability to purify blood and to convert substances in the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day.

180.     HCV can be spread by mere contact with an infected individual's blood, under such circumstances as: (a) physical activity in sports; (b) tattooing; (c) use of a hypodermic needle not properly cleaned or sterilized; (d) exposure to an infected person's blood in the course of medical care; (e) barber and cosmetology care; (f) sexual activity; (g) sharing of eating utensils and food; (h) sharing razors or other personal grooming supplies; (i) sharing bathrooms or shower facilities; (j) sharing living quarters; or (k) physical violence between individuals, including inmates, law enforcement or correctional staff.

181.     If left untreated, even asymptomatic HCV can cause cirrhosis, or destructive scarring of the liver, liver cancer, and may require a liver transplant, and eventually causes other symptoms to those it afflicts. As a communicable disease, HCV poses an unreasonable and substantial risk of serious present and future medical and physical harm to the Plaintiffs, and the general public after Plaintiffs' release from prison.

182.    HCV substantially and materially impairs the individual's, and these Plaintiffs', major life activities of (a) self-caring; (b) social interaction with other persons; (c) manual tasks particularly those involving knives, scissors, pins, needles, toothbrushes, eating utensils, or shaving razors; (d) reproduction; and (e) life itself.

183.    Each day treatment is postponed, the likelihood of fibrosis, cirrhosis of the liver, liver cancer, a liver transplant, and death grow for Plaintiffs, as does the likelihood of infection for those with whom they come in contact with in IDOC facilities and for members of the general public after they are released into the general population outside prison.

## B. BACKGROUND - CENTERS FOR DISEASE CONTROL (CDC), FDA, FBOP, U.S. PUBLIC HEALTH SERVICE (USPHS), V.A., AND THE U.S. SURGEON GENERAL

184.    Eradicating HCV from the entire population became possible in December 2013 because of the approval of the first FDA "breakthrough" drugs.

185.    In December 2013, the United States Food and Drug Administration ("*FDA*") approved a new class of safer, direct-acting antiviral drugs that cure HCV infections in 12 weeks of daily pill therapy at a >95% success rate.

186.    In January 2014, the Infectious Disease Society of America ("*IDSA*") and the American Association for the Study of Liver Disease ("*AASLD*") issued guidelines recommending sofosbuvir (Sovaldi®) and similar new drugs as first-line therapy to replace year-long Interferon-based injections entirely.

187.    In June 2014, the Federal Bureau of Prisons ("*FBOP*") issued "Clinical Practice Guidelines" ("*Guidelines*" or "*Protocol*") for HCV treatment of inmates. The FBOP specifically rejected the more dangerous, less effective 48-week toxic Interferon-base injection treatment regimen.

188.    The protocol specifically lists the ASSLD/IDSA Sofosbufir 12-week, one-pill-per-day regimen as the safer, more effective, standard-of-care in all FBOP facilities.

189.    Other agencies of the United States, including the Centers for Disease Control (CDC), the United States Department of Veterans Affairs (VA), and the Surgeon General of the United States Public Health Service (Surgeon General) adopted the one-pill-per-day, 12-week protocol as the standard of care for treatment of HCV, and specifically rejected the 48-week toxic Interferon-injection regimen, as has the CDC, the VA, and the Surgeon General of the USPHS. Private insurers that include UnitedHealth, Anthem, and Aetna cover the non-interferon antiviral oral pill treatments.

190.    As set forth in the FBOP October 2016 Clinical Practice Guidelines for HCV, the Guidelines' only medical criteria are that the patient (a) not be pregnant; (b) have sufficient time in custody

to complete treatment; and, (c) "demonstrate willingness and ability to adhere to rigorous treatment and to abstain from high risk activities."

191.    According to the AALSD/IDSA, FBOP, CDC, and VA protocols, chemical dependency treatment, however, is not a medically required precondition for the 12-week HCV treatment.

192.    The AALSD/IDSA, FBOP, CDC, and VA HIV/AIDS treatment protocols require treatment upon a positive test for HIV, without waiting for the onset of HIV-related end-stage illnesses, including Kaposi's sarcoma or pneumonia.

193.    The AALSD/IDSA, FBOP, CDC, and VA HCV protocols do not prescribe delay in HCV treatment until the onset of fibrosis, cirrhosis of the liver, or hematologic malignancy (liver cancer) for medical reasons to initiate the current standard of care one-pill-per-day, 12-week HCV treatment.

194.    Since the adoption of the current standard-of-care by agencies of the United States, barriers that the Defendants, jointly and severally, have erected in fact and as a matter of policy, to screening and treatment of HCV that differ significantly from HIV/AIDS lack medical justification, and do not survive scrutiny of sound medical judgment, or on any rational basis grounds.

195.    Defendants must assume the constitutional obligation under U.S. Const. amend. VIII and to provide the safer, more effective, non-interferon-based medical care for HCV that evolving science and FBOP, FDA, and Surgeon General protocols have made the new professional medical community standard of care, to eradicate HCV infection from the IDOC population.

196.    In doing so, the Defendants could reduce and then eliminate the likelihood of HCV reinfection of Plaintiffs and increase the likelihood of reduction and ultimate eradication of HCV amongst the general public population as a result.

### C. IDOC'S AND CORIZON'S HCV SCREENING POLICY/(IES), PROCEDURES AND PRACTICES

197.    Idaho Department of Health and Welfare ("IDHW") regulations and state law, I.C. Title 39-601, 39-602, 39-604 require that all physicians, healthcare facilities, medical laboratories, and every licensed healthcare provider to submit clinical materials associated with positive cases of communicable disease, including HIV/AIDS and HCV, to the district health authority in a manner that IDHW shall direct.

