Dylan A. Eaton, ISB #7686
DEaton@parsonsbehle.com
Andrew R. Alder, ISB #9971
AAlder@parsonsbehle.com
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, Idaho 83702
Telephone: (208) 562-4900
Facsimile: (208) 562-4901

William R. Lunsford *(pro hac vice)*
blunsford@maynardcooper.com
MAYNARD COOPER & GALE
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119

*Counsel for Defendants Corizon, LLC, John G. Migliori, Murray F. Young, and April C. Dawson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP A. TURNEY, et al.,<br><br>    Plaintiffs,<br>v.<br><br>HENRY ATENCIO, et al.,<br><br>    Defendants. | Case No. 1:18-cv-00001-BLW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

The Parties submit this Memorandum of Points and Authorities in Support of the Joint Motion for Preliminary Approval of Class Action Settlement and exhibits hereto: **Exhibit 1** (the proposed Agreement), **Exhibit 2** (a proposed Notice to the Class proposed in the Agreement), and **Exhibit 3** (a Proposed Order Granting Preliminary Approval of Agreement, Setting Hearing, and Directing Class Notice).

## BACKGROUND AND PROCEDURAL HISTORY

This action originated with a *pro se* Complaint filed on January 3, 2018 against defendants including officials of the Idaho Department of Correction ("IDOC") and Corizon, Inc. ("Corizon"

and, together with IDOC, the "State"). (Dkt. 11). Counsel for Plaintiffs appeared on July 2, 2018 (Dkt. 45), and filed a Motion for Class Certification and a Motion for Preliminary Injunction/Temporary Restraining Order on October 16, 2018 (Dkts. 54-58). After a Case Management Conference on January 22, 2019, Plaintiffs withdrew their Motion for Class Certification and Motion for Preliminary Injunction/Temporary Restraining Order, and the Court referred the case to mediation. Newal Squyres, Esq. of Holland & Hart, LLP served as the neutral mediator. The initial mediation session occurred on July 18, 2019, followed by additional sessions on December 4, 2019; March 11, 2020; April 8, 2020; June 17, 2020; and September 1, 2020. Counsel continued settlement discussions until reaching the Agreement on March 1, 2021.

The Parties' efforts resulted in the execution of the Agreement, attached as **Exhibit 1**. The Parties believe the terms of the Agreement are fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e) and thus warrant the Court's approval on a class-wide basis. The Agreement, if approved by the Court, will resolve all claims for injunctive relief in this matter. The proposed Notice to the Class ("Notice"), which would inform Class members of their right to submit objections to the Agreement, the procedure for doing so, and the availability of copies of the Agreement, is attached hereto as **Exhibit 2**.

Notably, the Agreement contains provisions regarding testing, screening, treatment of the hepatitis C virus ("HCV") including monitoring pre and post DAA treatment per the treatment recommendations established by the Federal Bureau of Prisons ("FBOP") as well as education related to HCV. The Agreement also includes procedures for monitoring compliance with its provisions. The key provisions of the Agreement, from the Parties' perspective, are summarized below:

A.  **Testing and screening:**

- For all individuals entering IDOC custody, the State will provide opt-out HCV antibody testing at intake and, if the antibody test is positive, the State will provide RNA testing to confirm whether the individual has an active infection. If the RNA test is positive, then the inmate will be enrolled in the HCV chronic disease program ("HCV CDP") or its equivalent.

- Inmates housed outside of a Reception and Diagnostic Unit ("RDU") without a prior documented positive HCV antibody test will receive testing within sixty (60) days upon written request.

- For a period of one (1) year, all individuals who have not received an HCV antibody test or submitted a written request for one shall be offered opt-out testing during their first annual tuberculosis screening visit following the Effective Date of the Agreement.

B.  **Treatment:**

- No inmate shall be deemed ineligible to receive DAA treatment based solely upon fibrosis score or priority level. The limited available treatment resources will be prioritized among inmates based on medical need as determined by medical judgment of IDOC's contracted healthcare providers in a manner consistent with the FBOP's Clinical Guidance for the Evaluation and Management of Chronic Hepatitis C Virus.

- IDOC agrees to spend between $4.35 million and $6.6 million annually for over five (5) fiscal years exclusively for the purpose of providing DAA treatment to eligible inmates.

C.  **Education:**

- Inmates with chronic HCV who are released from IDOC custody and have not received DAA treatment will receive educational materials, including resources for where to obtain treatment in the community and options for payment.

