# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP A. TURNEY, an individual; BILLY RAY BARTLETT, an individual; MICHAEL A. MCCALL, an individual; REUBEN J. CORTES, an individual; and KENNETH MICHAEL WORKMAN, an individual; ADAM BODENBACH, an individual; THOMAS BROWN, an individual; PAUL CONDON, an individual; TYRONE EDMO, an individual; WILLIAM ELSTON, an individual; JOSHUA ERICSON, an individual; ROBERT FERGUSON, an individual; BRIAN FIORI, an individual; JAMES FLEMING, an individual; CHRISTOPHER HAND, an individual; THOMAS HOOLEY, an individual; JESSE JAGGERS, an individual; NATHAN JENSON, an individual; ROBERT JOHNSON, an individual; JOSHUA KING, an individual; SAMUAL KLEINT, an individual; JORGE LOPEZ, an individual; TYREL MCKNIGHT, an individual; DEVON MERRITT, an individual; JOSH METTIE, an individual; KANAY MUBITA, an individual; TIMOTHY MULLIGAN, an individual; ZACHARY NEWSOM, an individual; SAMUEL NEYHART, an individual; MICHAEL RAEL, an individual; MARIO RENDON, an individual; RALPH | Case No. 1:18-CV-00001-BLW<br><br>**PRIVATE SETTLEMENT AGREEMENT AND RELEASE** |

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 1**

REYES, an individual; TYLER )
ROBBINS, an individual; DANIEL )
RODGERS, an individual; JESSIE )
SMITH, an individual; KENNETH )
SMITH, an individual; WILLIAM )
SNOWDEN, an individual; )
ROBERT TAYLOR, an individual; )
GEORGE THORNOCK, an )
individual; ROGER VENTURA, an )
individual; NATHAN WERLEY, an )
individual; JORGE BAIRD, an )
individual; JEFFREY BAKER, an )
individual; CARL BETANCOURT, )
an individual; KIRK BIRKINBINE, )
an individual; EDWARD BOYLAN, )
an individual; TY BRADFORD, an )
individual; CHRIS BRODHECKER, )
an individual; MIKEL )
BRUNDAGE, an individual; )
WESLEY BRYANT, an individual; )
DUSTIN BYRD, an individual; )
NEAL CAPLINGER, an individual; )
NICHOLAS CASWELL, an )
individual; JONATHAN )
CHRISTIAN, an individual; )
VICTOR CONTRERAS, an )
individual; NICHOLAS COXEY, an )
individual; JAMES CRUMBLE, an )
individual; ROBERT DAVIS, an )
individual; MIRZA DELIC, an )
individual; JAMES DETWILER, an )
individual; JEFFREY EPPERSON, )
an individual; AARON EVANS, an )
individual; SONNY FARROW, an )
individual; ORLANDO )
FIGUEROA, an individual; )
TOMMY FITE, an individual; )
PHILLIP FLIEGER, an individual; )
ARTURO D. FLORES, an )
individual; ARTURO G. FLORES, )

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 2**

an individual; MICHAEL FRIEL, an        )
individual; WADE FUGER, an              )
individual; TONY LEE GAY, an            )
individual; DUSTIN GOLDEN, an           )
individual; JUSTIN GONZALES, an         )
individual; BRADLEY                     )
GOODRICH, an individual;                )
GEORGE DANIEL GOODRICK,                 )
an individual; HILARIO GUEL, an         )
individual; ARTHUR HOAK, an             )
individual; GARY HOLDAWAY,              )
an individual; BRANDON                  )
HUFFMAN, an individual; ROBEN           )
HULL, an individual; PETER              )
JAIME , an individual; JAMIE            )
LAKE, an individual; JOHN LEE,          )
an individual; JOSEPH                   )
LEITERMAN, an                           )
individual; KRISTOPHER LEWIS,           )
an individual; BARTLETT                 )
LIVINGSTON, an individual;              )
PETER LOPEZ, an individual;             )
MICHAEL LUJAN, an individual;           )
JAMES MARTINEAU, an                     )
individual; MICHAEL MCBRIDE,            )
an individual; DANIEL MORGAN,           )
an individual; JASON NELSON, an         )
individual; AUSTIN NEUBAUER,            )
an individual; NORMAN ORTIZ-            )
PEREZ, an individual; JUSTIN            )
PARDUN, an individual; STEVEN           )
PARKER, an individual; MARCUS           )
PETERSON, an individual; KEITH          )
POWELL, an individual;                  )
ANTHONY PRICHARD, an                    )
individual; DAVID PRIETO, an            )
individual; JAVIER RAMIREZ, an          )
individual; TRAVIS RAY, an              )
individual; MATTHEW                     )
RHODEHOUSE, an individual;              )

