UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| PHILIP A. TURNEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY ATENCIO, et al.,<br><br>Defendants. | Case No. 1:18-cv-00001-BLW<br><br>**ORDER AFTER FAIRNESS HEARING** |

Pending before the Court in this prisoner class action matter are the Joint Motion for Final Approval of Class Action Settlement filed by the Class Representative Plaintiff and Defendants, along with several objections of class members. Dkts. 152, 136-146, & 148-151, 159. The Court held a video-conference hearing on May 10, 2022, at 2:00 p.m. Counsel for the parties, counsel for inmate Barry Searcy (the former *Balla*[1] attorneys), the plaintiff class representative, one of the plaintiffs who is now released from prison, and several inmates appeared via videoconferencing.

Having reviewed the record, the proposed settlement agreement, the objections of the parties, the briefing in this matter, and having considered the oral argument of the

---

[1] *See Balla v. Idaho Bd. of Corr.*, No. 1:81-cv-01165-BLW (D. Idaho May 30, 2022), *aff'd*, 29 F.4th 1019 (9th Cir. 2022).

**ORDER AFTER FAIRNESS HEARING - 1**

parties, the Court enters the following Order permitting clarification of the proposed Settlement Agreement prior to the Court's consideration of whether to approve it.

**1.     Clarification: Cross-referencing of remedies terms within Settlement Agreement**

One of objectors noted that the Settlement Agreement contained a typographical or "scrivener's error"[2] in the cross-referencing of the terms. The parties and their counsel present at the hearing agreed that paragraph 3.21.9, providing that "Remedies for any failure of approvals or appropriations shall be governed by paragraph 3.13 of this Agreement rather than this paragraph, 3.21, and its subparts," *should instead* reference paragraph 3.14, not 3.13, based on the content of each of those paragraphs. Dkt. 127-2, ¶ 3.21. In fact, paragraph 3.13 discusses that the IDOC's performance of the agreement depends upon administrative approvals and legislative appropriations. It is the following paragraph and its subparts, paragraph 3.14, that address termination of the Agreement upon failure of the IDOC to obtain approvals and appropriations, and it provides that the class action may be reinstated.

The threshold legal question here is whether counsel for the parties are permitted to correct an error without the Agreement proceeding through the notice and hearing process again. In *McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009), the

---

[2] *See* PETER LINZER, CORBIN ON CONTRACTS § 25:19, at 270 (rev. ed. 2010) (describing a scrivener's error as "a typing or computation error that no one noticed"); 27 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 70.93, at 499 (4th ed. 2003) ("In contract law, a scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error.").

**ORDER AFTER FAIRNESS HEARING - 2**

Second Circuit Court of Appeals was faced with a conflict between how the parties drafted a settlement agreement term and what they all agreed the certain term meant. The Second Circuit Court determined: "The broad terms of the release provision" at issue is "inconsistent with the parties' stated and undisputed intent to release only the class members' claims for injunctive relief against the defendants." *Id*. at 803. The court did not reverse the district court's approval of the settlement agreement, but remanded the case and directed the district court "to require the parties to clarify the language of the release provision in order to reflect their stated understanding that plaintiffs are allowed to pursue subsequent actions for damages." *Id*.

In other words, the intent of the parties governed the settlement agreement, even when the written document failed to reflect that intent. Requiring clarification ensured that the class was not relegated to being governed by a settlement agreement that, as drafted, did *not* clearly reflect the intent of the parties. *See id*. At the same time, requiring clarification of the parties' true intent did *not* amount to a change of the settlement agreement by the court, which is not permitted. *See Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625, 630 (9th Cir. 1982) (stating that the district court cannot "delete, modify or substitute certain provisions," but, rather, "the settlement must stand or fall as a whole").

Here, both the parties and the class are entitled to a writing that clearly reflects the intent of the negotiating parties. Clarification of the parties' actual intent is therefore permitted, as in *McReynolds*. Such modifications are proper, so long as the clarification is not materially different from the content already provided to class members and does not

**ORDER AFTER FAIRNESS HEARING - 3**

make changes which reduce the benefit of the settlement to the members of the class. If the clarification fails either test, a new notice and objection period would be required. In *McReynolds*, for example, the clarification explained that the intent of the agreement was *not* to foreclose class members from pursuing damages claims—a clarification that was in the interest of class members and against the interest of the defendants, and, therefore, was a clarification to which there would be no reasonable objection from the class.

The cross-reference, in paragraph 3.21.9 to paragraph 3.13 instead of 3.14 can be understood to be a mere scrivener's error, and a reference to paragraph 3.14 would accurately reflect the intention of the parties. The parties are invited to provide that clarification.

