Richard A. Hearn (ISB No. 5574)
John B. Ingelstrom (ISB No. 2659)
HEARN LAW, PLC
151 N. 3rd Ave., Ste. 100
P.O. Box 70
Pocatello, Idaho 83204
Telephone: (208) 904-0004
Facsimile: (208) 904-1816
Email: hearn@hearnlawyers.com
       jbi@hearnlawyers.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REUBEN CORTES, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JOSH TEWALT, et al.,<br><br>    Defendants. | Case No.: 1:18-cv-00001-BLW<br><br>**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF *AMENDED* CLASS ACTION SETTLEMENT** |

All parties to this action <u>jointly</u> submit this Memorandum in Support of Joint Motion for Final Approval of *Amended* Class Action Settlement.

On September 29, 2022, the Court denied the parties' Joint Motion for Final Approval of Class Action Settlement.[1] But, while denying the parties' motion for final approval of the Settlement Agreement, this Court did so "with the hope that the parties will make adjustments to their agreement and resubmit it in the near future."[2] After reviewing the Court's Order Denying

---

[1] *Order Denying Motion for Final Approval of Class Action Settlement* ("*Order Denying Class Action Settlement*"). Dkt. 167.
[2] *Order Denying Class Action Settlement*. Dkt. 167, p. 2.

Class Action Settlement, the parties met and agreed to make adjustments to their agreement which have now been incorporated into the *Amended* Class Action Settlement Agreement ("*Amended* Agreement"). The *Amended* Class Action Settlement Agreement is submitted herewith for the Court's final approval.

The *Amended* Agreement incorporates the following changes and/or clarifications to the original Settlement Agreement:

- The Settlement Agreement specifically provided that the Parties agreed that a class be certified pursuant to FRCP 23(b)(2).[3] The Parties jointly moved for class certification only as a Rule 23(b)(2) class. As a consequence, it has always been the stated intention of the Parties that the release of monetary damage claims during the term of the agreement at Paragraph 3.12.3 is incidental to the requested injunctive relief. It has been the intent of the Parties that the release provision in Paragraph 3.12.3 is as narrow as the Court suggested at page 13 of the Order Denying Class Action Settlement, Dkt. 167. ("If the class waiver of future damages is as narrow as the parties describe – that future suits for monetary damages are barred if an inmate clams *only that Defendants are complying with the Settlement Agreement but nevertheless should be required to do something more than that*, such a claim would be incidental. As the parties reasoned, why would Defendants agree with Plaintiffs to take a certain course of action as a jointly-determined remedy *and* simultaneously agree to be sued for taking that action?" *Id.; italics in the original.*) The Parties have amended paragraph 3.12.3 to further clarify their intent and the narrow scope of that provision.

- The outdated 2018 FBOP Clinical Guidelines in the original agreement have been replaced by the 2021 FBOP Clinical Guidelines in the *Amended* Agreement.[4]

- All chronic HCV inmates are equally "eligible" for treatment regardless of their risk subcategories and references to prioritization requiring treatment of the sickest first have been removed from the Amended Agreement. Furthermore, it specifically provides for the expenditure obligations to treat all inmates with chronic HCV until the annual fund has been exhausted.[5]

- Both the minimum number of inmates to be treated and the allowance for the IDOC's expenditures to fall short of the required amount by 10% in any given year have been removed from ¶ 3.6 in the original agreement.[6] Paragraph 3.6.8 has been

---

[3] *See Original Settlement Agreement*, ¶ 2.4.
[4] *See Amended* Agreement, ¶¶ 3.4 and 3.5.
[5] *See Amended* Agreement, ¶¶ 1.14, 3.5 and 3.6.
[6] *See Amended* Agreement, ¶¶ 3.6.1 through 3.6.3 and 3.6.8.

MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF *AMENDED* CLASS ACTION SETTLEMENT – Page 2

amended to provide that IDOC Defendants must spend the total amounts allocated unless there are no chronic HCV inmates remaining to be treated in any such year.