198.    Said Idaho regulations impose a duty to obtain knowledge, and to transmit said knowledge to the state health authority, of all communicable disease cases, including HCV, within the care and responsibility of all medical care providers, including medical care providers employed by, or contracted by IDOC.

199.     At all times relevant to this lawsuit, Defendant Atencio ("IDOC"), its agents, employees, representatives, or independent contractors including Defendant Corizon provide free, mandatory routine screening for HIV/AIDS within 14 days of prisoners' intake, or in response to a "kite" or Health Services Request (HSR), to a facility health service, with treatment available at all IDOC prison, without preconditions.

200.     In contrast, at all times relevant to this lawsuit, Defendant Atencio ("IDOC"), its agents, employees, representatives, or contractors including Defendant Corizon provide no routine screening for HCV during or after intake to identify sources of infection, or to protect inmates from sources of infection, despite the duties to know, report and transmit that the above-referenced regulations impose.

201.     Defendant Atencio ("IDOC"), on information and belief, after reasonable inquiry by the Plaintiffs, have promulgated IDOC SOP 401.06.03.077, as approved by, Shane Evans, chief of the Division of Education Treatment and Reentry, which purports to enact "(1) Clinical Practice Guidelines and Protocols; (2) Screening; (3) Testing; (4) Notification and Counseling; (5) Evaluation and Treatment; (6) Compliance" measures. Dated 9/9/2013.

202.     There is not a mandatory screening process within the aforementioned hepatitis C policy. "Screening" at IDOC locations consists of "[o]ffenders shall be provided educational information on the transmission, natural history, and medical management of HCV infection. The contract medical provider's qualified staff will perform this function on intake at the receiving and diagnostic units (RDU)."

203.     Defendants Atencio ("*IDOC*") and Siegert, in their official capacities, and Defendants Corizon, Migliori, Young, Dawson, and Does A-Z, in their respective individual and official capacities, jointly and severally, have enforced policies that by knowingly using a faulty "opt-in" rather than "opt-out" policy for HCV screening, intentionally underestimates the number of inmates in need of treatment for budgetary purposes.

204.     Defendants Atencio ("*IDOC*") and Siegert, in their official capacities, and Defendants Corizon, Migliori, Young, Dawson, and Does A-Z, in their respective individual and official capacities, jointly and severally, have intentionally denied Plaintiffs the right to access their own test results and other medical information necessary for them to participate in making health care decisions regarding hepatitis C.

### D. STANDARD OF CARE

205.     Despite Defendants' knowledge of the new safer and more effective standard of care, the Defendants, jointly and severally, have not enacted the current standard of care regimen of the one-pill-per-day HCV treatment described in the June 2014 FBOP Clinical Treatment Guidelines or any of the currently available

alternative oral treatments for HCV to meet the individual needs of the Plaintiffs, and to screen and cure prisoners infected with the HCV virus for reasons unrelated to medical care.

206.     At all times relevant to this lawsuit, Defendant Atencio ("*IDOC*") and Corizon, through its agents, employees, representatives, or independent contractors, jointly and severally, willfully denied or, with manifest deliberate indifference to the serious medical needs of the plaintiffs, denied HCV testing and treatment to Plaintiffs and similarly situated HCV-positive inmates.

207.     At all times relevant to this lawsuit, Defendant Atencio ("IDOC") and Corizon, through its agents, employees, representatives, or independent contractors, intentionally delayed, denied, or interfered with Plaintiffs' timely HCV treatment by withholding meaningful HCV treatment, for non-medical purposes, until Plaintiffs manifest symptoms of fibrosis, cirrhosis of the liver, or liver cancer.

208.     The primary HCV treatment available in the IDOC-Corizon system consists of cursory monitoring of individuals known to have tested positive for HCV, are willing to participate in the Defendants' "chronic disease program," which entails one blood draw per year, charting minimum liver function tests (LFT's), quarterly nursing encounter visits, and, when insisted upon, one doctor/physician assistant appointment annually.

209.     Defendants Atencio ("*IDOC*") and Siegert, in their official capacities, and Defendants Corizon, Migliori, Young, Dawson, and Does A-Z, in their respective individual and official capacities, jointly and severally, have (a) rationed medication and other necessary treatment of hepatitis C to a limited number of inmates for administrative convenience or costs thereby denying Plaintiffs necessary treatment for hepatitis C and conditioned treatment of hepatitis C on chemical dependency treatment which contravenes the clearly established standard of care for hepatitis C.

210.     The FBOP rejected this treatment model in June 2014 as falling below the professional hepatitis C medical treatment community standard of individualized care of inmates, specifically, the 12-week, one-pill-per-day "breakthrough" medication protocol available since December 2013.

211.     Defendants Atencio ("IDOC") and Corizon continue to assert that they adhere to FBOP guidelines involving hepatitis C treatment.

212.     The majority of Idaho's HCV-infected prisoners, estimated to be >98% of Idaho's known HCV-positive patients, have very limited access to the current "breakthrough" medications.

213.     At all times relevant to this lawsuit, of the ten facilities that IDOC operates, Defendants Atencio ("IDOC"), Siegert, Corizon, Migliori, Young, Dawson and Does A-Z, jointly and severally, only offer quarterly or periodic HCV chronic disease monitoring at specific facilities, and thus exclude the  majority of HCV-positive inmates from receiving any treatment at all.

214.     In light of the efficacy of the HVC "breakthrough" drugs in curing all levels of HCV viral infections, all HCV genotypes (with minor variances), and the relative simplicity of the treatment protocols associated with the 12-week oral medication, policies limiting treatment based on viral load, or subjective assessments relative to liver dysfunction, are matters of administrative convenience or cost saving, not the medical requirements of the patient.