D.  **Compliance Monitoring:**

- During the term of the Agreement, IDOC will provide Plaintiffs' counsel, on a "Confidential-Attorneys' Eyes Only" basis, a quarterly, written HCV priority log that contains the following information: (1) inmate name, (2) IDOC number, (3) priority

>level, (4) most recent APRI or F-Score, (5) date of any subsequent assignments of APRI or F-Score, and (6) date of completed treatment with DAA medications.

Notwithstanding the fact that the Parties have amicably resolved their dispute, they agree that no Party admits any liability or wrongdoing whatsoever. As part of the proposed Agreement, the State will reimburse undersigned Plaintiffs' counsel (for representation of the named Plaintiffs and as Class counsel) for certain attorneys' fees and costs pursuant to section 3.8 of the proposed Agreement, and named Plaintiffs and the Class will release all claims for declaratory and injunctive relief against the State.

## ARGUMENT

**I.       Legal Standard**

The Ninth Circuit maintains a "strong judicial policy" in favor of the settlement of complex class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Before directing notice of a proposed class action settlement, the Court must determine that the Court "will likely be able to" approve the settlement under Rule 23(e)(2) and certify the class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) requires the Court to determine that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Rodriguez v. West Publ. Corp., 563 F.3d 948, 963 (9th Cir. 2009). According to the Ninth Circuit, "[a] number of factors guide the district court in making that determination, including:

>the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 4
4811-7376-2808.v3

Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).  When the settlement occurs before class certification, the Court also must "ensure that class representatives and their counsel do not secure a disproportionate benefit "'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'"  Id. (citing Hanlon v. Chrysler Corp, 150 F.3d 1011, 1027 (9th Cir. 1998)).  Moreover, at the preliminary approval stage, a court should grant preliminary approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  Lilly v. Jamba Juice Co., Case No. 13-cv-02998, 2015 WL 1248027, at *6 (N.D. Cal. Mar. 21, 2017).

Rule 23(e)(2), although not intended to "displace" the Ninth Circuit's factors (adv. cmte. notes to 2018 amendment to Fed. R. Civ. P. 23), includes additional guidance for courts considering whether proposed settlements are "fair, reasonable, and adequate."  Under Rule 23(e)(2), courts should "consider[] whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).

**II.     The Court Should Certify the Class for Settlement Purposes Only**

The Parties make this joint request for settlement purposes only. The State does not consent to the certification of any class other than the Class outlined in the Agreement and solely for the purpose of carrying out the settlement discussed in the Agreement. The State reserves the right to contest certification of any class that is different from the Class outlined in the Agreement or for any purpose other than for carrying out the Agreement.

Federal Rule of Civil Procedure 23(a) permits an action to be maintained as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

For settlement purposes only, the Parties agree that the proposed settlement Class satisfies all of Rule 23(a)'s requirements. First, pursuant to the proposed Agreement, the parties propose a definition of a class to be certified by this Court consisting of the following individuals (the "Class"):

> "[A]ll current and future inmates in IDOC custody who have not been diagnosed with HCV; all current and future inmates in IDOC custody who have or will be diagnosed with HCV; and all Individual Plaintiffs who have been treated with DAA Treatment. For purposes of this Agreement, Class Members shall include those persons comprising the class under FRCP 23(e) that the Parties agree to have the Court certify as a class for settlement purposes only."

(See Definition of "Class Members" of Private Settlement Agreement and Release, Exhibit 1, pg. 5, Section 1.5.) Based solely on the approximately 8,000 inmates currently in IDOC custody, the Class is sufficiently numerous that joinder is impracticable. See <u>Rannis v. Recchia</u>, 380 F. App'x

646, 651 (9th Cir. 2010). Second, for settlement purposes only, the Parties agree that the proposed settlement will provide common answers to questions that are common to the Class. See <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 349-50 (2011). For example, the proposed settlement requires IDOC to provide a specified amount of funding for DAA treatment over five (5) fiscal years, which will benefit all Class members – including future Class members who either are not yet in IDOC custody or have not yet tested positive for HCV. Third, for settlement purposes only, the Parties agree that the claims of the proposed Class representative(s)[1] are typical of the Class as a whole. See <u>Parsons v. Ryan</u>, 754 F.3d 657, 686 (9th Cir. 2014). For example, certain Class representative(s) alleges that they experience chronic HCV but had not, at the time of filing the Complaint, received DAA treatment. Fourth, for settlement purposes only, the Parties agree that the proposed Class representative(s) adequately represent the proposed class. All proposed Class representative(s) have the same interests as proposed Class members with respect to the proposed injunctive relief they seek. Moreover, certain proposed Class representative(s) actively participated in mediation, including attending at least one of the mediation sessions and conferring with Class counsel both in person and by phone.