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 3**

PETE ROBERTS, an individual;                    )
DANIEL SCHMIDT, an individual;                  )
TANNER STERLING, an                             )
individual; BRANDON TIMPSON,                    )
an individual; JESSE TRUESDALE,                 )
an individual; EARLE VINE, an                   )
individual; LANCE WARD, an                      )
individual; KENDALL WELLARD,                    )
an individual; JERRY WHITE, an                  )
individual; JOSEPH WILLIAMS, an                 )
individual; ANDREW WILSON, an                   )
individual; TRACY WORKMAN,                      )
an individual; KELLY                            )
ZAVALNEY, an individual; KODY                   )
BUTCHER, an individual; DANA                    )
DADE, an individual; MASON                      )
DEAN (ADREE) EDMO, an                           )
individual; KENNETH FULLER, an                  )
individual; DAVID HOSKINS, an                   )
individual; ROCKY NELSON, an                    )
individual; JOHN ODLE, an                       )
individual; KELLY SANTAS, an                    )
individual; and CHAD WAHL, an                   )
individual,                                     )
                                                )
          Plaintiffs,                           )
                                                )
vs.                                             )
                                                )
HENRY ATENCIO,                                  )
in his official capacity; RONA                  )
SIEGERT, in her official capacity;              )
JOHN G. MIGLIORI, in his                        )
individual and official capacity;               )
MURRAY F. YOUNG, in his                         )
individual and official capacity;               )
APRIL C. DAWSON, in her                         )
individual and official capacity; JOHN          )
and JANE DOES A-Z, in their                     )
individual and official capacities; and         )

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 4**

CONFIDENTIAL

CORIZON, INC. and its employees,        )
agents and representatives in their     )
individual and official capacities,     )
                                        )
          Defendants.                   )
_____ )

## 1. DEFINITIONS

1.1.   "Action" shall refer to the above-captioned lawsuit filed in the United States District Court of Idaho, *Turney, et al., v. Atencio, et al.*, Case Number: 1:18-CV-00001-BLW.

1.2.   "Agreement" shall refer to this Private Settlement Agreement and Release and all of the definitions, recitals, and terms and conditions contained herein.

1.3.   "Chronic HCV" shall refer to the infection of an inmate who has a detectable HCV infection for a period of six (6) months.

1.4.   "Class Counsel" shall refer to Richard A. Hearn and John B. Ingelstrom of Hearn Law, PLC, and any appropriately substituted attorney, who are the attorneys for the Individual Plaintiffs, Class Members, and the class to be certified by the Court for settlement purposes pursuant to FRCP 23(e).

1.5.   "Class Members" shall refer to all current and future inmates in IDOC custody who have not been diagnosed with HCV; all current and future inmates in IDOC custody who have or will be diagnosed with HCV; and all Individual Plaintiffs who have been treated with DAA Treatment. For purposes of this Agreement, Class Members shall include those persons comprising the class under FRCP 23(e) that the Parties agree to have the Court certify as a class for settlement purposes only.

1.6.   "Contractor" shall refer to any legal entity or person providing correctional healthcare by contract to IDOC inmates.

1.7.   "Corizon Defendants" shall refer to the entity Corizon, Inc., and John G. Migliori, Murray F. Young, and April C. Dawson, in their official capacities, named as defendants in the Operative Complaint in this Action.

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 5**

1.8.   "Court" shall refer to the United States District Court for the District of Idaho in which the Action is filed and the presiding district judge who will be asked to certify a class inclusive of the Class Members, conduct the Fairness Hearing, and provide Final Approval of this Agreement.

1.9.   "Court of Enforcement" shall refer to the Fourth Judicial District of the State of Idaho, in and for the County of Ada.

1.10.   "DAA Medications" shall refer to the class of medications known as Direct-Acting Antivirals (DAA) used to treat HCV as of the Effective Date of this Agreement or approved for medical uses thereafter.

1.11.   "DAA Treatment" shall refer to the process of evaluating inmates with HCV, routine monitoring and testing of inmates with HCV, procurement of DAA Medications, prescribing and administering DAA Medications to inmates with Chronic HCV, and post-DAA Medication monitoring.

1.12.   "Defendants" shall refer collectively to the IDOC Defendants and Corizon Defendants.

1.13.   "Effective Date" shall mean the date upon which the Court in this Action gives Final Approval to the Agreement.

1.14.   "Fairness Hearing" shall refer to the hearing before the Court pursuant to FRCP 23(e)(2) where the Parties will request that the Court enter an Order approving this Agreement as fair, reasonable, and adequate.

1.15.   "Final Approval" shall refer to the Court's order granting final approval of this Agreement consistent with FRCP 23(e)(2) following the Fairness Hearing.

1.16.   "FRCP" shall refer to the current version of the Federal Rules of Civil Procedure.

1.17.   "HCV" shall refer to the viral infection known as the Hepatitis C virus.

1.18.   "IDOC" shall refer to the Idaho Department of Correction, a department of the State of Idaho.

1.19.   "IDOC Counsel" shall refer to the State of Idaho Deputy Attorney General appointed as the Lead Deputy Attorney General for IDOC. At the time of

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 6**

the execution of this Agreement, the Lead Deputy Attorney General for IDOC is Mark Kubinski.