**2.     Clarification of Attorney Fees Provision and Support for First Fee Award**

Another objection that requires clarification is that the parties seem to be asserting in their briefing that attorney fees do not come from the one and only "common fund" allocated for HCV treatment that is approved by the legislature. *See* Motion for Approval, Dkt. 152-1, p. 19. However, the Agreement states that (1) only the first $100,000 in fees will not come from the common fund but will be paid by the Corizon Defendants directly to class counsel, and (2) all future fees for class counsel's work will be paid by the IDOC Defendant specifically "from the common fund to be created by the expenditures required in Paragraphs 3.6.1 through 3.6.5." Dkt. 127-2, ¶ 3.8. The parties argue in their Motion that the court could approve as little as $1.00 or as much as a percentage of the common fund, and that

**ORDER AFTER FAIRNESS HEARING - 4**

>the parties anticipate the Court will consider the source of funding in making any award of attorneys' fees from the common fund and that the Court's award will be a small percentage of the overall funds secured from IDOC for HCV treatment. Moreover, the parties do not anticipate the award of attorneys' fees from the common fund substantially affecting the ability of IDOC inmates to receive DAA medication.

*Id*.

The Court agrees with the objector that simply because a court might approve a relatively low fee amount for monitoring in the future does not mean that the amount will not *be paid from* the common fund. As written in the Settlement Agreement, the amount allocated for HCV treatment per year *will* be diminished by the attorney fee awards for that year, whether the reduction is de minimis or substantial. For example, the Agreement provides that $6.6 million should be allocated to treat inmates in FY2024. If class counsel request and receive $50,000 in attorney fees for their monitoring services, the effect of the Agreement will be that only $6,550,000 would be available to HCV treatment of inmates in that year.

As in *McReynolds*, the parties must clarify whether the Agreement reflects their true intent, because the Agreement appears to provide that the future attorney fees come from the common fund. The Court clarifies that the Settlement Agreement does not appear to be unfair simply because the source of the future fees is the common fund, because all future fees must be an amount found "fair and reasonable … as determined by the Court." Dkt. 127-2, ¶ 3.8. Because the Agreement that was provided in conjunction with the notice to class members shows that the future attorney fees are to come from the

**ORDER AFTER FAIRNESS HEARING - 5**

common fund, there is no reason to repeat the notice and objection period if the parties clarify that, indeed, the Agreement reflects their intent. In that case, in its analysis of whether the Settlement Agreement should be finally approved, this Court must simply determine if the present and future attorney fees terms are fundamentally fair, adequate, and reasonable, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), not as a stand-alone term, but in the context of the entire agreement, *see Officers for Justice*, 688 F.2d at 628.

Another potential scrivener's error is that the Agreement provides that "the Court" shall determine the attorney fees in the future. Dkt. 127-2, ¶ 3.8. Although the term "the Court" usually refers to the federal district court, *id.*, ¶ 1.8, the Agreement provides that "this Court's jurisdiction will end with the approval of this Agreement and any proceedings pertaining to enforcement of this Agreement shall occur in the Court of Enforcement." *Id.*, ¶ 2.5. The Agreement designates the state court as the Court of Enforcement, *Id.*, ¶ 1.9.

Because an award of attorney fees to compensate counsel for monitoring the State's compliance with the settlement agreement certainly appears to "pertain[] to enforcement of [the] Agreement" and the Agreement appears to reject continuing jurisdiction of this Court, the Agreement, as written, reflects that the state court will be the court determining whether future fees are reasonable. Therefore, the term "the Court," ¶ 3.8 should be replaced with "the Court of Enforcement," if that is the intent of the parties. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) ("[W]e think the court is authorized to embody the settlement contract in its dismissal

**ORDER AFTER FAIRNESS HEARING - 6**

order or, what has the same effect, retain jurisdiction over the settlement contract[] if the parties agree. Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction") (dismissal under Rule 41(a) of the Federal Rules of Civil Procedure).

Again, the parties must clarify their true intention regarding which court will determine the amount of future attorney fees to be deducted from the common fund.

Finally, this Court is charged with ensuring that the amount of $100,000 is fair and reasonable for the work done by class counsel. In injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof. The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *Blum v. Stenson,* 465 U.S. 886, 897 (1984). The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should submit records and time sheets documenting their work and time spent.

Class counsel will be required to supplement the record with records and time sheets, as well as their curricula vitae and declarations justifying their fees. Time expended in negotiating individual damages awards should not be included. However, counsel can include time spent in tasks such as discovery, investigation, and briefing claims to the extent that those were also used for purposes of settlement of the class injunctive relief claims, but that time should be separately identified as occurring in the

**ORDER AFTER FAIRNESS HEARING - 7**

separate suits before consolidation. *See, e.g., Workman, et al. v. Atencio*, et al., No. 1:16-CV-00309-BLW.[3]

After the Court receives the clarifying information, it will issue a ruling on the Joint Motion for Final Approval and the objections.

## ORDER

**IT IS ORDERED** that the parties shall respond to this Order within **21 days**.

DATED: May 26, 2022

B. Lynn Winmill
U.S. District Court Judge

---

[3] *Workman* was filed on July 8, 2016. Attorney Richard Hearn first appeared in that case on September 25, 2018. A motion to consolidate that action with this action was filed on October 4, 2018, and extensive briefing on summary judgment was undertaken after that date in *Workman*.

**ORDER AFTER FAIRNESS HEARING - 8**