- Paragraph 3.6.6 has been amended to require IDOC to continue the same treatment obligations and to allocate sufficient funds to treat all inmates with chronic HCV. Because the number of inmates needing treatment is going down, as well as the costs of DAA treatment, the allocation of funds in the final three years will be based upon the number of inmates in IDOC's physical custody with chronic HCV who have not yet been treated, the total number of HCV-positive inmates in IDOC's physical custody the prior year, the average cost of DAA Treatment, and other relevant factors.

- Paragraph 1.5 of the Agreement has been amended to clarify that class members must be in <u>physical</u> custody of IDOC regardless of their location, and that persons on parole or probation are not class members and are not subject to the Agreement.

- Paragraph 3.4 of the Agreement has been amended by reason of the 2021 FBOP Guidelines and will include any other information required by those guidelines or more current guidelines in the future.

- The Agreement has been amended to provide that it is this federal district court that will determine the amount of fair and reasonable attorney fees.[7]

- The Agreement has been amended to correct the scrivener's error in Paragraph 3.21.9.

The Parties agreed to make these changes to the original agreement in order to ensure the Court that the *Amended* Agreement was fundamentally fair, adequate, and reasonable to all class members.

The Parties also believe that data concerning the number of Hep C inmates treated or referred for treatment by IDOC and funds spent by IDOC for Hep C treatment in prior years under the Agreement will be useful to the Court in granting final approval to the *Amended* Agreement.[8] While awaiting final approval by the Court of the proposed class action settlement, IDOC has acted in good faith in voluntarily implementing the terms of the settlement agreement. As shown by the

---

[7] *See Amended Agreement*, ¶¶ 1.8, 2.5 and 3.8
[8] *See Hep C Table* attached to this Memorandum ("*Hep C Table*").

MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF *AMENDED* CLASS ACTION SETTLEMENT – Page 3

Hep C treatment data below, the Agreement has been implemented by the IDOC in a manner which has been fundamentally fair to all class members regardless of their risk subcategory.

Although the *Amended* Settlement Agreement has not yet been granted final approval, the Defendants are voluntarily attempting to comply with the terms of the agreement. The *Amended* Agreement, if approved, would have begun as of Fiscal Year (FY) 2021 (July 1, 2020, through June 30, 2021) and will run through FY 2028 (July 1, 2027, through June 30, 2028). Therefore, we are currently in the beginning of the third fiscal year, *i.e.*, FY 2023, covered under the *Amended* Agreement.

Data as to how the Agreement has worked during the first two and one-quarter years (27 months) of its term is now available to the Court. Based upon the data presented in the Hep. C Table, one can conclude the following:

- The number of chronic HCV inmates treated in FY2021 (the first year of the agreement) increased by 70% over the number treated in FY2020.[9]

- The number of chronic HCV inmates treated in FY2022 (the second year of the agreement) increased by 159% over the number treated in FY2020.[10]

- IDOC spent $11,124,788.6 during the first 27 months of the agreement which is slightly more than that called for in the agreement, *i.e.*, $11,100,000.[11]

- The average number of chronic HCV inmates has decreased from 573 in calendar year 2019 (prior to the start of the agreement) to 158 in calendar year 2022.[12]

- The number of low risk chronic HCV inmates (F0 and F1) currently in treatment (57) greatly exceeds the number of high risk chronic HCV inmates (F3 and F4) in treatment (21).[13]

---

[9] *See Hep C Table*, 111 inmates treated in FY2020 verses 189 inmates treated in FY2021.
[10] See Hep C Table, 111 inmates treated in FY2020 verses 288 inmates treated in FY2022.
[11] *See Hep C. Table*, (under the original agreement, IDOC was to spend $4.35 million in FY2021, $5.1 million in FY2022 and $6.6 million/4 during the first three months of FY2023 for a total of $11.1 million).
[12] *See Hep C. Table*.
[13] *See Hep C. Table*.

MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF *AMENDED* CLASS ACTION SETTLEMENT – Page 4

- Under the original agreement, approximately 80 percent (64/81) of the chronic HCV inmates referred for and currently awaiting treatment at IDOC are in lowest risk category, *i.e.*, F0.

Based on the above, class counsel is confident that the IDOC will continue to implement the *Amended* Agreement in good faith thereby providing all class members with treatment of chronic HCV in a manner which is fundamentally fair, adequate, and reasonable.

## CONCLUSION

For all the reasons set forth above, all parties respectfully ask this Court to grant, without delay, this motion for final approval of the *Amended* Agreement.

[Signatures on following page.]

DATED this 2nd day of December, 2022.

        HEARN LAW, PLC

        /s/ Richard A. Hearn
        Richard A. Hearn
        John B. Ingelstrom
        Counsel for Plaintiffs

DATED this 2nd day of December, 2022.

        PARSONS BEHLE & LATIMER

        /s/ Dylan A. Eaton
        Dylan A. Eaton
        Counsel for Defendants Corizon, Inc., John G. Migliori, Murray F. Young and April C. Dawson

DATED this 2nd day of December, 2022.

        MOORE ELIA & KRAFT, LLP

        /s/ Steven R Kraft
        Steven R. Kraft
        Counsel for Defendants Josh Tewalt and Rona Siegert

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of November, 2022, a true and correct copy of the foregoing document was electronically filed using the Court's online case filing system, which will send notice to all counsel of record as indicated below.

Dylan Eaton
deaton@parsonsbehle.com; kwest@parsonsbehle.com; and aalder@parsonsbehle.com

Steven R. Kraft
steve@melawfirm.net

                                                      /s/ Richard A. Hearn
                                                      RICHARD A. HEARN
                                                      Counsel for Plaintiffs

| Hep C Information | | | |
|---|---|---|---|
| | Funds Spent | Avg cost/pt | Tx #'s |
| FY21 | $ 4,191,456.11 | $ 22,177.02 | 189 |
| FY22 | $ 5,241,055.92 | $ 18,198.11 | 288 |
| FY23 | $ 1,692,276.93 | $ 21,695.86 | 78 |
| Total | $ 11,124,788.96 | | 555 |

| | |
|---|---|
| FY21 | Jul '20 to Jun '21 |
| FY22 | Jul '21 to Jun '22 |
| FY23 | Jul '22 to Jun '23 |

*2022 data through September

| (Calendar Year Data) | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022* | |
|---|---|---|---|---|---|---|---|---|
| Average # of residents HCV positive | No data | No data | No data | 573 | 414 | 255 | 158 | |
| Residents treated for HCV | 11 | 66 | 74 | 101 | 120 | 269 | 216 | |
| | | | | Fiscal Year Data | 2020 | 2021 | 2022 | 2023** |
| Residents treated for HCV FY | | | | | 91 | 177 | 219 | 74 |

**FY2023 data through September

| Total Residents treated for HCV by F-score from 2016 through September 2022 | F4 | F3 | F2 | F1 | F0 | Unknown |
|---|---|---|---|---|---|---|
| | 247 | 155 | 204 | 79 | 62 | 110 |

| Residents currently in treatment by F-score as of November 17, 2022 | F4 | F3 | F2 | F1 | F0 | Unknown |
|---|---|---|---|---|---|---|
| | 13 | 8 | 24 | 24 | 33 | N/A |

| Residents referred or awaiting treatment by F-score as of November 17, 2022 | F4 | F3 | F2 | F1 | F0 | Refused/Other | Not enough time to treat |
|---|---|---|---|---|---|---|---|
| | 3 | 3 | 4 | 7 | 64 | 31 | 10 |

*There are approximately 120 residents who have lab work completed but who are in the process of being worked up in the Chronic Disease Visits with Centurion to be referred for treatment and to be tracked on the IDOC Hep C Master spreadsheet.*