215.     For non-medical reasons of policy and practice, Defendants Atencio ("IDOC") and Corizon have, jointly and severally, at all times relevant to this lawsuit, systematically denied, and continue to deny, Plaintiffs' request for the FDA-approved, one-pill-per-day protocol.

### E.  CONSEQUENCES OF FAILING TO DIAGNOSE AND TREAT HCV

216.     As a direct result of the Defendants' joint and several policies, practices, and actions that lack medical foundation or rational basis, and which substitute administrative convenience, caprice, and whim for individualized professional medical care and judgment for the Plaintiffs, Defendants needlessly force Plaintiffs to suffer the progressive effects of hepatitis C.

217.     The Defendants' willful and deliberate actions make progression of Plaintiffs' HCV infection foreseeable.

218.     Day by day and for non-medical reasons, uninfected inmates are put at risk of contracting hepatitis C which Defendants could eliminate from Idaho's prison population.

219.     The Defendants' willful and deliberate actions increase the likelihood of the Plaintiffs' deaths from symptoms arising from HCV infection.

### F.  CLASS ALLEGATIONS

220.     Plaintiffs bring this action on behalf of themselves, and others similarly situated, (the "Class") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

221.     Plaintiffs seek to represent the following Rule 23(b)(2) Class on claims for declaratory and injunctive relief: All persons (male and female) who either are currently or will be in the future incarcerated within IDOC without being tested for HCV under an "opt-out" policy.  As a result of Defendants' joint and several deliberate indifferences to the serious medical needs of this Rule 23(b)(2) Class, the members of this Class are or will be subjected to cruel and unusual punishment, and will face ongoing, threatened, and imminent physical harm as a result of Defendants' refusal to adopt such a policy requiring "opt-out" testing for HCV. The named Plaintiffs for this Rule 23(b)(2) Class, identified as Class A, will be Plaintiffs in subclass A.

222.     Plaintiffs seek to represent the following Rule 23(b)(2) Class on claims for declaratory and injunctive relief: Plaintiffs in subclass B, as class representatives, seek prospective relief requiring

Defendants IDOC and Corizon to immediately develop and institute policies whereby all present and future IDOC inmates (Class):

    a.    who do not "opt-out" of testing for HCV, **are tested** for HCV upon entry into IDOC custody, and, if negative for HCV, tested annually upon request while in IDOC custody and 6 months prior to release from IDOC custody;

    b.    who are HCV positive, consent to treatment for hepatitis C, and are reasonably expected to live another 12 months **are treated** without delay or rationing with a direct acting antiviral agent ("*DAA*") consistent with the standard of care;

    c.    who were HCV positive, but, successfully treated with DAAs only after their condition worsened while in IDOC custody **are monitored and provided treatment,** including liver transplantation, consistent with the standard of care for such patients for fibrosis, compensated cirrhosis, uncompensated cirrhosis and hepatocellular carcinoma caused by the delay in providing treatment; and

    d.    are guaranteed access to review their own medical records regarding testing and treatment of hepatitis C.

223.    The named Plaintiffs for this Rule 23(b)(2) Class, identified as Class B, will be the Plaintiffs in subclass B.

224.    Plaintiffs in Subclasses A and B seek declaratory relief declaring that Defendants' current policies, with regard to the testing, review of records and treatment of inmates with hepatitis C, violate the Eight Amendment and injunctive relief to enjoin Defendants' actions, policies, procedures and practices that infringe on the inmates' rights under the U.S. Constitution.

225.    Plaintiffs seek to represent the following Rule 23(b)(3) Class on claims for compensatory damages: All persons (male and female) who either are currently or have been in the past two years incarcerated within IDOC whose health worsened as a result of Defendants Corizon, Migliori, Young, Dawson and John and Jane Does A-Z's failure to timely screen, appropriately test or, if positive for HCV, treat their hepatitis C. As a result of these Defendants' joint and several deliberate indifferences to the serious medical needs of this Rule 23(b)(3) Class, the members of this Class have been subjected to cruel and unusual punishment and have suffered physical harm as a result of these Defendants' deliberate disregard to their serious medical need. Subclass C are the named Plaintiffs for this Rule 23(b)(3) Class.

226.    Plaintiffs seek to represent the following Rule 23(b)(3) Class on claims for compensatory damages for medical negligence: All persons (male and female) who either are currently or have been in the

past two years incarcerated within IDOC whose health worsened as a result of Defendants Corizon, Migliori, Young, Dawson, and John and Jane Does A-Z's failure to timely screen, appropriately test or, if positive for HCV, treat their hepatitis C. As a result of these Defendants' joint and several breaches of the standard of care in responding to the serious medical needs of this Rule 23(b)(3) Class, the members of this Class have been subjected to medical negligence as a result of these Defendants' neglect of their serious medical need. The named Plaintiffs for this Rule 23(b)(3) Class identified as Class C will also be the Plaintiffs in subclass C.