Federal Rule of Civil Procedure 23(b)(2) permits a case to be maintained as a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." See <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1125-26 (9th Cir. 2010). Here, Plaintiffs challenge IDOC's policies and procedures as they apply to the proposed Class as a whole,

---

[1] The Second Amended Complaint (Dkt. 111) identifies a total of five (5) original named plaintiffs in this action. However, Plaintiffs reserve the right to reduce or amend the total number of class representatives for purposes of any certification of any settlement class in this matter.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 7
4811-7376-2808.v3

and the Agreement will apply generally to the Class as a whole.  For settlement purposes only, the Parties agree that a settlement Class is appropriate under Rule 23(b)(2).

Finally, Federal Rule of Civil Procedure 23(g) requires the Court to appoint adequate class counsel.  Under Rule 23(g), a court "must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  For settlement purposes only, the Parties agree that Plaintiffs' counsel satisfy these criteria.

**III**.    **The Agreement Is Fair, Reasonable, and Adequate**

The Court "must evaluate the fairness of a settlement as a whole, rather than assessing its individual components."  Lane, 696 F.3d at 818-19.  "[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the eyes of the reviewing court."  Id. at 819.  Applying the Ninth Circuit's factors and those set forth in Rule 23(e)(2) to the Agreement demonstrates that it is fair, reasonable, and adequate, that it serves the public interest, and that the Court "will likely be able to" approve it.  Fed. R. Civ. P. 23(e)(1)(B)(i).

    **A.**    **The Strength of Plaintiffs' Case and the Risk of Further Litigation**

Named Plaintiffs maintain that they could develop sufficient evidence demonstrating that, at least at the time this action was initiated, the State violated Class members' constitutional right to adequate medical care.  For example, named Plaintiffs expect to present expert testimony that HCV is a serious illness that damages the liver and has significant negative health effects beyond those on liver function and, if left untreated, can result in serious illness or death.  Named Plaintiffs

would further present evidence of the efficacy of DAAs in reaching sustained virologic response, which they would argue is commonly understood as a "cure" for HCV. Finally, named Plaintiffs would present evidence that the State failed to provide DAA treatment to many Class members.

The State would be prepared to rebut named Plaintiffs' evidence. The State would present expert testimony demonstrating that the State adequately and appropriately provided HCV-related medical care to named Plaintiffs and the Class. For example, the State would point to guidance from the FBOP that, among other things, endorses prioritizing treatment among those with HCV. The State would argue that it appropriately follows FBOP guidance. The State would present testimony from Corizon staff that treatment decisions are made on an individualized basis and not based solely on the cost of DAAs. The State would present evidence that it changed its policies and procedures as medicine surrounding HCV evolved, including using DAA medications to treat IDOC inmates with HCV. The State also would show that it now treats significantly more inmates with DAAs than it did at the time this case was filed.

Multiple live disputes exist in this matter. The Parties dispute what standard of care applies to the Class, whether the State deviates from that standard, and whether any such deviation is so significant as to constitute deliberate indifference rather than mere negligence or disagreement with clinical judgment. These disputes are both legal and factual, with expert support on both sides. In short, as in almost every case, Plaintiffs' success on the merits is far from guaranteed.

The Agreement provides a portion of the relief named Plaintiffs sought on behalf of the Class, and it provides significant relief immediately. Because the Parties expect the cost of DAAs to continue to decrease over time, they expect that IDOC will be able to provide DAA treatment to more Class members each year. The Parties agree that Class members will receive treatment according to their risk levels, as determined by FBOP Guidance, and the sickest Class members will

receive treatment first. Class members will not, however, need to progress to a certain stage of illness to receive treatment.

Named Plaintiffs also sought improvements to IDOC's HCV testing and screening regime. The Agreement requires the State to implement opt-out antibody testing, thereby ensuring a more accurate count of HCV-positive individuals in IDOC custody and ensuring that those individuals receive timely care and monitoring. The Agreement also requires RNA testing to determine whether an individual has an active infection. Finally, the Agreement provides for education for HCV-positive inmates who leave IDOC custody without receiving DAA treatment.

Given the uncertainties associated with trying this case, consideration of this factor weighs heavily in favor of approving the Agreement. That is particularly so given the immediacy of relief provided under the Agreement versus the amount of time required for discovery, trial, the Court's decision, and any possible appeals.