1.20. "IDOC Defendants" shall refer to Josh Tewalt, Director of IDOC, substituted for former IDOC Director Henry Atencio, and Rona Siegert, IDOC's Health Services Director, in their official capacities, as well as their predecessors and any successors, whom shall be automatically substituted consistent with Rule 25(d) of the Federal Rules of Civil Procedure (FRCP).

1.21. "Individual Plaintiffs" shall refer to all of those individuals identified by name as plaintiffs in the Operative Complaint in this Action.

1.22. "Notice" shall refer to the notice to the class and Class Members of this Agreement prior to the Fairness Hearing.

1.23. "Operative Complaint" shall refer to the September 25, 2019, *Second Amended and Supplemental Complaint* filed in this Action and bearing Docket No. 111.

1.24. "Opt-Out Testing" shall refer to the policy and procedure implemented during the intake process for inmates entering the IDOC system to offer initial testing for the presence of HCV antibody and reflexive RNA HCV viral load; all inmates shall be tested for HCV unless the inmate signs a form refusing testing.

1.25. "Party" and "Parties" shall refer to and include the individuals, officers, and entities defined herein as IDOC Defendants, Corizon Defendants, Individual Plaintiffs, and Class Members, either collectively or each of them individually.

1.26. "Plaintiffs" shall refer to each of those Individual Plaintiffs as well as all current and future Class Members.

## 2. RECITALS

2.1. WHEREAS, Individual Plaintiffs filed this Action, on behalf of themselves and other similarly situated inmates who are currently and/or will in the future be in the custody of the IDOC, alleging that Defendants failed to provide universal and timely Opt-Out Testing and screening of inmates infected with HCV and failed to provide universal and timely treatment to HCV-positive inmates with DAA Treatment.

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 7**

2.2.    WHEREAS, the Parties, without conceding any infirmity in their claims or defenses, have engaged in extensive, arms-length settlement negotiations to resolve the claims raised in this Action, recognizing that it is in their mutual best interest to fully resolve and finally settle past, existing, and future claims for injunctive, declaratory, and equitable relief, as well as certain future claims for damages, between the Parties related to diagnosis, testing, evaluation, management, monitoring, education, and treatment of inmates with HCV.

2.3.    WHEREAS, the Parties are entering into this Agreement solely and exclusively for settlement purposes and nothing contained in this Agreement shall be construed as an admission or concession of any violation of law or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Defendants expressly deny. Defendants do not admit to any wrongdoing that was or could have been alleged by the Plaintiffs and, in fact, Defendants (collectively and individually) deny any and all liability of any kind to Plaintiffs. Plaintiffs do not admit to any defense, either legal or factual, that was or could have been alleged by the Defendants. No part of this Agreement, including any exhibits, statements, or commitments, shall be construed as an admission or evidence of any liability, fault, or wrongdoing by Defendants. Except in any enforcement action filed in the Court of Enforcement, this Agreement shall not be admitted into evidence in any litigation other than this Action for the sole and exclusive purpose of settling this Action under FRCP 23(e). It is the intent of the Parties that this Agreement shall not create a private cause of action or confer any right to any third party for violation of any federal or state statute, law, rule, or regulation.

2.4.    WHEREAS, for settlement purposes only, the Parties agree that a class be certified pursuant to FRCP 23(b)(2) for settlement purposes only and that this Agreement be noticed and approved as to the Class Members in accordance with FRCP 23(e). It is neither the intent of the Parties, nor do the Parties agree, that the Court may certify a class for any other reason other than to obtain Final Approval of this Agreement pursuant to FRCP 23(e). Further, Defendants expressly reserve all defenses and arguments that it is inappropriate to certify a class for any other purpose, including but not limited to, certification of a class for monetary damages.

2.5.    WHEREAS, the Parties reached the terms set forth below expressly based upon the agreement that this Agreement shall be deemed a private settlement agreement in accordance with 18 U.S.C. § 3626(c)(2) and not a consent decree, consent judgment, or other agreement whereby the Court retains jurisdiction to interpret, modify, or enforce the Agreement. Moreover, the Parties do not consent to the Court retaining jurisdiction and reach the terms and conditions in this Agreement

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 8**

expressly based upon the fact that the Court in approving this Agreement, shall not make any findings required by 18 U.S.C. § 3626 and, in the event the Court renders any such findings, this Agreement shall be null and void and unenforceable as a matter of law. In order to preserve the nature of this Agreement as a "private settlement agreement," the Parties further agree that, barring reinstatement of this Action pursuant to the terms of this Agreement, or the reversal or remand on appeal of the Court's Final Approval of this Agreement, this Court's jurisdiction will end with the approval of this Agreement and any proceedings pertaining to enforcement of this Agreement shall occur in the Court of Enforcement.