227.    The requirements of Rules 23(a) and 23(b), Fed. R. Civ. P. are met by this action:

a.    **NUMEROSITY** under Rule 23(a)(1):  The precise number of inmates in the Classes A, B, and C and their identity are within the control of Defendants. The names and locations of inmates testing positive for HCV and whether all inmates have even been screened (by a legitimate laboratory blood analysis) for HCV infection using an appropriate "opt-out" procedure, are data controlled by Defendants.  National averages predict the number of HCV positive inmates would exceed 1,600, a size much too large to make joinder practicable.

b.    **COMMONALITY** under Fed. R. Civ. P. 23(a)(2):  Questions of law and fact are common to the Classes, including but not limited to: (1) nature and scope of the safer, more effective DAA treatment; (2) the standard of care for treatment of chronic hepatitis C; and (3) whether the past and current policies and procedures adopted and implemented by Defendants for diagnosing and treating HCV infected inmates fails to meet the current standard of care and/or violates the Eighth Amendment.

c.    **TYPICALITY** under Fed. R. Civ. P. 23(a)(3): Plaintiffs claims are typical of the Class members because Plaintiffs and all Class Members were injured by the same wrongful policy and practices of Defendants as described in this Complaint. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class Members and are based on the same legal theories.

d.    **REPRESENTATIVENESS** under Fed. R. Civ. P. 23(a)(4): (1) Plaintiffs will fairly and adequately protect the interests of the Class; (2) Plaintiffs have no interests that are contrary to or in conflict with those of the Class

they seek to represent; (3) Plaintiffs now have obtained competent and skilled counsel whose interests are aligned with the interests of the Class; (4) Relief concerning Plaintiffs rights under the laws herein alleged and with respect to the Class would be proper; (5) Defendants have acted or refused to act with respect to the Class, thereby making final injunctive relief or corresponding injunctive relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

e.   **SUPERIORITY** under Fed. R. Civ. P. 23(b)(3): (1) A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the class is impracticable; (2) The number would prove unduly burdensome and inefficient for the Court and parties alike; (3) Because a common set of facts, grievances and remedies predominate over individual issues, individual litigation increases expenses to all parties, and better management of consistent adjudication and relief by a single court is in the interest of all parties; (4) Conduct of this action as a class action will protect the rights of all class members and promote judicial efficiency and consistency. Notice, if required in this Rule 23(b) class, can be provided to class members by United States mail, or alternatively, through IDOC authorized "J-Pay" e-mail accounts.

## E. EXHAUSTION OF ADMINISTRATIVE REMEDIES

228.   Defendants Atencio ("*IDOC*"), Rona Siegert, Corizon, through its agents, employees, representatives, or medical staff, to include Defendants Drs. Migliori, Young and Dawson have (a) actual notice of Plaintiffs' request for HCV treatment, *i.e.* one oral pill per day, 12-week regimen that the FBOP has adopted as its hepatitis C treatment protocol and is the standard of care in the community; (b) actual notice of the availability of  discounted group Rx purchasing platforms of  for these medications; (c) actual notice of the availability of Harvoni®, Viekira Pak® and other medications as alternative medicines to earlier, more expensive Sovaldi®, in the one-pill-per-day, 12-week regimen that eliminated previous therapies, *i.e.* toxic Interferon injections; (d) have continued to condition hepatitis C treatment on an arcane method or formula, that is arbitrary and capriciously applied, whereby Defendant Atencio ("IDOC"), its agents, employees, representatives, or contractors including Defendant Corizon prioritize a minute fraction of HCV-affected

inmates to receive the community standard of HCV care, by estimating the extent and degree of liver damage and the potential risk for developing end stage liver disease, hematologic cancer, or death; (e) actual notice that IDOC SOP 401.06.03.077, links chemical dependency treatment in the IDOC system which is an extraneous decision not made by the patient-specific professional judgment of a medical doctor, but rather an administrative calculus by a non-medical professional; and (f) have rejected Plaintiffs repeated health service request for the one-pill-per-day, 12-week regimen that the FBOP has adopted as its hepatitis C treatment protocol.

229.     Upon information and belief Plaintiffs in subclasses A, B, and C have exhausted, when feasible, the administrative remedies available to them.

230.     At times relevant to this lawsuit, Defendant Rona Siegert served as the Health Services Director and, while acting in conformity thereto, established a closed medication formulary, for individuals who are suffering from HIV, and, amongst others, suffer from the comorbidity of hepatitis C virus (HCV). In conjunction with Defendant Corizon, PharmaCorr, a wholly owned subsidiary of Corizon, implemented a pharmacy program centered on utilization management cost containment methods.  Additionally, Defendants Atencio ("IDOC") and Corizon continued to partner with Wellness Center/Family Medicine Health Center in providing inmates access to HIV disease treatment.

231.     As of August 28, 2013, the formulary for IDOC inmates who suffer from HIV, and, amongst others, from the comorbidity of HCV; included Ledipasvir/Sofosbuvir (Harvoni®), Sofosbuvir (Sovaldi®), and Simeprevir (Olysio®) for individuals fortunate enough to be prior-authorized to receive treatment services via the Wellness Center, IDOC, and Corizon co-operative partnership. Inmates who lack a comorbidity diagnosis are relegated to the closed formulary pharmacy program, with rudimentary "monitoring" of ones' HCV infection and disease progression.

232.     At all times relevant to this lawsuit, the state of Idaho has had access to, and the ability to authorize medications within the one-pill-per-day,12-week protocol cure for hepatitis C, specifically, Sovaldi®, Harvoni®, Mavyret® and Olysio®.

233.     As the Health Services Director of the IDOC, Defendant Siegert, at times relevant to this lawsuit, has had actual knowledge of the requests of Plaintiffs Turney, Bartlett, McCall, Cortes, Workman and all other Plaintiffs for the life-saving, one-pill-per-day, 12-week protocol cure of Sovaldi® or its alternative Harvoni®.

234.     As Director of the IDOC, Defendant Atencio, at times relevant to this lawsuit, has had actual knowledge of the Plaintiffs' request for the lifesaving, one-pill-per-day, 12-week protocol cure of Sovaldi® or its alternative Harvoni®.