### B.   The Risk of Maintaining Class Action Status Throughout Trial

Individual members of the proposed settlement Class will remain eligible Class members only as long as they remain in IDOC custody. Thus, Class membership will remain fluid, with members constantly leaving the Class as they leave IDOC custody and new members entering the class as they enter IDOC custody. This Class fluidity could present difficulties for maintaining continuity with inmates serving as Class representative(s). Moreover, the State's HCV treatment protocols continue to evolve, and future changes in treatment protocols could threaten to moot the Class claims.

### C.   The Amount Offered in Settlement

The Agreement provides a significant portion of the relief named Plaintiffs sought at the start of this action. Named Plaintiffs sought treatment with DAA drugs. The Agreement secures DAA

treatment for the sickest inmates beginning in fiscal year ("FY") 2021 and guarantees treatment for Class members through FY 2028. Under the Agreement, IDOC agrees to spend between $4.35 million and $6.6 million each fiscal year between FY 2021 and FY 2025, for a total of $29.25 million in those years. The Parties expect the cost of DAA drugs to continue to decrease, which might allow IDOC to provide DAA treatment within six (6) months of entry into IDOC custody at some point in the future. The Agreement also provides for universal opt-out antibody testing and RNA testing to determine whether an individual has an active HCV infection. Finally, the Agreement provides for increased education regarding HCV, both for individuals in IDOC custody and those who leave IDOC custody without receiving DAA drug treatment. Given that the Agreement provides immediate relief, and a good portion of the ultimate relief Plaintiffs originally sought, this factor weighs heavily in favor of approval as well.

### D. The Extent of Discovery Completed and the Stage of Proceedings

This is a complex case. The Parties currently estimate that the proposed settlement Class consists of approximately 8,000 individuals, and individuals regularly enter and leave the Class as they enter and leave IDOC custody. Moreover, the costs of litigation would be significant.

There remain substantial outstanding discovery obligations on both sides in terms of paper discovery (interrogatories and requests for admission), document production, and depositions. Each Party anticipates presenting expert testimony from multiple experts, and each Party would seek to depose the other Party's experts. Both Parties would seek numerous fact depositions as well. The Parties expect that Plaintiffs would move for class certification and seek a preliminary injunction, and both Parties would file motions for summary judgment. This motion practice would involve complex issues of fact and law and would require significant time and resources. Thus, this factor weighs in favor of approval as well.

### E. The Parties Negotiated the Agreement at Arms'-Length

The Parties negotiated the Agreement over a period of almost two (2) years. Newal Squyres, Esq. of Holland & Hart, LLP served as mediator throughout the negotiations. The Agreement treats all members of the prospective settlement Class, including future Class members, equitably. All Class members will receive the full benefit of the annual expenditures and testing requirements set forth in the Agreement as long as they remain in IDOC custody. Any differences among treatment of Class members will be determined solely by health care providers based upon their medical judgment.

Plaintiffs' counsel and the proposed Class representative(s) adequately represented the Class. Plaintiffs' counsel (as putative Class counsel) vigorously litigated this action for years, and the proposed Class representative(s) actively participated in this case. For example, the proposed Class representative(s) attended at least one mediation session, and Plaintiffs' counsel and the proposed Class representative(s) discussed the benefits of the proposed Agreement on multiple occasions.

The Agreement provides that Plaintiffs' counsel will receive an award of attorneys' fees and costs as a result of the benefit created for the Class. Because the Agreement covers only injunctive relief and not damages, the attorneys' fees and costs awarded will have no financial impact on the Class. See Fed. R. Civ. P. 23(e)(C)(iii). Additionally, the attorneys' fees and costs will not impact the injunctive relief afforded the Class. Moreover, the amount of attorneys' fees and costs awarded to Plaintiffs' counsel under the Agreement will be substantially less than the amount of attorneys' fees and costs Plaintiffs' counsel might claim if they ultimately prevail. See 42 U.S.C. § 1988(b), (c).

### F. The Public Interest

Providing DAA treatment to Class members benefits public health. Individuals who receive successful DAA treatment can no longer transmit the virus to others. Accordingly, providing DAA treatment to Class members benefits other individuals, both inside and outside of IDOC facilities, by reducing the future spread of HCV. Thus, approval of the Agreement is in the public interest.

### G. The Experience and Views of Counsel

Counsel for Plaintiffs, IDOC, and Corizon all support certifying the proposed Class for settlement purposes only and consistent with the Agreement. Counsel further agree that the proposed settlement is "fair, reasonable, and adequate."