## 3. TERMS AND CONDITIONS

3.1.   <u>Opt-Out Testing at Intake</u>: Defendants agree that at intake into an IDOC Reception and Diagnostic Unit ("RDU"), all inmates without a prior documented positive HCV RNA viral load test through IDOC shall be offered a HCV antibody test and, if the HCV antibody test is positive, a reflexive HCV RNA viral load test on an Opt-Out Testing basis. Contractor will provide all inmates at intake with a copy of the "Hepatitis C – General Information" form published by the Centers for Disease Control and Prevention, a copy of which is attached hereto as **Exhibit A**. In addition to Exhibit A, the Contractor is permitted to provide additional educational information regarding HCV to inmates at intake.

3.2.   <u>Post-Intake Testing</u>: Defendants agree that inmates housed outside of an RDU without a prior documented positive HCV antibody test through IDOC will be tested within sixty (60) days upon written request submitted by the inmate on a Health Services Request form. IDOC Defendants shall provide notice of inmates' testing rights in the intake packet and by way of written notice posted in the facility. For a period of one (1) year from the Effective Date of this Agreement, inmates who have not yet been tested for HCV and have not submitted a written request on a Health Services Request form, shall be offered testing on an Opt-Out Testing basis during their first annual tuberculosis-screening visit following the Effective Date of this Agreement.

3.3.   <u>Chronic Disease Program</u>: Defendants agree that inmates who are diagnosed with HCV will be enrolled in the Chronic Disease Program ("CDP") or its equivalent. IDOC will require that all inmates enrolled by Contractor in the CDP or its equivalent, before or while receiving DAA Treatment, will be evaluated on a regular basis to monitor health conditions related to HCV as deemed medically appropriate by Contractor's health providers. IDOC will also require the Contractor to evaluate, follow and treat inmates in a manner consistent with the current

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 9**

treatment recommendations established by the Federal Bureau of Prisons (FBOP) as may be deemed medically appropriate by the Contractor's health providers.

3.4.   Hep C Log: While this Agreement is in effect, IDOC shall provide a written log to Class Counsel on a quarterly basis that includes the name, IDOC number, priority level, most recent APRI or F-Score, date of any subsequent determinations or assignments of APRI or F-Score, and date treatment with DAA Medications was completed for IDOC inmates with HCV.[1] The log shall also identify those inmates who refuse DAA Treatment. The log shall be provided to Class Counsel no later than January 15, April 15, July 15, and October 15 of each year and shall contain information current as of the last day of the preceding month. Each iteration of the log shall be marked "Confidential – Attorneys' Eyes Only" and Class Counsel shall maintain the confidentiality of the log pursuant to the Qualified Protective Order (Dkt. 107), entered in the Action on June 21, 2019. A Party is permitted to use the Hep C Log as is necessary in an action before the Court of Enforcement, but only so long as the individually identifiable health information of any Plaintiff, inmate, or other person protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) remains confidential and protected from disclosure to any person other than the Court and counsel of record. Consistent with the foregoing, the Hep C Log may be filed under seal with the Court of Enforcement and/or filed publicly with all redactions necessary to maintain the confidentiality of individuals' identifiable health information.

3.5.   Eligibility and Prioritization for DAA Treatment: Defendants agree that no inmate with Chronic HCV will be deemed ineligible to receive DAA Treatment based solely upon the inmate's fibrosis score and/or priority level. Notwithstanding the foregoing, for those inmates with Chronic HCV who are eligible for DAA Treatment, the limited available treatment resources will be prioritized among inmates based upon medical need as determined by medical judgment of the Contractor's health providers. Eligibility and prioritization of DAA Treatment by the Contractor will be in a manner that is consistent with the August 2018 version of the FBOP's Clinical Guidance for the Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection, a copy of which is attached hereto as **Exhibit B**. Notwithstanding the foregoing, the Contractor will be permitted to consult future treatment recommendations established by nationally-recognized authorities, such

---

[1] Neither Corizon Defendants, IDOC Defendants nor any Contractor shall be obligated to provide the date of any APRI Score or F-Score assigned to or calculated for any inmate, or the date any inmate completed treatment with DAA Medications, prior to the date of production of the first Hep C Log produced to Class Counsel pursuant to section 3.4 of the Agreement.

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 10**

as the FBOP, The National Commission on Correctional Health Care, the National Institute of Health, the CDC and the AASLD/IDSA, and/or others, as deemed medically appropriate by the Contractor's health providers.

3.6.    <u>Expenditures and Treatment Obligations</u>: IDOC Defendants agree to spend the following amounts exclusively for the purpose of providing DAA Treatment to eligible inmates with Chronic HCV:

    3.6.1.    $4.35 million for Fiscal Year (FY) 2021 and with the obligation to begin DAA Treatment for a minimum of 150 inmates during FY2021;

    3.6.2.    $5.1 million for FY2022 and with the obligation to begin DAA Treatment to a minimum of 185 inmates during FY2022;

    3.6.3.    $6.6 million for FY2023 with the obligation to begin DAA Treatment for a minimum of 240 inmates during FY2023.