235.   At times relevant to this lawsuit, Defendant Corizon (through its agents, employees, representatives, or medical staff), to include Defendants Drs. Migliori, Young and Dawson, has had actual knowledge of the serious medical needs of Plaintiffs for the life-saving, one-pill-per-day, 12-week protocol cure of Sovaldi® or one of the other alternative medications including Harvoni®.

236.   At times relevant to this lawsuit, Defendants Atencio ("IDOC"), Siegert, and Corizon (through its agents, employees, representatives, or medical staff), Corizon, to include Defendants Drs. Migliori, Young and Dawson jointly and severally, have denied to Plaintiffs , with deliberate indifference to their serious medical needs as hepatitis C sufferers, their requests for the life-saving, one-pill-per-day, 12-week protocol cure of Sovaldi® or one of the other alternative medications including Harvoni®..

237.   Upon information and belief, each Plaintiff has exhausted their administrative remedies in full compliance to IDOC SOP 316.02.01.001, Grievance and Informal Resolution Procedure, e.g. Offender Concern Form, Grievance, Appeal; notice of claims(s) in accordance with the Idaho Tort Claims Act, I.C. 6-901, et. seq., satisfying notification and exhaustion requirements under state and federal law.

238.   As a direct and proximate cause of these Defendants' failure to provide the current community standard of care for hepatitis C, a number of Idaho prisoners have needlessly suffered through end-stage liver disease, organ (liver) failure, ultimately succumbing to their death. *cf.* Idaho Dept. of Health & Welfare, Bureau of Vital Records, Death Certificate of Kevin Sagio, IDOC No. 18333.

239.   The foregoing averments and assertions of Plaintiffs constitute that Plaintiffs face imminent danger of serious and continuing physical pain and medical injury.


## CLAIMS

### CLAIM I:
### DEPRIVATION OF U.S. CONST. AMEND. VIII
### RIGHT TO BE FREE FROM INFLICTION OF CRUEL AND UNUSUAL
### PUNISHMENT, FOR WHICH 42 U.S.C. § 1983 PROVIDES REMEDIES


240.   Plaintiff realleges the allegations in paragraphs 1 through 230 above and incorporate the same herein by reference as if set forth fully.

241.   Plaintiffs in subclasses A, B, and C, and all similarly situated inmates, reallege and reincorporate each and every claim above and incorporate them here.

242.   Defendants Atencio ("*IDOC*") and Siegert, in their official capacities, and Defendants Corizon, Migliori, Young, Dawson, and Does A-Z, in their respective individual and official capacities, jointly and

severally, have enforced policies, procedures and practices that (a) by knowingly using a faulty "opt-in" rather than "opt-out" policy for HCV screening, intentionally underestimates the number of inmates in need of treatment for budgetary purposes; (b) intentionally denies Plaintiffs the right to access their own test results and other medical information necessary for them to participate in making health care decisions regarding hepatitis C; (c) rations medication and other necessary treatment of hepatitis C to a limited number of inmates for administrative convenience or costs thereby denying Plaintiffs necessary treatment for hepatitis C; (d) conditions treatment of hepatitis C on chemical dependency treatment; and (e) contravenes the clearly established standard of care for hepatitis C.

243.    Defendants' (a) use of "opt-in" testing for hepatitis C; (b) denial of access to medical information; and (c) rationing of care for hepatitis C to a limited number of inmates for administrative convenience or costs constitutes deliberate indifference to the serious medical needs of Plaintiffs, and all similarly situated inmates, thereby establishing a violation of U.S. Const. amend. VIII, for which 42 U.S.C. § 1983 provides declaratory, equitable, mandamus, and legal remedies.

244.    Defendants Atencio ("IDOC") and Siegert, in their official capacities, and Defendants Corizon, Migliori, Young, Dawson, and Does A-Z, in their respective individual and official capacities, jointly and severally, for non-medical reasons of polic(y/ies), established a closed medication formulary, for inmate patients suffering from HIV, and comorbidity of hepatitis C virus, by and through utilization management, authorize certain patients to benefit from the one-pill-per-day, twelve-week treatment protocol through partnership with the Wellness Center/Family Medicine Health, Corizon and PharmaCorr, relegating the vast majority of prisoners to the closed formulary - Chronic Disease program - merely "monitoring" HCV symptoms and disease progression.

245.    Defendants Atencio ("*IDOC*"), Seigert, Corizon, Migliori, Young, Dawson, and Does A-Z including other IDOC and Corizon agents, employees, or representatives --  through Wellness Center/Family Medicine Health, and PharmaCorr --have continued this polic(y/ies) for non-medical reasons, which constitutes deliberate indifference to the serious medical needs of the Plaintiffs, while intentionally and deliberately refusing to treat HCV patients with the simple 12-week, one-pill-a-day safer and more effective prevailing professional community standard of medical care that can be offered at any of the ten IDOC facilities, in violation of Plaintiffs' rights under U.S. Const. amend. VIII to be free from cruel and unusual punishment, for which 42 U.S.C. § 1983 provides declaratory, equitable, and legal remedies.

246.    By knowingly using a faulty "opt-in" rather than "opt-out" policy for HCV screening and denying Plaintiffs the right to access their own test results and other medical information necessary for them to

participate in making health care decision regarding hepatitis C, Defendant Corizon as a matter of non-medical corporate policy or custom, has enforced policies in violation of their rights under the Eighth Amendment to the U.S. Constitution.

247.    Medical staff employed by the private sub-contractors to IDOC, Corizon, and Defendants Migliori, Young, Dawson, John and Jane Does A-Z, were aware of the Constitutional inadequacies of their past and current screening and medical records policies and their refusal to correct these policies for non-medical reasons, constitutes wanton and willful disregard for medical standards and practice.