## IV. The Proposed Notice to Class Members is Adequate

Once a court determines that it will likely be able to approve a settlement proposal and certify a class for purposes of settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, under Rule 23(c)(2)(A), "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The Parties jointly drafted a proposed Notice of Class Certification and the proposed Agreement, attached hereto as **Exhibit 2**. The Parties propose that IDOC distribute the Notice as follows:

- All facilities have bulletin boards which will be utilized for posting the Notice. Where no bulletin board access is available, laminated copies will be placed on

> walls in various units (medical, education, intake, above ATC collection boxes, and near kiosk computer access areas).

- J-pay will email a PDF version to all Residents. J-pay will place a link on all kiosk computers allowing Residents to access/open the PDF Notice to read. Printed versions will be given to Residents who do not have a J-pay tablet, access to a kiosk computer or if the legal assistant as the facility feels the need to provide.

- A laminated copy of the Notice will be placed in the window of each treatment room in the medical unit.

- For Residents in segregated areas (i.e., IMSI medical units, B-Block, etc.), where access to view postings is restricted, the legal assistant will post a double-sided version of the PDF and hand-deliver to those Residents.

The Parties propose to complete distribution of the Notice no later than two (2) weeks after the Court's approval of the Notice. IDOC proposes that it will file a certification to the Court within one (1) week of the completion of distribution of Notice certifying that it complied with this requirement.

The Notice and proposed distribution procedures are adequate. The Notice fairly apprises Class members of the terms of the Agreement and informs them of their right to submit objections to the Agreement and the procedure for doing so, and it does so in clear, neutral language that is accessible to Class members. The Notice also provides contact information for Plaintiffs' counsel should any Class member have questions about the Notice or the Agreement. Thus, the Court should approve the Notice.

## **CONCLUSION**

Because the proposed Agreement is fair, reasonable, and adequate, and because the Notice adequately informs the Class of the terms of the proposed Agreement and their rights related to the proposed Agreement, the Parties respectfully request that the Court:

(a)  preliminarily approve the proposed Agreement;

(b) certify for purposes of settlement a Class as defined in the proposed Agreement;

(c) order that IDOC post and distribute (as outlined above) the Notice to the Class within two (2) weeks of the date of this Court's Order granting preliminary approval and file within one (1) week of the completion of the distribution of Notice a certification indicating that it completed this requirement;

(d) require that objections or comments regarding the Agreement be mailed to the Court as set forth in the Notice, postmarked by thirty (30) days after completion of the Notice distribution procedures outlined above;

(e) order that briefs in support of approval of the Agreement be due two (2) weeks after objections and comments are due;

(f) schedule a fairness hearing for two (2) weeks or later after the deadline for objections and comments; and

(g) finally approve the proposed Agreement, after considering the terms of the Agreement and any objections or comments received, and conducting such other and further proceedings as the Court deems necessary.[2]

DATED this 31st day of August, 2021.

PARSONS BEHLE & LATIMER

By: /s/ Dylan A. Eaton
Dylan A. Eaton
Counsel for Defendants Corizon, Inc.,
John G. Migliori, Murray F. Young, and
April C. Dawson

---

[2] A Proposed Order is attached hereto as **Exhibit 3**. This Order will also be submitted to the Court via e-mail as outlined in the U.S. District Court's Electronic Case Filing Procedures.

DATED this 31st day of August, 2021.

          MAYNARD COOPER & GALE

          By: */s/ William R. Lunsford*
           William R. Lunsford
           Counsel for Defendants Corizon, Inc.,
           John G. Migliori, Murray F. Young, and
           April C. Dawson

DATED this 31st day of August, 2021.

          MOORE ELIA & KRAFT, LLP

          By: */s/ Steven R. Kraft*
           Steven R. Kraft
           Counsel for Defendants Josh Tewalt
           and Rona Siegert

DATED this 31st day of August, 2021.

          HEARN LAW, PLC

          By: */s/ Richard A. Hearn*
           Richard A. Hearn
           John Ingelstrom
           Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of August, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Richard A. Hearn
John Ingelstrom
HEARN LAW, PLC
hearn@hearnlawyers.com
jbi@hearnlawyers.com
*(Counsel for Plaintiffs)*

Steven R. Kraft
Craig Stacey
MOORE ELIA & KRAFT, LLP
steve@melawfirm.net
craig@melawfirm.net
*(Counsel for Henry Atencio and Rona Siegert)*

By: */s/ Dylan A. Eaton*
     Dylan A. Eaton