    3.6.4.    $6.6 million for FY2024 with no obligation to begin DAA Treatment for a minimum number of inmates during FY2024.

    3.6.5.    $6.6 million for FY2025 with no obligation to begin DAA Treatment for a minimum number of inmates during FY2025.

    3.6.6.    IDOC Defendants agree to continue the obligations set forth in paragraphs 3.1, 3.2, 3.3, 3.4, 3.5 and 3.7 in this Agreement during FY2026, FY2027, and FY2028, provided that the IDOC Defendants are not obligated to spend any specific amount of money for the purpose of providing DAA Treatment or to begin DAA Treatment for any minimum number of inmates during FY2026, FY2027, or FY2028.

    3.6.7.    Provided, however, that nothing in this Agreement will prohibit IDOC Defendants from, in the IDOC Director's sole discretion, increasing these committed expenditures during any fiscal year, and/or providing DAA Treatment to a number of inmates greater than the stated minimum obligations.

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 11**

3.6.8.   Provided further, in FY 2021, FY 2022, and FY 2023, if IDOC Defendants fail to spend the amounts set forth herein by more than ten percent (10%) in any such fiscal year, or fail to begin DAA Treatment of the minimum number of inmates set forth herein in any such fiscal year, such failure or failures shall be considered a material breach of this Agreement and its subparts and governed exclusively by the provisions of paragraph 3.21 of this Agreement and its subparts, and shall not cause or permit this Agreement to be terminated or the Action to be reinstated in the Court. If the IDOC Defendants fail to spend the amounts set forth in subparts 3.6.4 or 3.6.5 of this paragraph 3.6 due to an insufficient number of inmates who are eligible to receive DAA treatment during FY 2024 or FY2025, such failure or failures shall be excused and shall not be a material breach of this Agreement.

3.6.9.   IDOC shall disclose to Class Counsel the total amount of money IDOC spent on DAA Treatment, and the total number of inmates who began DAA Treatment, during FY2021, FY2022, FY2023, FY2024, and FY2025 no later than thirty (30) days after the end of each respective fiscal year.

3.7.   <u>Education for Inmates at Release</u>: Inmates with Chronic HCV who are released from IDOC custody and who have not received DAA Treatment shall be provided during the release process with written documentation that (1) informs the inmate of the progression of an HCV infection and potential health complications; (2) informs the inmate where they may be treated in the community and options, if any, for payment mechanism (for example, where Medicaid, Veterans Administration, Medicare or private insurance may be available to pay for that inmate's treatment); (3) recommends that inmates make an appointment with a doctor or clinic in the community to discuss their HCV infection and treatment options; (4) recommends the inmate obtain health insurance and provides information on how to enroll in Idaho Medicaid, if the inmate is not already enrolled in Idaho Medicaid; (5) recommends against unhealthy lifestyles that can increase the progression of HCV; and (6) identifies tips for how inmates can prevent the spread of HCV in the community. Inmates will also be informed that IDOC will provide their medical doctors and clinics in the community with their prison medical file upon execution of a valid written request for release of records.

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 12**

3.8.   Attorney Fees and Costs:   In connection with this Agreement, the Parties agree that Class Counsel shall recover fair and reasonable attorney fees as determined by the Court from the common fund to be created by the expenditures required in Paragraphs 3.6.1 through 3.6.5 of this Agreement.  The Parties further agree that Class Counsel will recover their reasonable costs as of the date of the Effective Date of the Agreement and attorney fees of $100,000.00 on behalf of Defendants, paid by the Corizon Defendants due and payable within thirty (30) days from the Effective Date of the Agreement.

3.9.   Acknowledgement of Consideration: Plaintiffs acknowledge the receipt of good and sufficient consideration from Defendants for the terms and conditions set forth in this Agreement. Plaintiffs expressly release any claim or action upon which they may seek to overturn this Agreement on the grounds of insufficiency of consideration in whole, or in part, as to any Party, regardless of the source of the consideration.

3.10.   Process for Final Approval: The Parties recognize that this Agreement shall be subject to Final Approval by the Court pursuant to FRCP 23(e), and hereby agree to the following in order to obtain such Final Approval:

3.10.1. The Parties shall at all times during the Final Approval process cooperate, exercise good faith, and take reasonable efforts necessary to present this Agreement to the Court and obtain the Court's Final Approval.

3.10.2. As soon as practicable following the execution of this Agreement by the Parties, Class Counsel shall take reasonable efforts to obtain Final Approval of this Agreement including, but not limited to, having a class of the Class Members certified for purposes of approving and enforcing this Agreement; having the Court appoint Class Counsel as counsel for the Class Members; having the Court grant an order preliminarily approving this Agreement for the purpose of disseminating notice to Class Members; disseminating notice of this Agreement to the Class Members; and scheduling a Fairness Hearing before the Court.