248.    Defendants' failure to provide Plaintiffs with access to their own HCV status was knowing and intentional, which further constitutes deliberate indifference to Plaintiffs' medical needs, thereby violating their right to be free from cruel and unusual punishment as proscribed by U.S. Const. amend. VIII, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

249.    Defendant Corizon as a matter of non-medical corporate policy or custom, has enforced an outdated low cost treatment plan consisting of quarterly "monitoring" HCV infected patients while relying upon subjective data as means to exclude or ration medication and meaningful treatment of hepatitis C to a limited number of patients for administrative convenience or money, thereby enforcing the deliberate indifference and cruel and unusual punishment arising from failure to prescribe up-to-date, safer and more effective community standard of care and treatment for HCV, in violation of Plaintiffs' clearly established right to be free from cruel and unusual punishment under U.S. Const. amend. VIII.

250.    Medical staff employed by the private sub-contractors to IDOC, Corizon, and Defendants Migliori, Young, Dawson, and John and Jane Does A-Z, are aware of the safer and more effective standards of care for hepatitis C, and their denial of treatment with the 12-week, one-pill-per-day treatment—for non-medical reasons, constitutes wanton and willful disregard for medical standards and practice.

251.    Failure to prescribe the safer, more effective 12-week oral treatment protocol adopted by the FBOP is knowing and intentional, which further constitutes deliberate indifference to Plaintiffs Turney, Bartlett, McCall, Cortes, Workman and Nichols serious medical needs, thereby violating their right to be free from cruel and unusual punishment as proscribed by U.S. Const. amend. VIII, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

252.    These allegations constitute averments of imminent danger of serious and continuing physical, medical injury.

253.    Plaintiffs in subclasses A, B, and C and all similarly situated Plaintiffs reallege and reincorporate each and every claim and averment above and incorporate them below.

254.     All new HCV infections in IDOC facilities since January 1, 2014, are the direct and proximate consequence of the danger knowingly and intentionally created by Defendants' IDOC's and Corizon's refusal to screen all Plaintiffs in subclass A using an "opt-out" testing for procedure for HCV and/or permit Plaintiffs to view those results or to timely treat all Plaintiffs in subclasses B and C who have been determined to suffer from hepatitis C or its consequences including, but not limited to liver fibrosis and cirrhosis.  These allegations constitute averments of imminent danger of serious physical, medical injury.

255.     Defendants Atencio's ("IDOC's") and Corizon's protocols require that HCV infections progress to the point of causing cirrhosis or scarring of the liver (fibrosis) when the FDA-designated HCV "breakthrough" drugs are equally effective for patients at all levels of viral infections.

256.     AASLD/ASID, CDC, VA, USPHS and the FBOP October 2016 protocol do not differentiate between HCV patients with respect to viral load, or those who have tested positive for HCV without fibrosis, cirrhosis, or liver cancer, or those who have fibrosis, cirrhosis, or liver cancer.

257.     Defendants Atencio ("IDOC") and Corizon and their agents including Defendants Seigert, Corizon, Migliori, Young, Dawson, in collaboration with the Wellness Center/Idaho Family Medicine Health Center, a cooperative partnership and recipient of state and federal funds, under licensing from the Idaho Department of Health & Welfare; authorized use of the one-pill-per-day, twelve-week protocol cure of Sovaldi® or Harvoni® to inmate patients and clients who suffer comorbidities of HIV and HCV, without requiring as a precondition to treatment, a set viral load, or manifest liver fibrosis, liver scarring, cirrhosis of the liver, liver cancer, or chemical dependency counseling.

258.     Defendants Atencio ("*IDOC*") and Corizon's policy of differential treatment for HCV patients, waiting to treat sufferers when they reach a set viral load, or manifest liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer, lacks rational basis under prevailing science and medicine, and manifests deliberate indifference to the serious medical needs of Plaintiffs in subclasses B and C , and all other similarly situated inmates s who either are suffering from HCV or the consequences of HCV including, but not limited to liver fibrosis and cirrhosis, in defiance of clearly established law.

259.     Defendants Atencio ("IDOC") and Corizon's polic(y/ies) of refusal to treat HCV infection of inmates until manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer lacks rational basis in violation of Plaintiffs' rights to equal protection of the laws under U.S. Const. amend. VIII, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

260.     These allegations constitute averments of imminent danger of serious physical, medical injury.

261.     Defendants Atencio ("IDOC"), Siegert, Does A-Z, Migliori, Young, Dawson, and Corizon, jointly and severally, through their decisions to (a) use "opt-in" rather than "opt-out" testing and deny Plaintiffs access to their medical records (b) to deny Plaintiffs any of the one-pill-per-day regimens that are the hepatitis C medical treatment community standard of care, (c) to deny lifesaving, curative care of Plaintiffs' hepatitis C infections for administrative convenience by imposition of irrational, not medically based criteria limiting lifesaving one-pill-per-day regimen, and (d) to deny lifesaving, curative, one-pill-per-day regimen that is the hepatitis C medical treatment community standard of care on the basis of cost and not the serious medical needs of the Plaintiffs and the foreseeable needs of the community at large to be protected from exposure to hepatitis C infected blood, demonstrate deliberate indifference to the serious medical needs of Plaintiffs, and all others similarly situated inmates, and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

262.     Defendants Atencio ("IDOC"), Siegert, Migliori, Young, Dawson, and Corizon, jointly and severally, through their decisions to deny Plaintiffs the one-pill-per-day regimen that is the hepatitis C medical treatment community standard of care, demonstrate deliberate indifference to the serious medical needs of Plaintiffs and thereby violate their right to be free from cruel and unusual punishment under U.S. Const. amend. VIII, for which 42 U.S.C. § 1983 provides declaratory, equitable, and other legal remedies.