3.10.3. If the Court does not grant Final Approval of this Agreement as expressly written and intended by the Parties, or if an appeals court reverses the Court's Final Approval, then this Agreement shall be null and void and of no force and effect, and nothing shall be

deemed to prejudice the position of any Party with respect to the Action or otherwise, and neither the existence of this Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be admissible in evidence, referred to for any purpose in this Action or in any other litigation or proceeding, or construed as an admission, presumption, or concession by any Party of any liability or for the truth of any of the allegations in this Action.

3.10.4. The Parties do not consent to the Court modifying any final terms of this Agreement subsequent to Final Approval. In the event the Court, after Final Approval, modifies any express term or condition, or enters any order that materially alters the final terms of this Agreement, then at the discretion of either Party, the Agreement shall be rendered null and void; in that event, the Plaintiffs will be entitled to reinstate the Action or may elect to have the Parties return to the mediation process, and then reinstate the Action if mediation is unsuccessful.

3.11.  Dismissal of Defendants: Plaintiffs acknowledge that this Agreement shall resolve each and every issue and claim raised by them in this Action against any and all of the IDOC Defendants. Plaintiffs shall dismiss all claims contained in the Operative Complaint in this Action against the IDOC Defendants *with prejudice subject to reinstatement* consistent with the terms of this Agreement. Plaintiffs shall dismiss all claims for injunctive or declaratory relief contained in the Operative Complaint in this Action against the Corizon Defendants *with prejudice subject to reinstatement* consistent with the terms of this Agreement. Plaintiffs shall within fourteen (14) days of the Effective Date of this Agreement file with the Court the attached *Stipulation for Dismissal with Prejudice* and proposed *Order of Dismissal with Prejudice* accomplishing the dismissal of all claims against IDOC Defendants *with prejudice subject to reinstatement* consistent with the terms of this Agreement and the dismissal of the injunctive and declaratory relief claims against the Corizon Defendants *with prejudice subject to reinstatement* consistent with the terms of this Agreement. This Agreement does not apply to Plaintiffs' claims for monetary damages against Corizon Defendants stated in the Operative Complaint and any dismissal of those claims must be set forth in a separate agreement.

3.12.  Release of Claims Against Defendants: Subject to the possible reinstatement of this Action pursuant to this Agreement and any enforcement action

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 14**

brought in the Court of Enforcement, Plaintiffs release and forever discharge as follows:

      3.12.1. Plaintiffs release and forever discharge IDOC Defendants, the State of Idaho, and each and every former, current, and future officer, director, employee or agent of the State of Idaho and IDOC, from any and all past and present causes of action, liabilities and claims for equitable, declaratory and injunctive relief, including associated expenses, costs and attorney fees, (excluding any claims for damages and any claims for costs and attorney fees arising from any damages claim) whether arising under federal or state law related to the diagnosis, testing, evaluation, management, monitoring, education, or treatment of inmates with HCV, including, but not limited to, treatment with DAA Medications, whether such claims are now known or come to be known in the future.

      3.12.2. Plaintiffs release and forever discharge the Corizon Defendants and each and every former or current officer, director, employee, or agent of the Corizon Defendants, from any and all past and present claims, causes of action, liabilities, expenses, costs, attorney fees, and declaratory relief, injunctive relief, and costs (*excluding any claims for damages and any claims for attorney fees and expenses arising from any damages claim*) whether arising under federal or state law related to the diagnosis, testing, evaluation, management, monitoring, education, and treatment of inmates with HCV, including, but not limited to, treatment with DAA Medications, whether such claims are now known or come to be known in the future.

      3.12.3. Plaintiffs release and forever discharge the IDOC Defendants, the State of Idaho, and each and every former, current, and future officer, director, employee or agent of the State of Idaho and IDOC, the Corizon Defendants and each and every former, current, and future officer, director, employee, or agent of the Corizon Defendants, and any future Contractor, and each and every future officer, director, employee or agent of the Contractor from any and all future claims, causes of action, liabilities, expenses, costs, attorney fees, and damages, including claims for monetary damages, declaratory relief, injunctive relief, and costs whether

arising under federal or state law, which are based upon or arise from action and conduct required by and undertaken in compliance with the obligations set forth in this Agreement, and which may arise out of conduct, circumstances and/or events which occur after the Effective Date of this Agreement but prior to July 1, 2028, related to the diagnosis, testing, evaluation, management, monitoring, education, or treatment of inmates with HCV, including treatment with DAA Medications, whether such claims are now known or come to be known in the future. Specifically excluded from operation of the release provided in this paragraph are any and all claims for monetary damages against the IDOC Defendants and the Corizon Defendants that have been made or that could have been made which arise out of conduct, circumstances and/or events which occurred prior to the effective date of this Agreement, and which are related to the diagnosis, testing, evaluation, management, monitoring, education, or treatment of inmates with HCV, including treatment with DAA Medications, whether such claims are now known or come to be known in the future.

3.12.4. This release shall be binding on all Plaintiffs and their agents, representatives, heirs, beneficiaries, assigns, and subrogees.