263.     These allegations constitute averments of imminent danger of serious physical, medical injury.

264.     Plaintiffs in subclass A and all similarly situated inmates seek injunctive relief requiring Defendants to immediately offer all present and future inmates testing for HCV using an appropriate "opt-out" procedure and allow each inmate to review their medical records to see the results of such testing.

265.     Plaintiffs in subclass A and all similarly situated inmates seek declaratory relief declaring that they have a constitutional right to testing for HCV and the "opt out" procedure for testing for HCV is constitutionally required to be used by Defendants.

266.     Plaintiffs in subclass A and all similarly situated inmates seek declaratory relief declaring that they have a constitutional right to review their medical records to see the results of all such testing performed.

267.     Plaintiffs in subclass B and all similarly situated inmates seek injunctive relief requiring Defendants to immediately cease using any prioritization of inmates suffering from HCV to ration medically necessary care for administrative or budgetary reasons.

268.     Plaintiffs in subclass B and all similarly situated inmates seek injunctive relief requiring Defendants to immediately adopt a policy whereby all Plaintiffs in subclass B will be offered treatment for their hepatitis C and the consequences thereof including liver fibrosis and cirrhosis as required by the standard of care for such patients in the local community without regard to any prioritization scheme.

269.     Plaintiffs in subclass C and all similarly situated inmates seek compensatory damages against Defendants Corizon, Migliori, Young, Dawson, and Jane and John Does A-Z for any worsening of their physical or emotional health as a consequence of delays in their receiving treatment for hepatitis C and the consequences thereof including liver fibrosis and cirrhosis as a result of Defendant Corizon's policies or the decisions of Defendants Migliori, Young and Dawson implementing those policies.

270.     As a direct and proximate result of the Defendants' acts, omissions, and other wrongful conduct, Plaintiffs in subclass C have suffered the irreversible progression of fibrosis and/or cirrhosis secondary to hepatitis C and the health and medical consequences thereof, as well as physical and mental pain, suffering, and/or emotional distress.

271.     Plaintiffs in subclass B and all similarly situated inmates seek punitive damages against Defendants Corizon, Migliori, Young, Dawson and Jane and John Does A-Z for any worsening of their physical or emotional health as a consequence of  delays in their receiving treatment for hepatitis C and the consequences thereof including liver fibrosis and cirrhosis as a result of Defendant Corizon's policies which represent an extreme deviation form reasonable standards of care for such providers of health care in the United States.


## CLAIM II:

### Medical Malpractice Against Corizon, and Drs. Migliori, Young, and Dawson pursuant to Idaho Code § 6-1012

272.     Plaintiff realleges the allegations in paragraphs 1 through 262 above and incorporate the same herein by reference as if set forth fully.

273.     Plaintiffs in Subclass C ("*Malpractice Plaintiffs*") and all similar situated inmates bring this action against Corizon, John G. Migliori ("*Migliori*"), Murray K. Young ("*Young*") and April C. Dawson ("*Dawson*") as Malpractice Defendants.

274.     Pursuant to Idaho Code § 6-1001, Malpractice Plaintiffs have requested/will be requesting that the Idaho State Board of Medicine provide a hearing panel for pre-litigation consideration of a medical malpractice claim against Drs. Migliori, Young and Dawson on March 7, 2019.

275.     Malpractice Defendants failed to properly diagnose, evaluate, and treat Malpractice Plaintiffs' hepatitis C and thus breached the applicable standard of care owed to them which proximately caused Malpractice Plaintiffs' condition to irreversibly deteriorate causing them to suffer an increase in both morbidity and mortality.

276.     Malpractice Defendants had a duty to provide Malpractice Plaintiffs with competent health care which met the applicable community standard of health care practice under Idaho Code § 6-1012.

277.     Malpractice Defendants through their own conduct and/or the conduct of their employees, agents and independent contractors, breached the applicable standard of care owed to their patient, Malpractice Plaintiffs, by failing to accurately diagnose and competently evaluate and treat their hepatitis C and consequences thereof including, but not limited to, liver fibrosis and/or cirrhosis.

278.     Additionally, Malpractice Defendants through their own conduct and/or the conduct of their employees, agents and independent contractors breached the applicable standard of care owed to Malpractice Plaintiffs by:

      a.     Failing to have properly formulated, adopted, and enforced adequate rules and policies to provide the appropriate standard of care to Malpractice Defendants' patients suffering from hepatitis C and/or the consequences thereof including, but not limited to liver fibrosis and cirrhosis; and

      b.     Failing to have properly hired, retain, trained, and supervised competent medical staff that were aware and capable of performing their duties of providing appropriate standard of care to Malpractice Defendants' patients suffering from hepatitis C and/or the consequences thereof including, but not limited to liver fibrosis and cirrhosis.

279.     Corizon and their officers, directors, managers, administrators, independent contractors, and employees negligently failed to meet the applicable standard of health care practice under Idaho law and Chapter 10 of Title 6 of the Idaho Code, which negligence was and is the proximate cause of Malpractice Plaintiffs' and other similarly situated inmates' damages in an amount to be proven at trial.

280.    Malpractice Defendants are vicariously liable for the negligent failure of their employees, agents and independent contractors to meet the standard of health care practice under Idaho law and Chapter 10 of Title 6 of the Idaho Code, which negligence was and is the proximate cause of Malpractice Plaintiffs' damages in an amount to be proven at trial.