3.13.  Performance Subject to Approvals and Legislative Appropriations: The Parties acknowledge and agree that the IDOC Defendants' performance under this Agreement is specifically pre-conditioned upon and subject to the following:

3.13.1. *Division of Purchasing Approval.* The IDOC Defendants' responsibilities under this Agreement are pre-conditioned upon and subject to IDOC's procurement of medical services required by this Agreement, pursuant to the Idaho Procurement Act, title 67, chapter 92, Idaho Code (the "Act"). IDOC's performance under this Agreement is subject to and conditioned upon receipt of any and all approvals that may be required from the State of Idaho's Department of Administration, Division of Purchasing ("DOP").

3.13.2. *Legislative Appropriations.* The Parties understand and acknowledge that all medical services required by this Agreement shall be paid by the State of Idaho only from appropriations of funding made by the State of Idaho Legislature ("Idaho

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 16**

Legislature"), and that the Idaho Legislature is under no legal obligation to make appropriations and has not yet made any appropriations for purposes of this Agreement. The IDOC Defendants' responsibilities under this Agreement are pre-conditioned upon, and subject to, appropriations by the Idaho Legislature for the payment of medical services set forth in this Agreement. The IDOC Director shall submit a budget request for funding by the Idaho Legislature necessary to begin implementing the terms of this Agreement in FY2021.

3.14. <u>Termination of Agreement Upon Failure of Approvals and Appropriations:</u>

3.14.1. In the event that IDOC Defendants cannot perform the terms of this Agreement contained in paragraph 3.6 and its subparts due to the failure to obtain the necessary approvals and appropriations, or in the event the Idaho Legislature requires a return or give-back of funds, or if the Governor of the State of Idaho mandates reversions, cuts or holdbacks in spending, or if funds are not otherwise budgeted or available to comply with the terms and conditions of this Agreement, or if there is an emergency event beyond the Defendants' control including, but not limited to, acts of God, war, civil disturbances, natural disasters, epidemics, pandemics, or emergency declarations by the local, state, or national government, the termination of the Agreement shall take effect immediately upon the IDOC Director providing written notice to Class Counsel of the termination of this Agreement.

3.14.2. The IDOC Director shall notify Class Counsel in writing at least sixty (60) days prior to the beginning of FY2022, FY2023, FY2024, and FY2025 if the IDOC Defendants are informed that IDOC will be unable to secure the necessary approvals and appropriations to comply with the terms and conditions of this Agreement contained in paragraph 3.6 and its subparts for such next fiscal year. Upon receipt of such notice, Plaintiffs, by and through Class Counsel, shall have the option to terminate this Agreement, which shall take effect thirty (30) days after Class Counsel provides written notice to IDOC Counsel that Plaintiffs have chosen to terminate this Agreement or, if Class Counsel decides at their discretion to return

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 17**

to the mediation process, then thirty (30) days after Class Counsel determines that subsequent mediation efforts are unsuccessful.

3.14.3. In the event this Agreement is terminated as contemplated in this paragraph and its subparts, then all rights and liabilities of the Parties under this Agreement shall cease and neither the IDOC Defendants, IDOC, nor the State of Idaho shall be liable for any penalty, expense, or liability, or for general, special, incidental, consequential or other damages resulting therefrom.

3.14.4. Only upon termination of the Agreement as set forth in this paragraph 3.14 and its subparts may Plaintiffs by and through Class Counsel reinstate this Action in the Court.

3.15. <u>No Admission of Liability</u>: It is expressly understood and agreed that this Agreement is in full and final settlement of the disputed claims for equitable, injunctive and declaratory relief stated in the Operative Complaint, and that any injuries, violations, or damages and the legal liability therefore are disputed and denied, and that this Agreement is based solely on the economic consideration of conservation of public money, and is not to be construed in any way as an admission by Defendants of any liability or wrongdoing whatsoever. Defendants specifically disclaim any liability, violation, injury, damage, or wrongdoing whatsoever on the part of themselves, the State of Idaho, IDOC, or any former or current officer, director, agent, or employee of the State or IDOC. Meanwhile, Plaintiffs continue to maintain that the Defendants in this Action provided unconstitutional and inadequate treatment of inmates with Chronic HCV. Further, nothing in this Agreement may be construed as an admission or finding that the consideration provided in this Agreement is necessary to correct the violation of a federal right. The Parties expressly agree that no Party is a prevailing Party in this Action with regard to an award of attorney fees or for any other purpose. The Court shall not retain jurisdiction over the enforcement of this Agreement and shall not make any findings pursuant to 18 U.S.C. § 3626(a).

3.16. <u>No Basis for Precedent</u>: This Agreement shall not be relied upon as precedent in any future claim or legal proceeding in which the State of Idaho, Defendants, IDOC, and/or any IDOC officer, employee, or agent is named as a party.

3.17. <u>Integration</u>: This Agreement constitutes the entire and exclusive agreement between the Parties and supersedes any and all prior agreements, commitments, oral or written exchanges, offers/counteroffers, and negotiations.