281.    To the extent that the officers, directors, managers, administrators and/or employees of Malpractice Defendants were not licensed health care professionals or directly involved in the provision of patient health care, then by the decisions, acts or and omissions as alleged above, Malpractice Defendants, and their officers, directors, managers, administrators and/or employees negligently failed to exercise reasonable and ordinary care for the safety of others, Malpractice Plaintiffs, which negligence was the proximate cause of Malpractice Plaintiffs' and other similarly situated inmates' damages.

282.    Plaintiffs in subclass C and all similarly situated inmates seek compensatory damages against Defendants Corizon, Migliori, Young, and Dawson for any worsening of their physical or emotional health as a consequence of delays in their receiving treatment for hepatitis C and the consequences thereof including liver fibrosis and cirrhosis as a result of Defendant Corizon's policies or the decisions of Defendants Migliori, Young and Dawson implementing those policies.

283.    As a direct and proximate result of the Defendants' acts, omissions, and other wrongful conduct, Plaintiffs in subclass C have suffered the irreversible progression of fibrosis and/or cirrhosis secondary to hepatitis C and the health and medical consequences thereof, as well as physical and mental pain, suffering, and/or emotional distress.

284.    Plaintiffs in subclass C and all similarly situated Plaintiffs will seek to amend this Complaint to add a claim for punitive damages against Defendants Corizon, Migliori, Young, and Dawson for any worsening of their physical or emotional health as a consequence of  delays in their receiving treatment for hepatitis C and the consequences thereof including liver fibrosis and cirrhosis as a result of Defendant Corizon's policies which represent an extreme deviation form reasonable standards of care for such providers of health care in the United States.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs in subclasses A, B, and C and all similarly situated Plaintiffs pray for judgment and other relief as follows:

1.     For certification of the class and subclasses of Plaintiffs named above pursuant to Fed. R. Civ. Proc. 23(a), 23(b)(2) and 23(b)(3);

2.     For the named Plaintiffs and members of the Plaintiff Rule 23(b)(2) class and subclasses A and B, a declaratory judgment that the Defendants have violated and are currently violating the U.S. Const. amend. VIII through 42 U.S.C. § 1983;

3.     For the named Plaintiffs and members of the Plaintiff Rule 23(b)(2) class and subclasses A and B, issuance of a temporary restraining order, preliminary and permanent injunction requiring Defendants Atencio ("IDOC"), Seigert and Corizon (and its employees, agents, representatives, and independent contractors) to immediately develop and institute policies whereby all present and future IDOC inmates (Class):

    a.    who do not "opt-out" of testing for HCV, **are tested** for HCV upon entry into IDOC custody, annually upon request while in IDOC custody, and 6 months prior to release from IDOC custody;

    b.    who are HCV positive, consent to treatment for hepatitis C, and are reasonably expected to live another 12 months **are treated** without delay or rationing with a direct-acting antiviral agents ("*DAA*") or other necessary treatment and/or monitoring -- including liver transplantation, consistent with the standard of care for such patients for compensated cirrhosis, uncompensated cirrhosis and hepatocellular carcinoma caused by the delay in providing treatment -- consistent with the standard of care; and

    c.    are guaranteed access to review their own medical records regarding testing and treatment of hepatitis C.

4.     For the named Plaintiffs in subclass C and all other similarly situated Plaintiffs as members of the Rule 23(b)(3) class, Plaintiffs, as class representatives, an award of monetary damages against Defendants Corizon and its employees, agents, representatives, and independent contractors in their individual capacities, jointly and severally, on their claims for compensatory damages, in amounts to be determined at trial;

5.     For the named Plaintiffs in subclass C and all other similarly situated Plaintiffs as members of the Rule 23(b)(3) class, Plaintiffs, as class representatives, an award of punitive damages against the Defendant Corizon and its employees, agents, representatives, and independent contractors in their respective individual capacities on their claims arising under U.S. Const. amend. VIII, in an amount to be determined at trial;

6.     For an award of prejudgment interest;

7.      For an award of post-verdict interest;

8.      For an award of Plaintiffs' costs and disbursements;

9.      For an award of reasonable attorney fees in accordance with 42 U.S.C. § 1988 and/or any other applicable statute supporting the award of fees, including but not limited to the provisions of Idaho Code §§ 12-120, 12-121 and IRCP 54;

10.     For the issuance of an injunction to enjoin the Defendants from taking any action to interfere with Plaintiffs' right to maintain this action, or from retaliating against Plaintiffs for bringing this action; and

11.     For such further and other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand jury trial on all claims triable to the jury.


DATED this ____ day of May 2019.


/s/ Richard A. Hearn
RICHARD A. HEARN
HEARN LAW, PLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the_____ day of May 2019, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Andrew Rulon Alder
Parsons Behle & Latimer
aalder@parsonsbehle.com

Marisa Swank Crecelius
Moore, Elia, Kraft & Hall, LLP
marisa@melawfirm.net

Dylan Alexander Eaton
Parsons, Behle & Latimer
deaton@parsonsbehle.com

Brady James Hall
Moore, Elia, Kraft & Hall, LLP
brady@melawfirm.net

Andrew Virel Wake
Parsons, Behle & Latimer
awake@parsonsbehle.com

Craig D. Stacey
Moore, Elia, Kraft & Hall, LLP
craig@melawfirm.net

J. Kevin West
Parsons, Behle & Latimer
kwest@parsonsbehle.com

William R. Lunsford
Maynard Cooper and Gale
blunsford@maynardcooper.com

/s/ Richard A. Hearn
RICHARD A. HEARN