There are no promises, representations, agreements, conditions, or understandings that are not fully expressed and incorporated herein. The terms and conditions of this Agreement are contractual and not a mere recital. Further, nothing in this Agreement shall be construed as a consent decree.

3.18. <u>Governing Law</u>: This Agreement shall be deemed to be made and entered into in the State of Idaho and shall in all respects be interpreted, enforced, and governed under the laws of the State of Idaho.

3.19. <u>Severability</u>: Should any provision, term, or condition of this Agreement be declared or be determined by the Court of Enforcement to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

3.20. <u>Modifications</u>: This Agreement may not be amended, modified, altered, changed, rescinded, or supplemented in any manner except by agreement in writing signed by the attorneys for the Parties and approved by the Court.

3.21. <u>Enforcement Upon Material Breach</u>: Unless otherwise provided for in this Agreement, the Parties agree to the following for purposes of providing notice and enforcement of an alleged material breach of this Agreement by Defendants:

> 3.21.1. Nothing contained in this Agreement is intended or shall be construed as evidence of any intention to confer any rights or remedies upon any person other than the Parties hereto.

> 3.21.2. The Parties agree that any minor or incidental breach or delay in implementation of a term or condition of this Agreement shall not constitute a material breach.

> 3.21.3. Upon an alleged material breach of this Agreement by Defendants, Plaintiffs, through Class Counsel only, shall provide IDOC Counsel, in writing, the specific reasons and grounds for such belief, including an identification of the specific provision of which the Defendants are alleged to be in material breach.

> 3.21.4. IDOC Defendants shall then have thirty (30) days from receipt of the written notice to respond to Class Counsels' written statement.

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 19**

During the thirty-(30) day period, neither Plaintiffs nor Class Counsel shall take any action to enforce the Agreement.

3.21.5. If the alleged material breach is not resolved by or in connection with IDOC Defendants' response, or no response is provided within the thirty- (30) day period for such a response, then Plaintiffs, through Class Counsel only, may file an action in the Court for Enforcement, which the Parties agree shall be the only court with jurisdiction to enforce the Agreement.

3.21.6. If the Court of Enforcement determines that there has been material breach by Defendants of a term or condition of this Agreement, the Court of Enforcement may enter an order consistent with its equitable powers to achieve material compliance of such term or condition. No Party, including any future Class Members, to this Agreement shall be entitled to claim or receive an award of damages as a result of a breach of any term or condition.

3.21.7. In any action brought in the Court of Enforcement, the presiding judge may award reasonable attorney fees to the prevailing party or parties only when the judge finds that the non-prevailing party or parties brought, pursued, or defended the action frivolously, unreasonably, or without foundation.

3.21.8. At no point following Final Approval, including during any proceeding to enforce a material breach, may the Parties and/or the Court of Enforcement invite, permit, or otherwise inquire of the Court as to any matter of enforcement or interpretation of this Agreement.

3.21.9. Remedies for any failure of approvals or appropriations shall be governed by paragraph 3.13 of this Agreement rather than this paragraph, 3.21, and its subparts. No alleged or determined material breach may cause or permit a termination of this Agreement or reinstatement of the Action.

   3.22.   <u>Term and Expiration of Agreement</u>: The terms and conditions of this Agreement shall expire on June 30, 2028. Plaintiffs shall only be entitled to the benefits of this Agreement for the duration of the Agreement.

3.23. <u>Headings and Caption</u>: The headings in this Agreement are for the convenience of the Parties and Court and shall not be used in construing or interpreting this Agreement. Additionally, inclusion of the caption used in the Action is for convenience of the Parties and Court only and shall not be construed as an intention that the Agreement is to be a consent decree, consent judgment, or other agreement whereby the Court retains jurisdiction to interpret, modify, or enforce the Agreement.

3.24. <u>Execution in Counterparts</u>: This Agreement may be executed in counterparts, or with signatures obtained via facsimile or electronic mail transmission, each of which shall have full force and effect upon execution by all Parties to this Agreement, but which together shall constitute a single instrument.

3.25. <u>Acknowledgements</u>: This Agreement is the result of an arm's-length negotiation. Each Party represents and acknowledges that each Party is, and has been, represented by its own counsel. Each Party further represents and acknowledges that, in executing this Agreement, no Party relies or has relied upon any representations or statements made by any other Party or its counsel other than the promises and representations set forth in this Agreement. Since all Parties contributed substantially, materially, and cooperatively in drafting this Agreement, it shall not be more strictly construed against one Party than any other.

Date: 08/03/2021 _____

Josh Tewalt
On behalf of IDOC Defendants

Date: 8/19/21 _____

Richard Hearn
On behalf of Plaintiffs

Date: 8/19/21 _____

John Ingelstrom
On behalf of Plaintiffs

Date: 8/18/21 _____

Scott King
On behalf of Corizon, LLC

**PRIVATE SETTLEMENT AGREEMENT AND RELEASE – pg. 21**